**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| GLBT YOUTH IN IOWA SCHOOLS TASK FORCE d/b/a/ IOWA SAFE SCHOOLS; P.B.-P., by his parent and next friend, BELINDA SCARROTT; P.C. and A.C., by their parents and next friends, RICHARD and ULRIKE CARLSON; T.S., by her parent and next friend, ERIC SAYLOR; B.F.S., by their parents and next friends, BRIGIT and JOSEPH STEVENS;  ROBERT SMITH, by his parents and next friends, JANE and JOHN SMITH; B.F., by their parent and next friend, LARA NEWSOM; JAMES DOE, by his parent and next friend, JOHN DOE, | Case No. 4:23-cv-474 |
| *Plaintiffs,* | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| v. | |
| KIM REYNOLDS, in her official capacity as Governor of the State of Iowa; MCKENZIE SNOW, in her official capacity as Director of the Department of Education; IOWA DEPARTMENT OF EDUCATION; IOWA STATE BOARD OF EDUCATION;  IOWA CITY COMMUNITY SCHOOL DISTRICT; MATT DEGNER, in his official capacity as Iowa City Community School District Superintendent; MOLLY ABRAHAM, J.P. CLAUSSEN, CHARLIE EASTHAM, JAYNE FINCH, RUTHINA MALONE, MITCH LINGO, and LISA WILLIAMS, in their official capacities as board members of the Iowa City Community School District; SIOUX CITY COMMUNITY SCHOOL DISTRICT; ROD EARLEYWINE, in his official capacity as Sioux City Community School District Superintendent; DAN GREENWELL, LANCE EHMCKE, JAN GEORGE, TREYLA LEE, JOHN MEYERS,  BOB MICHAELSON, and EARL MILLER, in their official capacities as board members of the Sioux City Community School District; URBANDALE COMMUNITY SCHOOL DISTRICT; ROSALIE DACA, in her official capacity as Urbandale Community School District Superintendent; KATHERINE HOWSARE,  RACHEL KENT, JENNY MEADE, JASON MENKE, JULIE MITCHELL, STEVE RICHMAN, JOSH VAN RSWYK, CARISSA WILLIAMS, and MARGARET YOUNG, in their official capacities as board members of the Urbandale Community | |

School District; WATERLOO COMMUNITY SCHOOL
DISTRICT; JARED SMITH, in his official capacity as
Waterloo Community School District Superintendent; SUE
FLYNN, JESSE KNIGHT, ASTOR WILLIAMS, LYLE
SCHMITT, STACIE MILLS, JANELLE EWING, PAM
ARNDORFER, and JEFF SOMMERFELDT, in their
official capacities as board members of the Waterloo
Community School District; WEST DES MOINES
COMMUNITY SCHOOLS; MATT ADAMS, in his
official capacity as West Des Moines Community Schools
Superintendent; JEFF HICKS, MICHAEL ANDRESKI,
ELIZABETH LARSON, LILA P. MONTOYA STARR,
FANNETTE ELLIOTT, JILL CATON JOHNSON, and
ANADELIA MORGAN, in their official capacities as
board members of the West Des Moines Community
Schools District,

     *Defendants.*

Plaintiffs GLBT YOUTH IN IOWA SCHOOLS TASK FORCE d/b/a/ IOWA SAFE

SCHOOLS ("IOWA SAFE SCHOOLS"); P.B.-P., by his parent and next friend, BELINDA

SCARROTT; P.C. and A.C., by their parents and next friends, RICHARD and ULRIKE

CARLSON; T.S., by her parent and next friend, ERIC SAYLOR; B.F.S., by their parents and next

friends, BRIGIT and JOSEPH STEVENS; ROBERT SMITH, by his parents and next friends

JANE and JOHN SMITH; B.F., by their parent and next friend, LARA NEWSOM; and JAMES

DOE, by his parent and next friend, JOHN DOE, by and through their undersigned counsel,

respectfully bring this challenge to recently enacted Senate File 496, 2023 Iowa Acts ch. 91 ("SF

496" or "the law"), an unconstitutional law that violates Plaintiffs' First Amendment, equal

protection, and Equal Access Act rights. Plaintiffs submit to the Court this Complaint requesting

a declaratory judgment and preliminary and permanent injunctive relief against all Defendants,

their employees, agents, and successors in office. Contemporaneously with this Complaint,

Plaintiffs are submitting a Motion for Preliminary Injunction with Brief and Declarations in

support. In support of their Complaint and Motion for Preliminary Injunction, Plaintiffs state the following:

## PRELIMINARY STATEMENT

1.      Plaintiffs are a non-profit advocacy organization serving lesbian, gay, bisexual, transgender, queer, or questioning ("LGBTQ+") Iowa youth, and eight LGBTQ+ students from Iowa who attend Iowa public schools and whose ages range from nine to seventeen. They challenge as unconstitutional SF 496, a sweeping piece of legislation signed into law by Governor Kim Reynolds on May 26, 2023, which primarily amends portions of Title VII (Education and Cultural Affairs) of the Iowa Code.

2.      On its face, in its intent and purpose, and as applied, SF 496 forces educators to silence their LGBTQ+ students and deny them access to books, information, and ideas about sexual orientation and gender identity. SF 496's vague and overbroad language invites arbitrary and discriminatory restrictions on the rights of Plaintiffs and other LGBTQ+ students, stigmatizing them, preventing them from associating with one another for purposes of mutual support, education, and advocacy, and depriving them of the comfort of knowing that other LGBTQ+ people exist and are happy and healthy members of our community.

3.      First, SF 496 bans any program, curriculum, test, survey, questionnaire, promotion, or instruction relating to sexual orientation or gender identity in kindergarten through grade six (the "don't say gay or trans" provision). SF 496, Div. II, § 16 (Iowa Code § 279.80(1)-(2)). Second, it mandates "age-appropriate" education for all grades and defines "age-appropriate" to ban "descriptions" or "visual depictions" of a "sex act" except in health class, without clarifying whether any level of generality is acceptable (the "all-ages ban"). SF 496, Div. I, § 1 (Iowa Code § 256.11 (unnumbered paragraph 1)); *id.* § 2 (Iowa Code § 256.11(2)-(4); *id.* § 4 (Iowa Code § 256.11(19)(a)-(b)). Third, SF 496 requires school districts to ban from school libraries all books

3

with descriptions of sex acts except for certain religious texts, such as the Bible, and facilitates anonymous complaints by parents requesting the removal of material from classrooms and libraries (the "library ban"). *Id*. § 2 (Iowa Code § 256.11(9)(a)(1)-(a)(2); SF 496, Div. II, § 13 (Iowa Code § 279.77(1)-(4) (facilitation of anonymous complaints)) (together with the don't say gay or trans provision and all-ages ban, the "book ban" provisions). Fourth, the law mandates that school officials notify a student's parent or guardian when a student asks to use a name or pronouns different from those in the school's records, even if the officials are aware that a student will be rendered unsafe or vulnerable to abuse as a result (the "forced outing" provision). SF 496, Div. II, § 14 (Iowa Code § 279.78(1), (3)-(4)).

4.      Large portions of SF 496 took effect on July 1, 2023, and with enforcement to begin on January 1, 2024, its impact was immediate and severe. As the 2023–2024 school year began, school districts across the state developed varying and inconsistent lists of books to remove from classrooms and libraries. School districts banned books based on their content and viewpoint, targeting stories with LGBTQ+ characters, themes, and authors. Schools tore down rainbow flags and "safe place" signs from hallways, erasing messages of inclusion for LGBTQ+ students and staff. Schools prevented Gender Sexuality Alliances ("GSAs")—non-curricular clubs for LGBTQ+ students and their allies to find fellowship and community—from meeting on the same terms as other non-curricular clubs. SF 496 also has obstructed and interfered with schools' obligations to protect their students from anti-LGBTQ+ harassment and bullying.

5.      SF 496 impermissibly deprives Iowa students of access to information and ideas and chills LGBTQ+ students' speech based on content and viewpoint in violation of the First Amendment and the Equal Access Act. SF 496's don't say gay or trans, all-ages, book ban, and forced outing provisions, which target LGBTQ+ students on the basis of the content and viewpoint

4

of their speech, coupled with the law's draconian enforcement measures, communicate to these young people that they are unworthy of recognition or respect and too shameful even to be acknowledged. In short, "the message to LGBT kids is very clear: we don't want you here."[1] Iowa students have gotten the message. They now self-censor, refraining from engaging in protected speech and expression for fear of being bullied, harassed, or disciplined by teachers simply for acknowledging their own sexual orientation or gender identity.

6.      By design, SF 496 also singles out Iowa students and discriminates against them based on their sexual orientation and gender identity in violation of the Equal Protection Clause of the Fourteenth Amendment.

7.      SF 496 unconstitutionally denies LGBTQ+ students access to information and ideas and silences them at a pivotal moment in their lives, when these students—like all people their age—develop their own sense of self. Should SF 496 continue in effect, a generation of LGBTQ+ Iowans will grow up isolated and afraid. School-going Iowans will not view their state and local governments as the representative institutions they are meant to be. Rather, they will see them as censors empowered to control which ideas and opinions have merit. Defendants must be enjoined from enforcing this unconstitutional law.

**PARTIES**

8.      Plaintiff IOWA SAFE SCHOOLS is a mission-driven not-for-profit 501(c)(3) organization founded in 2002 and based in Des Moines, Iowa. The mission of IOWA SAFE SCHOOLS is to provide safe, supportive, and nurturing learning environments and communities for LGBTQ+ and allied youth through education, outreach, advocacy, and direct services. IOWA

---

[1] *Senate video (2023-04-19),* 90th IA S. Sess. 101st Day at 6:59:23 PM (Apr. 19, 2023), https://www.legis.iowa.gov/dashboard?view=video&chamber=S&clip=s20230419053010270&dt=2023-04-19 (quoting IA Sen. Quirmbach).

SAFE SCHOOLS serves a network of chapter member GSAs, which are student-led organizations and extracurricular clubs within schools that focus on providing a safe space for LGBTQ+ youth, address anti-LGBTQ+ harassment and discrimination, promote inclusion, offer support to students, and educate people about sexual orientation and gender identity.

9.     IOWA SAFE SCHOOLS serves at least 4,000 students, representing over 100 member GSAs in school districts across the state. IOWA SAFE SCHOOLS also provides professional development, licensure renewal, and graduate credits to educators individually and district-wide, reaching over 4,000 educators annually. IOWA SAFE SCHOOLS partners with local nonprofits to provide programming and events that reach additional students, families, and educators. IOWA SAFE SCHOOLS also performs data collection with respect to incidents of bullying, harassment, and discrimination experienced by LGBTQ+ youth in Iowa schools, securely tracking "victim data," and providing resources and technical assistance to the students affected. IOWA SAFE SCHOOLS reports this data in the aggregate to the Victim Assistance Section of the Attorney General of Iowa.

10.     IOWA SAFE SCHOOLS provides resources to member GSAs in the face of tragedy or trauma. The trauma that one member of a GSA experiences also can be felt by fellow students who witness the incident or who experience loss as a result. In the worst-case scenario, when a member of a GSA takes their own life, other members of the GSA can be impacted heavily, and require immediate resources and support on an emergency basis, such as access to suicide hotlines, counselors, and supportive people to whom the affected students can talk. After a group experiences a suicide, IOWA SAFE SCHOOLS's GSA Coordinator connects them with the American Foundation for Suicide Prevention, the "After a Suicide" postvention resource from American Foundation for Suicide Prevention, the 24x7 crisis assistance from the Iowa Victim

Service Call Center, and the resources provided by the Trevor Project. IOWA SAFE SCHOOLS sues on its own behalf and on behalf of its member GSAs.

11.     Plaintiff P.B.-P. is a 16-year-old boy who lives in Waterloo in Black Hawk County, Iowa. He is a junior at Waterloo West High School. P.B.-P. is the president of Waterloo West High School's GSA, which is a member of IOWA SAFE SCHOOLS's GSA network. P.B.-P. is transgender. He brings this suit by and through his next friend and parent, BELINDA SCARROTT.

12.     Plaintiff P.C. is a 17-year-old queer and non-binary teenager who lives in Iowa City, Johnson County, Iowa, with their parents and younger sister, Plaintiff A.C. P.C. is a senior at City High School. P.C. brings this suit by and through their next friends and parents, RICHARD and ULRIKE CARLSON.

13.     Plaintiff A.C. is a 9-year-old girl who lives in Iowa City, Johnson County, Iowa, with her older sibling, Plaintiff P.C., and her parents. She attends Twain Elementary School in the 4th grade. A.C. is transgender. A.C. brings this suit by and through her parents and next friends, RICHARD and ULRIKE CARLSON.

14.     Plaintiff T.S. is a 15-year-old girl who lives in Urbandale, Polk County, Iowa. T.S. attends Urbandale High School in the 10th grade. T.S. is a lesbian. T.S. brings this suit by and through her parent and next friend, ERIC SAYLOR.

15.     Plaintiff B.F.S. is a 13-year-old gender-fluid teenager who lives in Clive, Polk County, Iowa. B.F.S. attends Indian Hills Junior High School in the 8th grade. B.F.S. brings this suit by and through their parents and next friends, BRIGIT and JOSEPH STEVENS.

16.     Plaintiff ROBERT SMITH is a 12-year-old boy who lives in West Des Moines, Polk County, Iowa. R.S attends Stilwell Junior High School in the 8th grade. ROBERT SMITH is transgender, and a member of Stilwell Junior High School's GSA, which is a member of IOWA

SAFE SCHOOLS's GSA network. ROBERT SMITH brings this suit by and through his parents and next friends, JANE and JOHN SMITH.

17.     Plaintiff B.F. is a 16-year-old non-binary teenager who lives in Urbandale, Polk County, Iowa. B.F. is a junior at Urbandale High School. B.F. is pansexual. B.F. brings this suit by and through their parent and next friend, LARA NEWSOM.

18.     Plaintiff JAMES DOE is a 16-year-old boy who lives in Sioux City, Iowa. He is a junior at North High School and an officer of North High School's GSA, which is a member of IOWA SAFE SCHOOLS's GSA network. JAMES DOE is transgender. JAMES DOE brings this suit by and through his parent and next friend, JOHN DOE.

19.     Plaintiffs P.B.-P., P.C., A.C., T.S., B.F.S., ROBERT SMITH, B.F., and JAMES DOE are referred to collectively as the "Plaintiff Students."

20.     Defendant KIM REYNOLDS is the Governor of the State of Iowa and, as such, is the Chief Executive for the state, responsible for ensuring the enforcement of the state's educational statutes. Iowa Const. art. IV, § 9. Defendant REYNOLDS introduced the original version of the bill that became SF 496 and ultimately signed it into law. Defendant REYNOLDS is sued in her official capacity as Governor of the State of Iowa.

21.     Defendant MCKENZIE SNOW is the Director of Defendant IOWA DEPARTMENT OF EDUCATION ("IDOE") and is responsible for its acts and omissions. IDOE, part of which now includes the Iowa Board of Educational Examiners, is responsible for enforcing SF 496 by investigating school districts, issuing written warnings, and taking disciplinary action, including revocation of licensure. IDOE is further responsible for recommending to Defendant IOWA STATE BOARD OF EDUCATION ("ISBE") the rules necessary to implement SF 496 and

can independently issue guidance on Iowa's education laws and standards. Defendant SNOW is sued in her official capacity as Director of Defendant IDOE.

22.     Defendant IDOE is the state agency, as described above, responsible for enforcing SF 496 and recommending the rules necessary for its implementation. It acts in a policymaking and advisory capacity and exercises general supervision over the state system of education in Iowa, including the Iowa Board of Educational Examiners.

23.     Defendant ISBE (together with Defendants REYNOLDS, SNOW, and IDOE, "State Defendants") is responsible for adopting rules necessary to administer SF 496.

24.     Defendants IOWA CITY COMMUNITY SCHOOL DISTRICT, SIOUX CITY COMMUNITY SCHOOL DISTRICT, URBANDALE COMMUNITY SCHOOL DISTRICT, WATERLOO COMMUNITY SCHOOL DISTRICT, and WEST DES MOINES COMMUNITY SCHOOLS (together, "Defendant School Districts") are corporate and governmental agencies duly empowered by the constitution and statutes of the State of Iowa to administer, manage, and operate the schools in their District. Each District is responsible for application and enforcement of SF 496 in the schools under its purview.

25.     On information and belief, Defendant School Districts each receive federal financial assistance.

26.     Defendant MATT DEGNER is the Superintendent of the Iowa City Community School District. As Superintendent, DEGNER is responsible for the oversight and enforcement of all policies in Iowa City Community School District, including those being challenged here. Superintendent DEGNER is sued in his official capacity.

27.     Defendant ROD EARLEYWINE is the Superintendent of the Sioux City Community School District. As Superintendent, EARLEYWINE is responsible for the oversight

and enforcement of all policies in Sioux City Community School District, including those being challenged here. Superintendent EARLEYWINE is sued in his official capacity.

28.    Defendant ROSALIE DACA is the Superintendent of the Urbandale Community School District. As Superintendent, DACA is responsible for the oversight and enforcement of all policies in Urbandale Community School District, including those being challenged here. Superintendent DACA is sued in her official capacity.

29.    Defendant JARED SMITH is the Superintendent of the Waterloo Community School District. As Superintendent, SMITH is responsible for the oversight and enforcement of all policies in Waterloo Community School District, including those being challenged here. Superintendent Smith is sued in his official capacity.

30.    Defendant MATT ADAMS is the Superintendent of the West Des Moines Community Schools District. As Superintendent, ADAMS is responsible for the oversight and enforcement of all policies in West Des Moines Community Schools District, including those being challenged here. Superintendent ADAMS is sued in his official capacity.

31.    Defendants Superintendent DEGNER, EARLEYWINE, DACA, SMITH, and ADAMS are referred to collectively as the Defendant Superintendents.

32.    Defendants MOLLY ABRAHAM, J.P. CLAUSSEN, CHARLIE EASTHAM, JAYNE FINCH, RUTHINA MALONE, MITCH LINGO,[2] and LISA WILLIAMS are members of the Iowa City Community School Board. These defendants are responsible for the enactment and oversight of all policies in the Iowa City Community Schools District, including those challenged here. Each Iowa City Board Defendant is sued in their official capacity.

---

[2] On information and belief, Defendant MITCH LINGO was elected to the Iowa City Community School Board in 2023 and will assume his role during the Iowa City Community School Board's organizational meeting on November 28, 2023.

33.     Defendants DAN GREENWELL, LANCE EHMCKE, JAN GEORGE, TREYLA LEE, JOHN MEYERS, BOB MICHAELSON, and EARL MILLER are members of the Sioux City Community School Board. These defendants are responsible for the enactment and oversight of all policies in the Sioux City Community Schools District, including those challenged here. Each Sioux City Board Defendant is sued in their official capacity.

34.     Defendants KATHERINE HOWSARE, RACHEL KENT, JENNY MEADE, JASON MENKE, JULIE MITCHELL, STEVE RICHMAN, JOSH VAN RYSWYK, CARISSA WILLIAMS, and MARGARET YOUNG are members of the Urbandale Community School Board. These defendants are responsible for the enactment and oversight of all policies in the Urbandale Community Schools District, including those challenged here. Each Urbandale Board Defendant is sued in their official capacity.

35.     Defendants SUE FLYNN, JESSE KNIGHT, ASTOR WILLIAMS, LYLE SCHMITT, STACIE MILLS, JANELLE EWING, PAM ARNDORFER, and JEFF SOMMERFELDT are members of the Waterloo Community School Board. These defendants are responsible for the enactment and oversight of all policies in the Waterloo Community Schools District, including those challenged here. Each Waterloo Board Defendant is sued in their official capacity.

36.     Defendants JEFF HICKS, MICHAEL ANDRESKI, ELIZABETH LARSON, LILA P. MONTOYA STARR, FANNETTE ELLIOTT, JILL CATON JOHNSON, and ANADELIA MORGAN are members of the West Des Moines Community Schools Board. These defendants are responsible for the enactment and oversight of all policies in the West Des Moines Community Schools District, including those challenged here. Each West Des Moines Board Defendant is sued in their official capacity.

37.     Defendants MOLLY ABRAHAM, J.P. CLAUSSEN, CHARLIE EASTHAM, JAYNE FINCH, RUTHINA MALONE, MITCH LINGO, LISA WILLIAMS, DAN GREENWELL, LANCE EHMCKE, JAN GEORGE, TREYLA LEE, JOHN MEYERS, BOB MICHAELSON,  EARL MILLER, KATHERINE HOWSARE, RACHEL KENT, JENNY MEADE, JASON MENKE, JULIE MITCHELL, STEVE RICHMAN, JOSH VAN RYSWYK, CARISSA WILLIAMS, MARGARET YOUNG, SUE FLYNN, JESSE KNIGHT, ASTOR WILLIAMS, LYLE SCHMITT, STACIE MILLS, JANELLE EWING, PAM ARNDORFER, JEFF SOMMERFELDT, JEFF HICKS, MICHAEL ANDRESKI, ELIZABETH LARSON, LILA P. MONTOYA STARR, FANNETTE ELLIOTT, JILL CATON JOHNSON, and ANADELIA MORGAN are referred to collectively as the Defendant School Board Members.

38.     The State Defendants, the Defendant School Districts, the Defendant Superintendents, and the Defendant School Board Members are all governmental actors and/or employees acting under color of State law for purposes of 42 U.S.C. § 1983 and the Fourteenth Amendment.  Defendants are therefore liable for their violation of Plaintiffs' First Amendment and Equal Protection rights and violation of the Equal Access Act under 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

39.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action arises under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1983 and 1988 and seeks to secure equitable relief under an Act of Congress, 20 U.S.C. § 4071.

40.     This Court has personal jurisdiction over Defendants because Defendants are domiciled in the State of Iowa and the deprivation of Plaintiffs' rights arises out of and relates to Defendants' official duties in the State of Iowa.

41.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2).

## FACTUAL BACKGROUND

### Statutory Background

42.     SF 496 has altered the landscape for Iowa schools and students through its unconstitutional and discriminatory don't say gay or trans, all-ages ban, book ban, and forced outing provisions.

### Don't Say Gay or Trans Provision

43.     SF 496 includes a sweeping section titled, "Sexual orientation and gender identity—prohibited instruction," that forbids any mention of sexual orientation or gender identity from kindergarten through the sixth grade, in or outside of the classroom. Specifically, the law prohibits school districts from providing "any program, curriculum, test, survey, questionnaire, promotion, or instruction relating to gender identity or sexual orientation to students in kindergarten through grade six." SF 496, Div. II, § 16 (Iowa Code § 279.80(1)-(2)).   This prohibition applies even to human growth and development instruction, i.e., health class. *Id*. § 2 (Iowa Code § 256.11(2)-(3)); SF 496, Div. II, § 9 (Iowa Code § 279.50(1), (1A)).

44.     These seven separate prohibited types of speech encompass all activities within a school. Iowa statutes do not define the terms, "program, curriculum, test, survey, questionnaire, promotion, or instruction," but their scope is broad. Iowa regulations define the term "educational program" as "the entire offering of the school, including out-of-class activities and the sequence of curriculum areas and activities" and the term curriculum as "all the courses offered."   Iowa Admin. Code r. 281-12.2.

45.     The "don't say gay or trans" prohibition reaches every aspect of a student's experience until the seventh grade. It covers materials available in classrooms, school libraries, out-of-class activities, and GSAs.

13

46.     SF 496 includes similarly broad definitions of "gender identity" and "sexual orientation." They are defined to encompass any gender identity, including cisgender identities, and any sexual orientation, including heterosexuality. SF 496, Div. II, § 16 (Iowa Code § 279.80(1)); *see also* Iowa Code § 216.2(10), (14).

47.     Further, SF 496's use of the phrase "relating to" in the don't say gay or trans provision contains no limitation of intent or import, raising questions as to whether any level of generality is acceptable or whether merely acknowledging a real or fictional person's gender or marital status violates the law.

48.     By failing to provide clear boundaries on the speech prohibited, SF 496 invites and has resulted in arbitrary and discriminatory enforcement. For example, the don't say gay or trans provision provides that it is applicable to kindergarten through sixth grade, but sixth grade in Iowa schools may be taught in middle schools or junior high schools, along with higher grade levels. Additionally, some Iowa school districts do not maintain separate elementary and secondary school libraries, leaving Defendant School Districts and other school districts in the State of Iowa to apply this provision to grade levels past sixth, even though SF 496 does not provide for such restriction.

**All-Ages Ban**

49.     SF 496 also mandates "age-appropriate" education for all grades and defines that term to ban "descriptions" or "visual depictions" of a "sex act" except in health class, again without clarifying whether any level of generality is acceptable (the "all-ages ban") SF 496, Div. I, § 1 (Iowa Code § 256.11 (unnumbered paragraph 1)); *id.* § 2 (Iowa Code § 256.11(2)-(4)); *id.* § 4 (Iowa Code § 256.11(19)(a)-(b)).

50.     Defendant ISBE is required to adopt rules and an accreditation procedure for all schools from kindergarten through twelfth grade that require an "age-appropriate" approach to the

"educational program" and instruction and creates a new definition of "age-appropriate." *Id*. § 1 (Iowa Code § 256.11 (unnumbered paragraph 1)). Iowa regulations define the term "educational program" as "the entire offering of the school, including out-of-class activities and the sequence of curriculum areas and activities."  Iowa Admin. Code r. 281-12.2.

51.    The new definition of "age-appropriate" prohibits for all grade levels "any material with descriptions or visual depictions of a sex act," for all purposes, with the limited exception of certain human growth and development instruction, which may cover the topic of "human sexuality." SF 496, Div. I, § 4 (Iowa Code § 256.11(19)(a)(1)-(2)); *see also* Iowa Code § 279.50.

52.    SF 496 borrows its definition of a "sex act" from Iowa criminal law. SF 496, Div. I, § 4 (Iowa Code § 256.11(19)(a)(1) (citing Iowa Code § 702.17)).[3] However, the law does not define what constitutes a "description" or "visual depiction" of a sex act.

53.    All school districts must comply with this "age-appropriate" "approach" to education, which encompasses all educational programming, including materials in and outside of the classroom and in school libraries.

---

[3] Iowa Code § 702.17 defines "sex act" for purposes of offenses such as lascivious conduct as any sexual contact between two or more persons by any of the following:

  1. Penetration of the penis into the vagina or anus.

  2. Contact between the mouth and genitalia or mouth and anus or by contact between the genitalia of one person and the genitalia or anus of another person.

  3. Contact between the finger, hand, or other body part of one person and the genitalia or anus of another person, except in the course of examination or treatment by a person licensed pursuant to chapter 148, 148C, 151, or 152.

  4. Ejaculation onto the person of another.

  5. By use of artificial sexual organs or substitutes therefor in contact with the genitalia or anus.

  6. The touching of a person's own genitals or anus with a finger, hand, or artificial sexual organ or other similar device at the direction of another person.

**Book Ban Provisions**

54.     SF 496 requires school districts to ban books and materials containing descriptions or depictions of "sex acts" from all Iowa school libraries except for certain religious texts, such as the Bible (the "library ban"); to ban such books and materials from all educational programming in all Iowa schools with limited exception for health class through the all-ages ban; to ban books relating to gender identity or sexual orientation from school libraries in schools with kindergarten to sixth grades through the don't say gay or trans provision; to facilitate anonymous complaints by parents requesting the removal of material from classrooms and libraries ("anonymous complaint" provision); and to investigate and discipline school employees for violating the library ban (the "enforcement" provision) (collectively, the "book ban" provisions). SF 496, Div. I, § 2 (Iowa Code § 256.11(9)(a)(1)-(a)(2) (library ban and enforcement provision)); *id.* § 1 (Iowa Code § 256.11 (unnumbered paragraph 1) (all-ages ban); SF 496, Div. II, § 16 (Iowa Code § 279.80(1)-(2) (don't say gay or trans provision)); *id.* § 13 (Iowa Code § 279.77(1)-(4) (anonymous complaint provision)).

55.     SF 496 specifically prohibits school library programs from having materials that depict or describe a "sex act." Each school district, including the Defendant School Districts, is required to "establish a kindergarten through grade twelve library program that . . . contains only age-appropriate materials," as defined above. SF 496, Div. I, § 2 (Iowa Code § 256.11(9)(a)(1)).

56.     SF 496 makes an explicit exception for certain religious texts such as the Bible, Torah, and Koran. Libraries must retain these religious texts regardless of the nature or number of sex acts described. SF 496, Div. I, § 2 (Iowa Code § 256.11(9)(a)(1)); *see also* Iowa Code § 280.6.

57.     In contrast, SF 496 does not define what might constitute a "description" or "visual depiction" of a sex act in a book or whether any level of generality is acceptable. The scope

and breadth of the book ban thus is not clear, and its vagueness invites school districts to implement the ban in a broad and sweeping manner.

58.     The scope of SF 496's don't say gay or trans provision, which prohibits schools from providing "any program, curriculum, test, survey, questionnaire, promotion, or instruction relating to gender identity or sexual orientation to students in kindergarten through grade six," also requires schools with kindergarten through sixth grade to remove from school and classroom libraries books relating to gender identity or sexual orientation.

59.     SF 496's all-ages ban similarly requires the removal from the school as a whole, including school libraries, classrooms, and spaces outside the classroom, of all "materials" depicting or describing a sex act, with a limited exception for health class.

60.     In addition to mandating that schools ban books, SF 496 establishes a procedure that facilitates the filing of anonymous complaints by parents requesting the removal of material from classrooms and libraries. Specifically, Defendant School Districts must publish on school websites a "detailed explanation" of policies and procedures to allow a parent or guardian of a student enrolled in the school district to request anonymously the removal of books and other materials from school classrooms and libraries. SF 496, Div. II, § 13 (Iowa Code § 279.77(1)-(4)). Defendant School Districts also must post on their websites a comprehensive list of books available to students in school libraries. *Id*. (Iowa Code § 279.77(3)).[4]

61.     The law enforces its book ban provisions by threatening the accreditation of schools that fail to comply and the licensure of employees who knowingly violate it. Specifically, the law provides: "If, after investigation, the department determines that a school district or employee of

---

[4] "However, for school years beginning prior to July 1, 2025, if the school district does not use an electronic catalog, the school district may request a waiver from this requirement from the department of education." SF 496, Div. II, § 13 (Iowa Code § 279.77(3)). (3).

the school district has violated the provisions . . . related to library programs containing only age-appropriate materials, beginning January 1, 2024, the school district or employee of the school district" can be subject to discipline ranging from a written warning to proceedings that could result in revocation of an employee's license or certification. SF 496, Div. I, § 2 (Iowa Code § 256.11(9)(a)(1)).

### Forced Outing Provision

62.     Finally, SF 496 includes a "forced outing" provision. This provision requires school officials to notify a student's parent or guardian whenever a student asks school officials to respect the student's gender identity. SF 496, Div. II, § 14 (Iowa Code § 279.78(3)).

63.     Specifically, SF 496 states: "If a student . . . requests an accommodation that is intended to affirm the student's gender identity from a licensed practitioner employed by the school district," the licensed practitioner must "report the student's request to an administrator," who then "shall report the student's request to the student's parent or guardian." *Id*.

64.     The forced outing provision includes one example of what might qualify as an a requested "accommodation": "a request that the licensed practitioner address the student using a name or pronoun that is different than the name or pronoun assigned to the student in the school district's registration forms or records." *Id*. SF 496, however, does not clarify what other conduct might constitute a reportable request, and it does not limit the obligation to requests made during school hours or school activities.

65.     The forced outing provision mandates that school districts, including Defendant School Districts, their administrators, and their employees, make this notification to parents and guardians regardless of the student's wishes or plans for sharing this information with their parents or guardians; regardless of whether a student will be rendered unsafe as a result; regardless of whether a student may have a reasonable expectation of confidentiality when speaking with a

18

school psychologist, counselor, or nurse; and regardless of ethical obligations these professionals may have to protect confidentiality. The law contains no process for determining whether the student's safety or wellbeing will be threatened as result of such a disclosure. It also does not contain any exception allowing for a school employee to avoid parental notification when the employee already knows that such notification imminently will endanger the student.

66.     The enforcement mechanism for the forced outing mandate is similar to the law's prohibition on library materials. Defendant IDOE is required to enforce this mandate by investigating potential violations and imposing disciplinary action ranging from written warnings to proceedings that could result in loss of licensure or certification. *Id*. (Iowa Code § 279.78(4)).

### Proposed Rulemaking

67.     On November 15, 2023, Defendant ISBE issued proposed rules implementing SF 496, including new enforcement mechanisms the law requires. Although the rulemaking purports to clarify aspects of SF 496, the proposed rules raise new questions and do not address the vagueness of the statutory language in any meaningful way.

68.     For example, the proposed rules purport to limit the definition of "age-appropriate," which the statute defines as excluding "any material with descriptions or visual depictions of a sex act," by adding, "A reference or mention of a sex act in a way that does not describe or visually depict a sex act as defined in that section is not included in the previous sentence." Iowa State Board of Education, Notice of Intended Action, Item 2 (amending Iowa Admin. Code r. 281-12.2) (hereinafter, "Proposed Rules").

69.     This proposed rule does not clarify when a "reference" or "mention of a sex act" does or does not qualify as "describ[ing]" a "sex act."

70.     This proposed rule also does not explain whether enforcement turns on the brevity of the description, whether the description is merely implicit, the degree to which the description

19

plays a role in a broader narrative, whether the average person would find the reference to appeal to the prurient interest, or take into account the literary, artistic, political, or scientific value of the work.

71.      The proposed rules modify the enforcement provisions of SF 496's book banning provisions by specifying that Defendant IDOE "may exercise enforcement discretion if any violation is voluntarily and permanently corrected prior to the department making a determination of a violation." Proposed Rules, Item 4 (amending Iowa Admin. Code r. 281-12.3(12)(d)(3)).

72.      This enforcement "discretion," however, is merely an inducement to greater curtailment of expression, inviting school districts to remove books in response to even a hint of an anonymous challenge, without ever having determined whether the specific text meets the statute.

73.      With respect to SF 496's don't say gay or trans provision, the proposed rules add: "In monitoring and enforcing this subrule, the department will not conclude that a neutral statement regarding sexual orientation or gender identity violates [the law]." Proposed Rules, Item 5 (amending Iowa Admin. Code r. 281-12.3(15)).

74.      Far from clarifying the statute, this proposed rule prompts further questions and highlights and doubles down on the impermissibly content-based and viewpoint-based nature of SF 496's prohibitions. For example, what qualifies as a *neutral* statement about sexual orientation or gender identity? Would a GSA advisor violate the rule if she allowed sixth grade GSA members to meet to discuss the need for greater LGBTQ+ civil rights, but comply if students instead mentioned their sexual orientations incidentally while introducing themselves and discussed the

lunch menu? Does a book in a fourth-grade classroom violate the rule if it portrays a child's same-sex parents as loving and attentive, but comply if the reference to gay parents is merely an aside?[5]

75.     The proposed rules also fail to provide clarity to school districts with mixed K-12 library programs or that use the local community library for their students.  A proposed rule simply instructs these districts to "exercise reasonable, physical, administrative, and technological controls to ensure that materials accessible to students have access to age-appropriate materials based on their age and grade." Proposed Rules, Item 4 (amending Iowa Admin. Code r. 281-12.3(12)(d)(4)).

76.     The proposed rules also purport to explain school officials' obligation under SF 496 to report students who seek an "accommodation" relating to their name or pronouns: "Concerning a student's request to use a name that is different from the name on the student's registration forms or records, that request is governed by this subrule only if the request is an accommodation intended to affirm a student's gender identity." Proposed Rules, Item 5 (amending Iowa Admin. Code r. 281-12.3(16)(b)).

77.     This proposed subrule would require licensed practitioners to interrogate every student as to the purpose of their preferred name or nickname, imposing unique burdens on gender-nonconforming and transgender students forced to justify their own names. For example, under this proposed subrule, school officials may acquiesce to a student's request to use "Bob" instead of "Robert," without triggering the reporting requirement, but they may have to report Samantha

---

[5] Tom Barton and Caleb McCullough, *Iowa Board of Education advances rules on school library restrictions*, The Gazette (Nov. 15, 2023) https://www.thegazette.com/state-government/iowa-board-of-education-advances-rules-on-school-library-restrictions/ ("The rules allow for books to have 'neutral' mentions of LGBTQ characters, [Thomas] Mayes [General Counsel for the Iowa Department of Education] said. This includes an 'observation regarding a book character's sexual orientation or gender identity that stops short of being a promotion.'").

for seeking to be referred to as "Sam" and would be required to report Susan for seeking to be referred to as "Simon."

78.     Alternatively, a school district might reason that "gender identity," as defined by the Iowa Civil Rights Act and incorporated into SF 496, includes cisgender identities, and any nickname might be understood to confirm a student's gender identity, whether that is transgender, nonbinary, gender non-conforming, or cisgender.  Accordingly, Thomas's request to go by Tom[6] would affirm his identity as a cisgender male.

79.     Unless an anti-LGBTQ+ intent is read into the law, the proposed subrule does nothing to clarify the scope of the forced outing provision.

80.     The President of the Iowa State Education Association summarized the proposed rules as follow:

> The proposed rules do nothing to address the chilling effect the law created. So far, hundreds of book titles have been pulled from shelves across the state, and we've created ridiculous amounts of paperwork over topics like student nicknames. Public education professionals will still continue to spend valuable instructional time trying to meet vague state mandates.[7]

**Legislative History of SF 496**

81.     The landscape of Iowa law before the passage of SF 496, along with the law's legislative history, underscore that SF 496 was not enacted for any legitimate purpose and demonstrate that SF 496 is an attempt to target LGBTQ+ students and prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion in Iowa schools.

82.     Prior to SF 496, Iowa law contained numerous protections for students that protected them from exposure to harmful materials in school.

---

[6] *See* Barton and McCullough, *supra* note 5 ("For example, 'Thomas to Tom' is fine, Mayes said.").

[7] Barton and McCullough, *supra* note 5 (quoting Mike Beranek).

83.     Iowa law prohibited the dissemination of obscene material to minors and the admission of minors to premises where obscene material is exhibited. *See* Iowa Code §§ 728.2, 728.3.

84.     Iowa law also provided for the creation and oversight of appropriate, supportive school library programs. *See* 281 Iowa Admin. Code r. 12.3(12)(*a*)–(*c*).

85.     And Iowa law required each school district to adopt policies to address the selection and reconsideration of school libraries. *See* 281 Iowa Admin. Code r. 12.3(12)(*c*).

86.     Despite these pre-existing protections for Iowa students, the 2022 legislative session opened with comments from Iowa State Senator Jake Chapman accusing "some" teachers of a "sinister agenda" to "normalize sexually deviant behavior" and describing an "attack on our children [that] is no longer hidden."[8]

87.     Shortly thereafter, Iowa Governor Kim Reynolds appeared for an interview and was asked about Senator Chapman's comments. Governor Reynolds responded, "If you're talking about, do I think inappropriate things are being displayed in libraries, and in classrooms, across the state? From what I've heard from parents, I absolutely agree with that."[9]

88.     During the interview, Governor Reynolds proceeded to read a passage from *All Boys Aren't Blue*, a young adult memoir by writer and LGBTQ+ activist George M. Johnson, calling it "rated R" and suggesting it was inappropriate to teach as part of the curriculum for K-12

---

[8] *Iowa senator criticized for comments about Iowa teachers,* KCCI 8 Des Moines (updated Jan. 11, 2022, 6:22 PM CST), https://www.kcci.com/article/iowa-senator-jake-chapman-criticized-for-comments-about-iowa-teachers/38739777.

[9] James Stratton, *Iowa Gov: "I don't think that's appropriate': Context and controversy behind book challenged in Iowa*, KCCI, Jan. 24, 2022, https://www.kcci.com/article/iowa-governor-kim-reynolds-context-and-controversy-behind-book-challenged-in-iowa-high-schools/38854288#.

education and include in school libraries. At the time, the book was subject to challenge in certain school districts.

89.     Legislative action directed at LGBTQ+ expression in Iowa public schools became a priority of Iowa Governor Kim Reynolds for the 2023 legislative session.

90.     On February 2, 2023, Governor Reynolds promoted legislation targeting LGBTQ+ students and their identities at a town hall meeting hosted by Moms for Liberty[10] and the Leadership Institute.[11] The meeting began with an invocation praying for strength in "the battle taking place for our children's minds."[12]

91.     At the meeting, Governor Reynolds described her goal "to restore sanity" through the legislation, explaining there exists an "extreme and extremely loud minority," trying to "indoctrinate our children," that thinks "pornographic library books are education."[13]

92.     A week later, on February 9, 2023, Governor Reynolds's legislation was introduced in the Iowa Senate as Senate Study Bill 1145. An identical House Study Bill was introduced on February 28, 2023.

---

[10] The Southern Poverty Law Center (SPLC) describes Moms for Liberty as "a far-right organization that engages in anti-student inclusion activities and self-identifies as part of the modern parental rights movement." SPLC, *Moms for Liberty*, https://www.splcenter.org/fighting-hate/extremist-files/group/moms-liberty (accessed Nov. 22, 2023).   According SPLC, it is an extremist group that "opposes LGBTQ+ and racially inclusive school curriculum, and has advocated [for] book[] bans." *Id.*

[11] The Leadership Institute describes its mission as "to increase the number and effectiveness of conservative activists and leaders in the public policy process." Leadership Institute, *Leadership Institute Mission*, https://www.leadershipinstitute.org/aboutus/mission.cfm (accessed Nov. 22, 2023).

[12] Moms for Liberty, *Giving Parents a Voice Townhall – Iowa,* at 7:54, YouTube (Feb. 2, 2023), https://www.youtube.com/watch?v=JTdcNzHQXpw.

[13] *Id.* at 19:47, 19:54, 21:14.

93.     During the session, the bill emerged from House and Senate committees as Senate

File 496, and underwent substantial amendments and refinements, which reinforced its anti-

LGBTQ+ priorities and goals.

94.     The initial bill proposed a notification and right to opt out of "any activity or

instruction that involves obscene material or sexually explicit material." S.S.B. 1145, § 16; H.S.B.

222, § 16.  To that end, the initial version also proposed the creation of a "comprehensive list" of

any book removed by a school board of directors. S.S.B. 1145, §§ 1, 14; H.S.B. 222, §§ 1, 14. The

bill defined those restricted materials by (a) the definition of obscenity in existing Iowa Code,[14]

and (b) a new, narrow definition of "sexually explicit" materials.[15] In order for material to be

sexually explicit, it had to not only be "offensive" and "prurient," but also "lack[] serious literary,

artistic, political, or scientific value as to minors."[16] The final bill jettisoned any reference to

obscenity or that term's familiar factors—such as taking the work as a whole, judging it by

contemporary community standards, or assessing its intended appeal—and abandoned the term

"sexually explicit," opting instead for the blanket prohibition of materials that include *any*

"description or visual depiction of a sex act." Any attempt to limit the scope of the all-ages ban

---

[14] *See* Iowa Code § 728.1(5) ("any material depicting or describing the genitals, sex acts, masturbation, excretory functions or sadomasochistic abuse which the average person, taking the material as a whole and applying contemporary community standards with respect to what is suitable material for minors, would find appeals to the prurient interest and is patently offensive; and the material, taken as a whole, lacks serious literary, scientific, political or artistic value").

[15] "Sexually explicit" materials were defined as material that"(1) [t]aken as a whole with respect to minor children, the material appeals to the prurient interest in nudity, sex, or excretion," "(2) [t]he material depicts, describes, or represents, in a patently offensive way with respect to what is suitable for minor children, a sex act or lewd exhibition of the genitals,"  and "(3) [t]aken as a whole, the material lacks serious literary, artistic, political, or scientific value as to minors," which would be deemed met "if the material contains material described in subparagraphs (1) and (2) when substantially similar material is readily available to minor children" without such material "but that conveys a substantially similar message or viewpoint." S.S.B. 1145, § 16.

[16] *Id.*

would be rejected, including the Iowa House's suggestion to prohibit only "graphic descriptions" of a sex act. Amendment H-1173 to S.F. 496, 90th Leg. Sess. Div. V § 10.19a(1) (as adopted by IA House, Apr. 4, 2023).

95.     Moreover, the final bill's all-ages ban was expressly amended to carve-out the Bible from the bill's effect.  An Iowa Senator asked on the Senate floor whether a book containing "gang rape," "serial incest," and an "act of masturbation" would meet the bill's definition of "age appropriate." The Senate sponsor correctly identified the referenced book as the Bible,[17] and suggested that a school board that "decides to remove the Bible . . . might have to put up with the wrath of a few parents."  After the inquiring senator noted that existing Iowa law actually prohibits the exclusion of the Bible from public schools, the bill was amended again to exclude religious texts from its scope.[18] SF 496 now states: "Each school district shall establish a kindergarten through grade twelve library program that is consistent with section 280.6." Section 280.6 of the Iowa Code prohibits the exclusion of religious texts from schools. Amendment S-3160 to S.F. 496, 90th Leg. Sess. Div. I § 9.a(1) (as adopted by IA Senate, Apr. 20, 2023).

96.     In the initial bill, although the term "sexual activity" was present and had the same definition "sex act" does in the final bill (by reference to Iowa's criminal law), the term applied only to prohibit content in K-3 instruction.[19]

---

[17]*Senate Video (2023-03-22),* 90th IA S. Sess. 73rd Day at 6:35:39 PM, (Mar. 22, 2023), https://www.legis.iowa.gov/dashboard?view=video&chamber=S&clip=s20230322024547181&dt=2023-03-22 (quoting exchange between Sen. Quirmbach and Sen. Rozenboom); *see generally* Genesis 19:32-26, 38:8-9; Judges 19:24-29.

[18] S*ee* Iowa Code § 280.6 ("Religious books such as the Bible, the Torah, and the Koran shall not be excluded from any public school or institution in the state . . . .").

[19] S.S.B. 1145, § 13 (prohibiting any "program, curriculum, material, test, survey, questionnaire, activity, announcement, promotion, or instruction of any kind relating to gender identity or sexual activity to students in kindergarten through grade three" and defining "sexual activity" as "the same as defined in section 702.17").

97.     The final bill's all-ages ban and book banning provisions expanded the prohibition from grades K-3 (about ages 5-9) to all grades K-12 (ages 5-18), and redirected the use of the term "sex act" to ban library books and other materials.

98.     Similarly, although both the initial bill and final bill prohibit materials and instruction related to gender identity, that prohibition applied only to grades K-3 in the initial bill. And despite targeting gender identity from its inception, SF 496 did not expressly target sexual orientation. Instead, the initial bill only targeted only sexual "activity" related to K-3 instruction.

99.     The final bill's don't say gay or trans provision expanded the restriction on content related to gender identity to include grades 4-6 as well. The final bill also substituted in the term "sexual orientation" for "sexual activity," and like with gender identity, expanded the restriction from applying only to grades K-3 to applying to grades K-6.

100.    This legislative history shows a conflation of content concerning sexual activity and content related to LGBTQ+ identities and people.  By conflating the two, the final bill sexualizes LGBTQ+ identities and people, portraying them as predatory, inappropriate for discussion in school, and unworthy of dignity, recognition, and respect.  SF 496 communicates that LGBTQ+ children and adults are unspeakable and shameful, simply by virtue of who they are.

101.    Finally, in the initial version of the bill, the triggering event for the forced outing provision and requirement to notify a parent about their child's gender identity was an employee's "reasonabl[e] belie[f] that the minor child has expressed a gender identity that is different than the biological sex listed on the minor child's official birth certificate." S.S.B. 1145, § 16. After the bill's opponents criticized the potential reach and ambiguity in the language, the Senate sponsor

countered, "We all know what we're talking about here."[20] The language was changed to trigger reporting on a student's "request" for "an accommodation."

102.    The final bill's forced outing provision also was amended to remove an alternative reporting mechanism.  If the school determined that the notification "was likely to lead to a case of child abuse," the school was required to report its "safety concerns to the department of health and human services so that the department may determine whether the minor child is a child in need of assistance" under Iowa law, i.e., proceedings to determine whether the child should be removed from the home. S.S.B. 1145, § 16; *see generally* Iowa Code §§ 232.96A(1)–(17), .102(1)–(10). This apparent acknowledgment of the risks the legislation posed to children with parents or guardians that are not accepting or affirming of their identity ultimately was removed to ensure the severe consequences of reporting fall only upon the targeted students.

103.    Throughout the legislative process, legislators opposing the bill spoke out on what they saw as a "hateful"[21] bill "promoting ignorance and intolerance . . . about people who are different than themselves."[22] Others identified the bill as setting up "two tiers of kids in school: kids with a government approved identity or a government approved family, and kids who are forced to live in silent shadow," and predicted it would lead to "disruption, bullying, and prejudice."[23] On books, opponents saw the bill sending the "message that certain topics are taboo or shameful," even though "books that discuss sex can play a critical role in promoting empathy and understanding for those with different experiences and identities," effectively "den[ying] kids

---

[20] *Senate video (2023-03-22)*, supra note 17, at 6:46:42 PM (quoting IA Sen. Rozenboom).

[21] *Senate video (2023-04-19)*, *supra* note 1, at 6:34:12 PM (quoting IA Sen. Donahue).

[22] *Senate video (2023-03-22), supra* note 17, at 7:02:25 PM (quoting IA Sen. Donahue).

[23] *Id* at 6:16:40 PM, 6:18:28 PM (quoting IA Sen. Bennett).

the opportunity to learn and grow."[24] Others noted the new definition of "age appropriate" would capture award-winning books that "have already been vetted from the Department of Ed. on down."[25] The bill was criticized as "censoring what kids can and cannot do in school, and what they can and cannot learn."[26]

104.    Nevertheless, proponents maintained the bill was necessary, citing an unspecified "mountain of evidence that many Iowa libraries contain books that do provide sexually explicit and obscene pictures and narratives that many Iowa parents find objectionable."[27] Proponents also claimed that students have "come home with books that are literally pornography."[28] By way of example, one Iowa Senator identified *Gender Queer: A Memoir* by Maia Kobabe, an autobiographical graphic novel about the author's journey of self-identity as a nonbinary, asexual person, which the Senator described as "disgusting."[29]

105.    But SF 496 does not ban only *Gender Queer*, whose intended audience is teenagers, it also bans books like *Melissa* by Alex Gino, which does not contain a "sex act" and is banned solely for telling the story of a transgender girl.

---

[24] *Id* at 6:20:23 PM, 6:24:34 PM (quoting IA Sen. Celsi).

[25] *Id* at 6:55:18 PM, 6:56:59 PM (quoting IA Sen. Donahue).

[26] *Id* at 6:59:27 PM.

[27] *Id* at 7:16:12 PM (quoting IA Senator Rozenboom).

[28] *House video (2023-04-04)*, 90th IA H. Sess. 86th Day at 2:41:32 PM (quoting IA Rep. Wheeler), https://www.legis.iowa.gov/dashboard?view=video&chamber=H&clip=h20230404011950323& dt=2023-04-04.

[29] *Senate video (2023-04-19)*, *supra* note 1, at 6:55:15 PM, 6:57:03 PM (quoting IA Sen. Zaun).

106.    Ultimately, however, proponents decided the bill was necessary "due to schools pushing wokism"[30] and because it is "wrong to push political agendas in the classroom."[31]

107.    On information and belief, when Governor Reynolds signed SF 496 into law, the Governor reengaged the rhetoric she had expressed while promoting the bill, suggesting the law was necessary to prevent the "indoctrination" of students with "extreme ideas," despite Iowa's existing laws and regulations prohibiting the distribution of obscene materials to minors and ensuring age-appropriate instruction at school.

**SF 496 Caused Chaos and Confusion for the 2023-2024 School Year and Deprived Plaintiff Students of Access to Books Based on Content and Viewpoint**

108.    Although the Governor signed SF 496 into law in May, Iowa schools had virtually no guidance on how to comply with the law when the 2023-2024 school year started. And the proposed guidance they recently have received is of little utility. Administrators, teachers, parents, and students are confused about how to comply with SF 496. Teachers and administrators across the state have expressed panic and anxiety about how to implement the law. School districts across the state have circulated and banned widely diverging lists of books and other materials from school classrooms and libraries.

109.    Many of the books that Iowa school districts have banned are books by LGBTQ+ authors, such as *All Boys Aren't Blue* by George M. Johnson, which chronicles the author's journey growing up as a queer Black man in New Jersey and Virginia.

---

[30] *House video (2023-04-04)*, *supra* note 28, at 1:57:34 PM (quoting IA Rep. Wheeler).

[31] *House video (2023-04-20)*, 90th IA H. Sess. 102nd Day at 2:37:17 PM (quoting IA Rep. Wheeler), https://www.legis.iowa.gov/dashboard?view=video&chamber=H&clip=h20230420010822213&dt=2023-04-20.

110.    Many banned books also contain content of particular relevance to LGBTQ+ students, including LGBTQ+ characters, historical figures, or themes. These books include *Melissa* (winner of the Stonewall Award for Children's and Young Adult Literature, California Book Award for Juvenile (Gold), and Lambda Literary Award for Children's/Young Adult)[32] by Alex Gino; *Gender Queer: A Memoir* by Maia Kobabe; *Brave Face* by Shaun David Hutchinson; *The Song of Achilles* by Madeline Miller; and *This Book is Gay* by Juno Dawson.

111.    Similarly, many banned books are by authors of color, or contain content centering the narratives of Black, Brown, or Indigenous people. *See, e.g.*, *The Bluest Eye* by Toni Morrison; *The Color Purple* by Alice Walker; *Black Girl Unlimited* by Echo Brown; *Native Son* by Richard Wright; *When I Was Puerto Rican* by Esmeralda Santiago; *Milk and Honey* by Rupi Kaur; and *The Absolutely True Diary of a Part-Time Indian* by Sherman Alexie (winner of the National Book Award for Young People's Literature, Odyssey Award, Boston Globe-Horn Book Award for Fiction, and California Young Readers Medal for Young Adult).[33]

112.    On information and belief, in response to SF 496, Defendant URBANDALE COMMUNITY SCHOOL DISTRICT initially marked hundreds of books to be banned from Urbandale school libraries.[34] The list included *1984* (winner of the Prometheus Hall of Fame

---

[32]    *Melissa,* Goodreads, https://www.goodreads.com/book/show/24612624-melissa?ref=nav_sb_ss_1_20 (last visited Nov. 27, 2023).

[33] *The Absolutely True Diary of a Part-Time Indian,* Goodreads, https://www.goodreads.com/book/show/693208.The_Absolutely_True_Diary_of_a_Part_Time_Indian?ac=1&from_search=true&qid=jOmmoca8Oj&rank=1 (last visited Nov. 27, 2023).

[34] *Nearly 400 titles on reported banned book list at Urbandale Schools*, KCCI 8 Des Moines (July 31, 2023), https://www.kcci.com/article/urbandale-schools-banned-book-list-has-nearly-400-titles/44689803; Chris Higgins, *Iowa school district flags 374 books as potentially banned, from 'Ulysses' to "Heartstopper,"* Des Moines Register (July 31, 2023), https://www.thegazette.com/state-government/iowa-schools-navigate-library-book-law-without-state-guidance/?auth0Authentication=true. *See also* Caleb McCullough, *Iowa schools navigate library book law without state guidance,* The Gazette (Aug. 7, 2023),

Award)[35] by George Orwell; *The Catcher in the Rye* by J.D. Salinger; *Ulysses* by James Joyce; *The Color Purple* (winner of the Pulitzer Prize for Fiction, National Book Award for Fiction, and the Townsend Prize for Fiction)[36] by Alice Walker; and children's picture books. *See* Appendix A (the list of books Defendant URBANDALE COMMUNITY SCHOOL DISTRICT initially identified for removal).

113.    In a statement, Defendant URBANDALE COMMUNITY SCHOOL DISTRICT initially defended the list, explaining, "We had to take a fairly broad interpretation of the law knowing that if our interpretation was too finite, our teachers and administrators could be faced with disciplinary actions according to the new law."[37]

114.    After publication of the list and public outcry, Defendant URBANDALE COMMUNITY SCHOOL DISTRICT reduced the number of books banned from libraries and classrooms to 51, largely by assuming for the time being that the don't say gay or trans provision does not require banning books related to gender identity or sexual orientation from school

---

https://www.thegazette.com/state-government/iowa-schools-navigate-library-book-law-without-state-guidance/?auth0Authentication=true.

[35] Michael Grossberg, *Big Brother, doublethink, thoughtcrime, Newspeak & memory holes: George Orwell's Nineteen Eighty-Four, a 1984 Prometheus Hall of fame winner for Best Fiction*, Prometheus Blog (July 30, 2020), https://www.lfs.org/blog/big-brother-truth-doublethink-thoughtcrime-newspeak-memory-holes-socialism-liberalism-liberty-and-tyranny-an-appreciation-of-george-orwells-nineteen-eighty-four-a-1984-prometheus-ha/.

[36] *The Color Purple*, Goodreads, https://www.goodreads.com/book/show/52892857-the-color-purple?from_search=true&from_srp=true&qid=dXcyxsISvW&rank=1 (last visited Nov. 27, 2023).

[37] Phillip Sitter, *Urbandale schools pause removing books referencing gender identity, sexual orientation*, Des Moines Register (Aug. 4, 2023, https://www.desmoinesregister.com/story/news/local/urbandale/2023/08/03/urbandale-pauses-removing-state-banned-books-with-lgbtq-references-gender-identity-iowa-book-ban/70522886007/.

libraries.[38] The shortened list, however, still includes titles such as *Gender Queer: A Memoir* (winner of the ALA Alex Award)[39] by Maia Kobabe; *Beloved* (winner of the Pulitzer Prize for Fiction, American Book Award, Anisfield-Wolf Book Award, and Frederic G. Melcher Book Award)[40] by Toni Morrison; *Like a Love Story* by Abdi Nazemian; and *Call Me By Your Name* (Lambda Literary Award for Gay Fiction)[41] by Andre Aciman. See Appendix B (the list of books Defendant URBANDALE COMMUNITY SCHOOL DISTRICT subsequently identified for removal).

115.   On information and belief, Mason City Community School District used ChatGPT to identify a list of books that purportedly depict sex acts and pulled 19 books from school shelves.[42] See Appendix C (the list of books Mason City Community School District identified for removal). Also, on information and belief, Ankeny Community School District has eliminated access to books for students in kindergarten through sixth grade, including *All Are Welcome* by Alexandra Penfold, and *Pink Is for Boys* by Robb Pearlman.

116.   Defendant IOWA CITY COMMUNITY SCHOOL DISTRICT circulated a list of 67 books for removal, including *Brave Face* by Shaun David Hutchinson; *All Boys Aren't Blue* by

---

[38] *Id.*

[39] American Library Association, *2020 Alex Award Winners,* https://www.ala.org/awardsgrants/2020-alex-award-winners-2 (last visited Nov. 27, 2023).

[40] *Beloved,*                                                                                          Goodreads, https://www.goodreads.com/book/show/6149.Beloved?ref=nav_sb_ss_1_8 (last visited Nov. 27, 2023).

[41] Lambda Literary, *Lambda Literary Awards Finalists & Winners,*, https://lambdaliterary.org/awards/previous-winners-3/?a_search=Call+me+by+your+name&award_year=&award_classifications=&award_status=&award_categories= (last visited Nov. 27, 2023).

[42] Andrew Paul, *School district uses ChatGPT to help remove library books,* Popular Science (Aug. 14, 2023), https://www.popsci.com/technology/iowa-chatgpt-book-ban/.

Goerge M. Johnson; and *Beyond Magenta: Transgender Teens Speak Out* (winner of the 2015 Flora Stieglitz Straus award)[43] by Susan Kuklin. See Appendix D (the list of books Defendant IOWA CITY COMMUNITY SCHOOL DISTRICT identified for removal).

117.    Defendant WEST DES MOINES COMMUNITY SCHOOLS circulated a list of 47 books for removal, including *Gender Queer: A Memoir* by Maia Kobabe; *Lawn Boy* (winner of the ALA Alex Award)[44] by Jonathan Evison; and *Slaughterhouse Five*, by Kurt Vonnegut. See Appendix E (the list of books Defendant WEST DES MOINES COMMUNITY SCHOOLS identified for removal).

118.    Overall, "more than 450 individual works by more than 300 authors have already been pulled from the shelves of Iowa school districts as a result of Senate File 496."[45]

119.    By targeting these books for removal from Iowa schools and depriving students of access to these materials based on their content and viewpoint, Defendants have prevented marginalized students such as LGBTQ+ young people from seeing themselves reflected in the stories collected in their classrooms and libraries. Plaintiff Students are denied the comfort of narratives that include LGBTQ+ characters and the solace that they are not alone.

120.    Plaintiff T.S. found meaning in the book *Rick* by Alex Gino, which chronicles the struggles of a gender nonconforming boy who finds support at a GSA meeting. She has long hoped

---

[43] Bank Street College of Education, Children's Book Committee, *Past Winners*, https://www.bankstreet.edu/library/center-for-childrens-literature/childrens-book-committee/past-winners/ (last visited Nov. 27, 2023).

[44] American Library Association: Young Adult Library Services Association, *2019 Alex Awards*, https://www.ala.org/yalsa/2019-alex-awards (last visited Nov. 27, 2023).

[45] Tim Webber, *Which banned books have been removed from Iowa schools? Our updated database lists them*, Des Moines Register (Oct. 16, 2023), https://www.desmoinesregister.com/story/news/education/2023/10/16/database-banned-books-removed-from-iowa-school-libraries-under-new-state-law-senate-file-496/70995919007/.

to read the book *Gender Queer: A Memoir* by Maia Kobabe, but never got around to doing so before passage of SF 496. Because Defendant URBANDALE COMMUNITY SCHOOL DISTRICT has banned the book from school libraries and classrooms as a result of SF 496, T.S. can no longer check it out from her school library. If *Gender Queer: A Memoir* were available, T.S. would check it out. As a queer person, T.S. feels that SF 496 erases her identity from public view.

121.    Plaintiff B.F. long has enjoyed graphic novels and other fiction containing LGBTQ+ representation that were available in their school library, such as *Heartstopper* by Alice Oseman; *Lumberjanes* by Shannon Watters, Grace Ellis, Gus Allen, and ND Stevenson; *Drama* by Raina Telgemeier; and *Laura Dean Keeps Breaking Up With Me* by Mariko Tamaki. B.F. was insulted by the list of books that Defendant URBANDALE COMMUNITY SCHOOL DISTRICT banned. Several of the titles on the original list were books that were important to B.F. growing up because they included LGBTQ+ themes or characters. B.F. felt degraded at having their identity labeled too inappropriate to even be in the school. The law and Defendant URBANDALE COMMUNITY SCHOOL DISTRICT's implementation of it caused B.F. to feel as though they should be ashamed of who they are. B.F. would like to read books on the list for removal, such as *Call Me By Your Name* by Andre Aciman, and *The Color Purple* by Alice Walker. If they were not banned, B.F. would check out the books  from the school library. Some of the books on the list are even recommended reading before college. Defendant URBANDALE COMMUNITY SCHOOL DISTRICT's implementation of SF 496 has deprived B.F. of the opportunity to obtain these books in school and to work through them with other students.

122.    Plaintiff B.F.S. reviewed the long list of books that Defendant WEST DES MOINES COMMUNITY SCHOOLS created in implementing SF 496.  B.F.S. recognized that

35

many of the books on the list include LGBTQ+ characters and authors, which bothered B.F.S. because they wish to read books at school that reflect their identity and experience.

123.    Queer literature is an important part of Plaintiff P.B.-P.'s life. He ceased feeling out of place in his own skin after reading *Gracefully Grayson* by Ami Polonsky, a story about a transgender young person. *Orlando* by Virginia Woolf helped him realize that queer people existed in past generations and that being queer does not need to be labeled the way it is today. *Heartstopper* by Alice Oseman; *Good Omens* (no. 68 on BBC's top 200 best-loved novels)[46] by Terry Pratchet and Neil Gaiman; and *Red, White, and Royal Blue* (winner of the ALA Alex Award)[47] by Casey McQuiston gave him hope that one day his life could be filled with as much laughter and queer joy as those characters had. These books made P.B.-P. feel safe and welcomed, and he fears that Defendant WATERLOO COMMUNITY SCHOOL DISTRICT's implementation of SF 496 will deny him access to these books he adores, in addition to queer literature he has yet to read.

124.    Plaintiff P.C. struggled with their identity growing up. At age 11, P.C. began to read books involving queer people, which opened up a world for them. P.C. discovered words that P.C. could use to understand themself and describe their own identity. Literature remains important to P.C.

125.    When P.C. was in seventh grade, they read *Melissa* by Alex Gino. *Melissa* holds special meaning for P.C. because it was the first time they had encountered a depiction of a transgender child. Knowing that schools have removed *Melissa* frustrates P.C. because its removal communicates to transgender children such as their younger sister Plaintiff A.C. that these children

---

[46] *The Big Read*, BBC, https://www.bbc.co.uk/arts/bigread/top100_2.shtml (last visited Nov. 2, 2023).

[47] 2020 Alex Award Winners, *supra* note 44.

"are 'inappropriate' to exist with other children, as if their existence itself is somehow sexual or perverse." P.C. hopes their sister can read *Melissa*. P.C. hopes the book can remind their sister, even if just by sitting on a shelf, that she belongs in her school just as much as any other kid does and she has nothing to be ashamed of.

126.    Last year, a teacher loaned P.C. the book *Last Night at the Telegraph Club*, by Melinda Lo, a novel set in 1954 concerning the experience of being queer as a Chinese-American teenager. P.C. found it to be a "wonderful, wonderful" book, and cried several times while reading it, struck by its beautiful portrayal of sapphic relationships, gender diversity in lesbians, and teenage relationships. P.C. states, "It was thoughtful and nuanced, and extremely relatable, despite the different culture, place, and time. It made me feel both seen and freer to have read it." Because the book also contains a brief sex scene, it no longer sits on their teacher's classroom shelf.

127.    Notably, school districts across the state have identified conflicting lists of books for removal, underscoring the overbreadth and the vagueness of the law. Numerous books appear on one or more lists but not others. For example, only 13 books appear on all three lists made public by the three Defendant School Districts (URBANDALE COMMUNITY SCHOOL DISTRICT, WEST DES MOINES COMMUNITY SCHOOLS, and IOWA CITY COMMUNITY SCHOOL DISTRICT). By contrast, 90 books have been banned in one of these districts but not the other two.

128.    Similar discrepancies exist between school districts statewide. Some school districts even have banned books considered part of the canon for students taking the AP Literature and Composition Exam, including *As I Lay Dying* by William Faulkner, *Brave New World* by Aldous Huxley, and *Their Eyes Were Watching God* by Zora Neale Hurston. Classics commonly taught in curricula across the country—such as *Grendel* by John Gardner, *I Know Why the Caged*

*Bird Sings* by Maya Angelou, and *Animal Farm* by George Orwell—also appear on the banned book lists of multiple districts, compromising students' education. Novels that were taught almost universally to previous generations of Iowans already have been struck from shelves across the state, and there are numerous school districts that have yet to post their banned book lists.

### SF 496 Has Targeted LGBTQ+ Students for Erasure in Schools and Chilled Plaintiff Students from Engaging in Protected Speech, Expression, and Association

129.    Even prior to passage of SF 496, LGBTQ+ students in Iowa faced heightened vulnerability in the educational environment relative to their non-LGBTQ peers with respect to bullying, harassment, and related mental health concerns. The findings of the 2021 Youth Risk Behavior Survey in Iowa document that gay, lesbian, or bisexual ("GLB") students exhibited substantially elevated rates of school-related challenges relative to their heterosexual peers. Notably, 13.1% of GLB students reported not attending school because they felt unsafe, compared to 6.9% of their heterosexual peers. Additionally, 11.6% of GLB students reported experiencing threats or injuries with weapons on school property, while the rate for their heterosexual peers was 5.9%. There was also a significant disparity in bullying experiences, with GLB students being twice as likely to experience bullying on school property or over electronic communication.

130.    The 2021 Youth Risk Behavior Survey in Iowa also demonstrates that GLB students experience significantly higher levels of depressive symptoms. A substantial 73.7% of GLB students reported feeling sad or hopeless almost every day for two weeks or more, whereas only 31.3% of their heterosexual peers reported the same. Moreover, a striking 64.7% of GLB students described their mental health as most of the time or always "not good," which contrasts starkly with the 26.9% reported by their heterosexual peers. Most alarming, GLB students reported markedly higher rates of contemplating suicide, developing plans for self-harm, and attempting

suicide. The Iowa Health and Human Services Iowa Youth Survey 2021 Findings reflect similar disparities.

131.     Significantly, each of these disparities is more dramatic in Iowa relative to national findings, as the Trevor Project's National Survey on LGBTQ Youth Mental Health for 2021 indicates.

132.     The Trevor Project also reports data for transgender and nonbinary students, finding 66% of transgender and nonbinary students in Iowa experience symptoms of depression; 76% experience symptoms of anxiety; 52% seriously considered suicide in the year prior; and 22% actually attempted suicide. Moving forward, the Trevor Project's survey may be the only source of information on this disparity, as the Iowa Department of Health and Human Services has chosen to withdraw from the CDC's Youth Risk Behavior Survey (which will inquire as to students' gender identity) in favor of its own Youth Survey (which will not).

133.     LGBTQ youth who found their school to be LGBTQ-affirming reported lower rates of suicidality and mental health concerns.[48] These findings underscore the urgent need for targeted

---

[48] April Ancheta, et al., *The Impact of Positive School Climate on Suicidality and Mental Health Among LGBTQ Adolescents: A systematic Review*, 37 J. Sch. Nurs. 2, (Apr. 2021), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8142116/; The Trevor Project, *2023 U.S. National Survey on the Mental Health of LGBTQ Young People* 21 (2023), https://www.thetrevorproject.org/survey-2023/assets/static/05_TREVOR05_2023survey.pdf.        Numerous studies document the way in which inclusive school environments can benefit LGBTQ+ youth. A 2019 survey, for instance, found that nearly 3 in 5 transgender students in Iowa were prevented from using names or pronouns consistent with their gender identity in school. GLSEN, School Climate for LGBTQ Students in Iowa (2019 State Snapshot) (2021), https://tinyurl.com/2ymx9ue2. Strikingly, however, transgender youth whose pronouns are "respected by all or most of the people in their lives attempted suicide at half the rate of those who did not have their pronouns respected." The Trevor Project, *2020 National Survey on LGBTQ Youth Mental Health* 9 (2020), https://perma.cc/MYV9-R696. Similarly, another study found that transgender youth who were able to use names and pronouns corresponding to their gender identity experienced a 29 percent decrease in reported thoughts of suicide and a 56 percent decrease in suicidal behavior. Stephen T. Russell *et al.*, *Chosen Name Use Is Linked to Reduced Depressive*

interventions, support, and legal protections to create a safer and more inclusive environment for LGBTQ+ youth in Iowa.

134.    SF 496 does the opposite. The don't say gay or trans, all-ages ban, book ban, and forced outing provisions, particularly when taken together, render LGBTQ+ students less safe and undermine and obstruct efforts to support them, to reduce mental health disparities, and to enforce protections against bullying and harassment.

135.    IOWA SAFE SCHOOLS has observed the impact of SF 496 on LGBTQ+ students across the state. Many students have reported feeling sad, hopeless, isolated, and frustrated that their identities are treated as "promiscuous," regardless of whether they are actually sexually active. Anti-LGBTQ+ bullying and harassment are on the rise. Tragically, due to the notable increase in completed suicides, IOWA SAFE SCHOOLS has begun formally documenting the number of completed suicides of LGBTQ+ youth as of calendar year 2023.

136.    On information and belief, numerous school districts, including Ames Community School District and Defendants IOWA CITY COMMUNITY SCHOOL DISTRICT and SIOUX CITY COMMUNITY SCHOOL DISTRICT, instructed teachers to remove rainbow images, Pride flags, and "safe space" stickers from classrooms because of SF 496. Ames Community School District informed school employees that they are required to report a student who speaks to them about gender identity—even if the interaction occurs outside of the school setting or typical work week.

137.    Plaintiff A.C. used to love school and could not wait to go every morning. But because of SF 496, she has become reluctant and fearful to go to school. A.C. now feels unsafe

---

*Symptoms, Suicidal Ideation, and Suicidal Behavior Among Transgender Youth*, 63 J. Adolescent Health 503 (2018).

and as if she is being watched. A.C. is aware, even at her young age, that teachers whom she once trusted are now not permitted to be sources of support to her, because of the law. A.C. is hurt, stressed, and upset as a result. The law sends A.C. the message that there is something wrong with her, and that she should be silenced and erased from school.

138.     SF 496 has heightened Plaintiff P.B.-P.'s fear of violence and harassment in school, and he knows his fears are shared by other LGBTQ+ students. Such fears are reasonable given his past experiences of bullying and harassment in Waterloo schools. For example, in 9th grade, P.B.-P. participated in a school play. While he was on stage, delivering a monologue, a middle school student, goaded on by others, shouted that he was going to shoot P.B.-P., identifying him by name. The school reported the threat to the police, but no action was taken by the police to P.B.-P.'s knowledge. P.B.-P. assumed that the student threatened him this way because of P.B.-P.'s support for transgender rights. This experience changed the way he navigates the world, leaving him anxious, and concerned that he currently attends school with the person who threatened his life. P.B.-P. is frequently harassed by classmates who yell anti-LGBTQ+ slurs at him and his friends unprovoked. Especially after SF 496, he feels as though he has a target on his back because SF 496 gives confidence to those who believe something is wrong with him because he is transgender, since the law itself reflects that belief.

139.     SF 496 stigmatizes and silences P.B.-P., chilling him from engaging in protected speech acknowledging who he is and advocating for the LGBTQ+ community. Despite the bullying and harassment P.B.-P. experienced, he used to feel more comfortable wearing clothing or buttons in school with the Pride rainbow flag or other indicators that he is a member of the LGBTQ+ community. After passage of SF 496, however, his worries about being a target have reached a new high, and he now self-censors such expression.

140.    P.B.-P. used to refer to his identity as transgender in class or related schoolwork when it was relevant, such as in essays on self-reflection, overcoming personal challenges, what he would say to his younger self, and what it means to be American. Now that SF 496 has been enacted, he self-censors such references out of concerns for his own safety and fear that mentioning his identity as transgender will get his teachers in trouble. Rather than correct peers and teachers who use incorrect pronouns to refer to him, P.B.-P. now self-censors because he fears discipline and does not want to get a teacher in trouble during class for correcting his own pronouns.

141.    SF 496 also chills P.B.-P. from engaging in speech protesting anti-LGBTQ+ legislation affecting Iowa students. As a member of his school's GSA during his freshman year, he led a protest against such measures, gathering outside of the school. After SF 496 was passed, P.B.-P. feels terrified of staging another protest. The law has caused anti-LGBTQ sentiment to increase at his school, and students fear punishment from school officials for participating in such a protest.

142.    Plaintiff T.S. similarly self-censors references to her identity in class, trying never to mention that she is a lesbian because she fears that teachers will react poorly and crack down on students as a result of SF 496. T.S. has experienced bullying in the past targeting her identity as a lesbian. She was called names, slurs, mocked, pushed to the ground, shoved into a locker, and bullied so harshly in science class that she repeatedly felt forced to go to a counselor's room instead of to class. She filled out at least 50 incident report sheets over the course of one year. She fears increased bullying as a result of SF 496.

143.    SF 496 causes Plaintiff B.F. to feel unwanted, shameful, and unwelcome in school. It interferes with B.F.'s relationship with teachers because B.F. self-censors mention of their gender identity and pronouns even to supportive teachers for fear of getting a teacher fired, and

for fear of harassment by other students who now feel encouraged to bully LGBTQ+ students as a result of the law. In the past, fellow students have harassed B.F., calling them slurs, a slut, and telling them to kill themself. Since SF 496 was passed, the harassment has become worse, making B.F. feel uncomfortable and less safe at school.

144.    The law has caused Plaintiff B.F.S. to feel as though they have a target on their back at school. B.F.S. already has experienced bullying in school this year for expressing their LGBTQ+ identity, including on "Culture Day," when students were invited to wear flags celebrating diverse cultures. Because B.F.S. wore rainbow socks and a Pride flag, another student yelled, "Jesus hates you! You're going to hell!" SF 496 sends the message to B.F.S. that students can expect this kind of targeted harassment if they express themselves as LGBTQ+. B.F.S. now thinks twice before wearing a Pride shirt, button, or anything else that expresses their identity and feels less safe at school.

145.    SF 496 causes Plaintiff ROBERT SMITH to fear for his friends who used to feel safe being themselves only at school, because they do not have supportive homes and do not wish to be outed to their parents by school officials. Stilwell Junior High School no longer feels like a safe space for SMITH and his friends. Some teachers who used to talk about LGBTQ issues no longer do. Some teachers took down their safe-space stickers. SF 496 "takes away safe people and safe spaces" from LGBTQ+ students, and SMITH fears that the emotional and mental health toll of the law will be so great for some of these students that "they may not make it through."

146.    Plaintiff JAMES DOE is aware of other students who have been bullied based on their LGBTQ+ identities but fear telling teachers about the bullying because they do not wish to be outed to their parents. DOE and other students are hesitant to bring up queer themes and topics in classes and outside of class in school for fear of getting teachers in trouble.

147.    SF 496 also chills students from associating for the purpose of expressing themselves, advocating for equality for LGBTQ+ students, and providing mutual support and community.

148.    The law has caused school districts across the state to restrict the activities of member GSAs within the IOWA SAFE SCHOOLS's GSA network and has forced some member GSAs to close altogether.

149.    School districts have prohibited GSAs from displaying signs or promoting the club in classrooms or hallways where students younger than seventh graders may be present, even in schools that include eighth or ninth graders, and even though other noncurricular clubs are not subject to the same restrictions. For example, an advisor for a member GSA in the College Community School District informed an IOWA SAFE SCHOOLS staff person, "With us being a 5th/6th building, we will not be able to run our GSA this year due to the new legislation," referring to SF 496's ban on programming, promotion, or instruction relating to sexual orientation or gender identity in kindergarten through grade six.

150.    Other GSA advisors have pointed to the law's forced outing provision as the cause of restrictions and/or closure of GSAs. Students and faculty members alike are confused about what speech during a GSA meeting could trigger a report home or whether merely attending a meeting is sufficient. Faculty members who previously sponsored student-led GSA chapters now are reluctant to do so for fear of being required to out student members as a result of the law, forcing these chapter members of IOWA SAFE SCHOOLS to close.

151.    Before the passage of SF 496, Plaintiff A.C. attended meetings of the GSA at her school as a third grader. The purpose of these meetings was to build community among the LGBTQ+ students at the school. This year, as a result of SF 496, Defendant IOWA CITY

COMMUNITY SCHOOL DISTRICT ceased GSAs for kindergarten through sixth grades. A.C. and other LGBTQ+ students at her school have not been able to attend a meeting of the GSA this year.

152.    SF 496 has caused the number of members of the Waterloo West High School GSA to dwindle this year, as students now fear being outed to unsupportive family members and increased bullying and harassment from peers. Waterloo West High School's GSA is a happy space that should be accessible to all interested LGBTQ+ students, but SF 496 interferes with students' ability to create a supportive community for each other.

153.    Plaintiff ROBERT SMITH was active in Stilwell Junior High School's GSA last year and looked forward to GSA meetings this year. The GSA served as a support for him and other LGBTQ+ students. After SF 496, some of ROBERT SMITH's peers would not join the GSA for fear of being outed to unsupportive family members. Worse, ROBERT SMITH recently learned that, as a result of SF 496, the school's GSA has ceased altogether. As in other schools after SF 496, ROBERT SMITH'S GSA could not find a willing teacher to serve as sponsor this year.

154.    Plaintiff JAMES DOE is active in his school's GSA and knows fellow students who would like to join the GSA but will not because they are afraid of facing hostility at home if they are outed by SF 496's requirements. LGBTQ+ students' reluctance to join the GSA diminishes DOE's own experience of community in the GSA. DOE also knows students who are afraid to use the name and pronoun that match their gender identities, because SF 496 will cause school officials to out these students to unsupportive parents, and they will face negative consequences at home. DOE feels that SF 496 has created a climate of fear that prevents students from coming together to support each other and express a common message of pride in who they are.

155.    Worst of all, SF 496 also deprives LGBTQ+ young people in kindergarten through sixth grade of any sense of safety or security. P.C. sums up the impact on their 9-year-old sister A.C. as follows:

> My little sister is a lot younger than me—seven to eight years, depending on what time of the year it is. It was New Years when she was born, and I remember holding her, and thinking that she was so small that she didn't look real. Her presence contextualized all of my difficulties, my disappointments, my mistakes—I was there to pave the way, so she didn't stumble on the same cracks that I did. I don't know how well I did, in that regard, but I certainly tried as hard as I could. She's my little sister, after all. Isn't the natural instinct just to swoop them up and protect them from everything that could hurt?
>
> In the end, that's what hits me the hardest about [SF 496]. Literature paved the way for me, and I was meant to be paving the way for her—but how can I do that without the books? How can I look my little sister in the eye and tell her not to worry, when the school systems she's in want to eliminate her existence from every library, every curriculum? How can I promise that I'll keep her safe against something I can't stop? Because it's not just about what the children are learning. It's about safety. When my sister sees a rainbow in a classroom, it shows her that she is safe there. It says that that room contains people who will not harass or harm her for something she cannot change.
>
> SF 496 hasn't been easy for my little sister. I see how she's more and more worried about going to school, how she conceals herself instead of taking pride in who she is. No longer can she tell if someone is safe, because they aren't allowed to advertise that—and it means she has to treat everyone as unsafe, by default. It is heartbreaking to watch her be made to feel alone, silenced, and less than at school, and to know that the state we have lived in for our entire lives supports that.

## COUNT I
### Content and Viewpoint Based Discrimination in Violation of First Amendment Right to Receive Information

156.    Plaintiffs incorporate all preceding paragraphs as if fully set forth herein by this reference.

157.    Plaintiff P.B.-P. states this claim against State Defendants and Defendants WATERLOO COMMUNITY SCHOOL DISTRICT; JARED SMITH, in his official capacity as

Waterloo Community School District Superintendent; and SUE FLYNN, JESSE KNIGHT, ASTOR WILLIAMS, LYLE SCHMITT, STACIE MILLS, JANELLE EWING, PAM ARNDORFER, and JEFF SOMMERFELDT, in their official capacities as board members of the Waterloo Community School District.

158.    Plaintiffs P.C. and A.C. state this claim against State Defendants and Defendants IOWA CITY COMMUNITY SCHOOL DISTRICT; MATT DEGNER, in his official capacity as Iowa City Community School District Superintendent; and MOLLY ABRAHAM, J.P. CLAUSSEN, CHARLIE EASTHAM, JAYNE FINCH, RUTHINA MALONE, MITCH LINGO, and LISA WILLIAMS, in their official capacities as board members of the Iowa City Community School District.

159.    Plaintiffs T.S. and B.F. state this claim against State Defendants, and Defendants URBANDALE COMMUNITY SCHOOL DISTRICT; ROSALIE DACA, in her official capacity as Urbandale Community School District Superintendent; and KATHERINE HOWSARE, RACHEL KENT, JENNY MEADE, JASON MENKE, JULIE MITCHELL, STEVE RICHMAN, JOSH VAN RYSWYK, CARISSA WILLIAMS, and MARGARET YOUNG_in their official capacities as board members of the Urbandale Community School District.

160.    Plaintiffs B.F.S. and ROBERT SMITH state this claim against State Defendants and Defendants WEST DES MOINES COMMUNITY SCHOOLS; MATT ADAMS, in his official capacity as West Des Moines Community Schools Superintendent; and JEFF HICKS, MICHAEL ANDRESKI, ELIZABETH LARSON, LILA P. MONTOYA STARR, FANNETTE ELLIOTT, JILL CATON JOHNSON, and ANADELIA MORGAN, in their official capacities as board members of the West Des Moines Community Schools District.

161.    Plaintiff JAMES DOE states this claim against State Defendants and Defendants SIOUX CITY COMMUNITY SCHOOL DISTRICT; ROD EARLEYWINE, in his official capacity as Sioux City Community School District Superintendent; and DAN GREENWELL, LANCE EHMCKE, JAN GEORGE, TREYLA LEE, JOHN MEYERS, BOB MICHAELSON, and EARL MILLER, in their official capacities as board members of the Sioux City Community School District.

162.    Defendants are state actors operating under color of state law.

163.    The First Amendment, as applied to the states through the Fourteenth Amendment and enforceable pursuant to 42 U.S.C. § 1983, provides in part that the government "shall make no law . . . abridging the freedom of speech."

164.    SF 496 on its face and as implemented by Defendants perpetrates content-based discrimination and is a façade for viewpoint-based discrimination and therefore is facially unconstitutional under the First Amendment.

165.    The book ban provisions of SF 496 on their face and as implemented by Defendants censor materials addressing gender identity and sexual orientation and containing messages of inclusion, affirmation, and support with respect to students' LGBTQ+ sexual orientation and gender identity based on content and viewpoint and therefore are unconstitutional on their face and as applied to Plaintiffs under the First Amendment.

166.    Students at Iowa's public schools have the right under the First Amendment as applied to the State of Iowa by the Fourteenth Amendment to receive information and ideas.

167.    Once the State creates a library, any action to regulate that library necessarily invokes the First Amendment's concerns and protections.

168.    A student's constitutional right to receive information is violated when library materials are removed for a purpose not reasonably related to a legitimate pedagogical concern. Students also have a right under the First Amendment to be free from official conduct in school— such as removal of books from school libraries—that is intended to suppress ideas based on disapproval of their content.

169.    Students' right to receive information and ideas includes the right to access and read the books available in the school library, a non-curricular space for voluntary, self-led access to materials that is entitled to unique protection in the school environment under the U.S. Constitution.

170.    The book ban provisions require the removal and exclusion of "any material with descriptions or visual depictions of a sex act" from all Iowa school libraries and the removal of materials relating to gender identity or sexual orientation from school libraries in a school with kindergarten through sixth grades. SF 496 thus on its face impermissibly infringes upon students' right to receive information and ideas from books at the school library based upon the content of these books, the message they mean to convey, and the ideas and subject matter expressed therein.

171.    In its purpose and effect, SF 496 is an impermissible infringement upon students' right to receive information and ideas from books in the school library based upon the views expressed therein in that it was enacted with the intent to and has been applied to remove books by LGBTQ+ authors expressing messages of inclusion, affirmation, and support for LGBTQ+ students and persons, as the legislative history, implementation, and impact of SF 496 reveals.

172.    On its face, SF 496 is an impermissible infringement upon students' right to receive information and ideas from books at the school library based upon the views expressed in that it permits materials containing descriptions or visual depictions of a sex act if those materials are

"[r]eligious books such as the Bible, the Torah, and the Koran," while mandating the removal and exclusion of all other materials with the same description or visual depiction of a sex act.

173.   "[M]aterial with descriptions or visual depictions of a sex act" and materials "relating to gender identity or sexual orientation" are not unprotected speech in and of themselves. Prior to SF 496, Iowa laws already protected minors from obscene materials, ensured schools maintained effective school library programs, and provided for local control over school library materials.

174.   On its face, in its intent, purpose, and effect, SF 496 attempts to prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion in Iowa schools, such as by censoring messages of inclusion, affirmation, and support of LGBTQ+ students and persons, without any legitimate pedagogical reason. The bill's proponents made that much clear when they announced their intent to combat "wokism,"[49] a "sinister agenda"[50] and "disgusting"[51] "narratives that many Iowa parents find objectionable."[52]

175.   SF 496, on in its face and as applied to Plaintiffs, is a content- and viewpoint-based regulation that is not justified by a compelling government interest or narrowly tailored to achieve any arguable interest and as such violates Plaintiffs' First Amendment rights on its face and as applied.

176.   Plaintiffs are entitled to prospective relief from the Defendants to remedy the deprivations suffered as a result of the violations of their First Amendment rights.

---

[49] *House video (2023-04-04)*, *supra* note 10, at 1:57:34 PM (quoting IA Rep. Wheeler).

[50] *Iowa senator criticized for comments about Iowa teachers*, *supra* note 8.

[51] *Senate video (2023-04-19)*, *supra* note 1, at 6:57:03 PM (quoting IA Sen. Zaun).

[52] *Senate video (2023-03-22)*, *supra* note 17, at 7:16:12 PM (quoting IA Senator Rozenboom).

177.    Plaintiffs are entitled to declaratory relief that SF 496 is unconstitutional and unenforceable in that it requires the removal and exclusion of materials from a school library solely on the basis they contain a description or visual depiction of a sex act or relate to gender identity or sexual orientation.

178.    Plaintiffs are entitled to injunctive relief and request this Court enjoin Defendants from enforcing SF 496 by removing and excluding materials from school libraries solely on the basis they contain a description or visual depiction of a sex act or relate to gender identity or sexual orientation, investigating school districts or employees of school districts for potential violations of SF 496 related to library programs, or subjecting superintendents or employees of school districts to hearings that may result in disciplinary action because of a violation of SF 496. Plaintiffs further request that this Court order Defendant School Districts to restore any materials already removed from their respective library programs in implementing SF 496. Plaintiffs will suffer irreparable injury and will continue to suffer real and immediate threat of irreparable injury as a direct and proximate result of the existence, operation, enforcement, and threat of enforcement of SF 496. Plaintiffs have no plain, adequate, or speedy remedy at law.

## COUNT II
**Deprivation of Freedom of Speech and Expression in Violation of First Amendment**

179.    Plaintiffs incorporate all preceding paragraphs as if fully set forth herein by this reference.

180.    Plaintiff IOWA SAFE SCHOOLS states this claim against State Defendants.

181.    Plaintiff P.B.-P. states this claim against State Defendants and Defendants WATERLOO COMMUNITY SCHOOL DISTRICT; JARED SMITH, in his official capacity as Waterloo Community School District Superintendent; and SUE FLYNN, JESSE KNIGHT, ASTOR WILLIAMS, LYLE SCHMITT, STACIE MILLS, JANELLE EWING, PAM

ARNDORFER, and JEFF SOMMERFELDT, in their official capacities as board members of the Waterloo Community School District.

182.    Plaintiffs P.C. and A.C. state this claim against State Defendants and Defendants IOWA CITY COMMUNITY SCHOOL DISTRICT; MATT DEGNER, in his official capacity as Iowa City Community School District Superintendent; and MOLLY ABRAHAM, J.P. CLAUSSEN, CHARLIE EASTHAM, JAYNE FINCH, RUTHINA MALONE, MITCH LINGO, and LISA WILLIAMS, in their official capacities as board members of the Iowa City Community School District.

183.    Plaintiffs T.S. and B.F. state this claim against State Defendants, and Defendants URBANDALE COMMUNITY SCHOOL DISTRICT; ROSALIE DACA, in her official capacity as Urbandale Community School District Superintendent; and KATHERINE HOWSARE, RACHEL KENT, JENNY MEADE, JASON MENKE, JULIE MITCHELL, STEVE RICHMAN, JOSH VAN RYSWYK, CARISSA WILLIAMS, and MARGARET YOUNG, in their official capacities as board members of the Urbandale Community School District.

184.    Plaintiffs B.F.S. and ROBERT SMITH state this claim against State Defendants and Defendants WEST DES MOINES COMMUNITY SCHOOLS; MATT ADAMS, in his official capacity as West Des Moines Community Schools Superintendent; and JEFF HICKS, MICHAEL ANDRESKI, ELIZABETH LARSON, LILA P. MONTOYA STARR, FANNETTE ELLIOTT, JILL CATON JOHNSON, and ANADELIA MORGAN, in their official capacities as board members of the West Des Moines Community Schools District.

185.    Plaintiff JAMES DOE states this claim against State Defendants and Defendants SIOUX CITY COMMUNITY SCHOOL DISTRICT; ROD EARLEYWINE, in his official capacity as Sioux City Community School District Superintendent; and DAN GREENWELL,

LANCE EHMCKE, JAN GEORGE, TREYLA LEE, JOHN MEYERS, BOB MICHAELSON, and EARL MILLER, in their official capacities as board members of the Sioux City Community School District.

186.    Defendants are state actors operating under color of state law.

187.    The First Amendment, applicable to the State of Iowa by the Fourteenth Amendment, provides in part that the government "shall make no law . . . abridging the freedom of speech."

188.    Discrimination against speech based on its content and viewpoint is a violation of the First Amendment. Efforts to suppress speech based on the government's opposition to the speaker's views or beliefs are unconstitutional absent narrow tailoring in service of a compelling justification.

189.    On its face and as the legislative history shows, SF 496 is a façade for content and viewpoint discrimination. By design, the don't say gay or trans provision, the all-ages ban, the book ban provisions, and the forced outing provisions of SF 496 are meant to suppress speech on the basis of viewpoint and content. SF 496 is facially unconstitutional under the First Amendment.

190.    SF 496 impermissibly chills the exercise of all Plaintiff Students' constitutionally protected speech based on the content and viewpoint of their speech and is unconstitutional as applied to Plaintiffs under the First Amendment.

191.    Defendant School Districts have implemented and unless enjoined will continue to implement SF 496 in a way that explicitly censors messages of inclusion, affirmation, and support with respect to students' LGBTQ+ orientation or gender identity. SF 496 therefore is unconstitutional as applied to Plaintiffs under the First Amendment.

192.     The First Amendment guarantees Iowa students the right to speak, express themselves, and associate with other like-minded students, including in schools. These rights include the right to speak about and express their own gender identity or sexual orientation, to affirm their friends' or loved ones' gender identity or sexual orientation, to ask questions of their teachers and trusted school staff members about gender identity and sexual orientation, to organize into or join GSAs, to wear clothing consistent with their gender or that otherwise indicates that they are members of the LGBTQ+ community, and to otherwise engage in conduct expressing messages of inclusion, affirmation, and support for LGBTQ+ students and persons.

193.     Speech and expression "relating to gender identity or sexual orientation," such as coming-out speech, is protected First Amendment activity.

194.     SF 496 on its face and the manner in which the Defendants are implementing it impermissibly chills Plaintiffs' and other students' speech and expression and causes them to self-censor. The don't say gay or trans provision on its face, in its intent and purpose, as applied, and in effect impermissibly infringes upon students' expressive rights based upon the content of the expression, the message they mean to convey, and the ideas and subject matter expressed individually or as groups associated for that purpose, and on its face, infringes upon said rights based upon the viewpoint of the speaker.

195.     The don't say gay or trans provision, the all-ages ban, the book ban provisions, and the forced outing provisions taken together chill student speech and expression related to sexual orientation and gender identity at all grade levels. By prohibiting speech related to gender identity or sexual orientation in kindergarten through sixth grade; requiring that educational programming for all grades, including all activities in and outside of the classroom, exclude descriptions of sex acts; banning books from classrooms and libraries; mandating the outing of students to parents or

guardians regardless of whether doing so would put the student at risk; inviting anonymous complaints by parents; and enforcing the law via draconian penalties including the potential loss of licensure for school employees and loss of accreditation for schools, the law communicates to all LGBTQ+ students that they should remain silent.

196.    SF 496 is not narrowly tailored to a compelling government interest.

197.    As a content- and viewpoint-based regulation that is neither justified by a compelling government interest nor narrowly tailored to achieve any arguable interest, SF 496 violates students' First Amendment rights.

198.    On its face and in its intent, purpose, and effect, SF 496 attempts to prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion, such as the inclusion, affirmation, and support of LGBTQ+ students and persons, and thus violates students' First Amendment rights.

199.    On its face and in its intent, purpose, and effect, SF 496 infringes upon students' expressive rights without any reasonable relation to legitimate pedagogical concerns and is thus unconstitutional.

200.    In the past, Plaintiff Students have engaged in protected speech and expression concerning their own or others' sexual orientation and gender identity in school contexts and with other students. They wish to continue to do so. However, because of SF 496, these Plaintiffs have been chilled and/or forced to self-censor by taking care not to mention their own sexual orientation and/or gender identity, or otherwise engaging in related speech and expression in school contexts when they otherwise would do so.

201.    Furthermore, SF 496 chills and precludes teachers and school officials from answering students' questions about the sexual orientation, family structure, and/or gender identity

of Plaintiff Students in the same way that teachers and school officials would answer questions about non-LGBTQ+ students or their families. SF 496 chills and precludes teachers and school officials from intervening to explain that these Plaintiffs and their families are as worthy as any others and that LGBTQ+ students are not inherently vulgar, promiscuous, or obscene. SF 496 reinforces dangerous and harmful beliefs that Plaintiff Students are shameful or "inappropriate" for discussion in a school context, but that cisgender and straight children and families are not. SF 496 further chills and precludes teachers and school officials from protecting Plaintiff Students from stigma and bullying as a result of their sexual orientation and gender.

202.    Plaintiffs' speech is presently being chilled even before enforcement of SF 496 starts and it will continue to be affected as Defendants and their agents seek to enforce the law. SF 496 objectively chills protected expression. Plaintiffs are entitled to prospective relief from the Defendants to remedy the deprivations suffered as a result of the violations of their First Amendment rights.

203.    Plaintiffs are entitled to declaratory relief that SF 496 is unconstitutional and unenforceable.

204.    Plaintiffs are entitled to injunctive relief and request this Court enjoin Defendants from enforcing SF 496 and that this Court order School District Defendants to restore any materials and revert any changes to school policy already made to comply with SF 496. Plaintiffs will suffer irreparable injury and will continue to suffer real and immediate threat of irreparable injury as a direct and proximate result of the existence, operation, enforcement, and threat of enforcement of SF 496. Plaintiffs have no plain, adequate, or speedy remedy at law.

## COUNT III
**Deprivation of Freedom of Expressive Association in Violation of First Amendment**

205.    Plaintiffs incorporate all preceding paragraphs as if fully set forth herein by this reference.

206.    Plaintiff IOWA SAFE SCHOOLS states this claim against State Defendants and against Defendants IOWA CITY COMMUNITY SCHOOL DISTRICT; MATT DEGNER, in his official capacity as Iowa City Community School District Superintendent; and MOLLY ABRAHAM, J.P. CLAUSSEN, CHARLIE EASTHAM, JAYNE FINCH, RUTHINA MALONE, MITCH LINGO, and LISA WILLIAMS, in their official capacities as board members of the Iowa City Community School District; WATERLOO COMMUNITY SCHOOL DISTRICT; JARED SMITH, in his official capacity as Waterloo Community School District Superintendent; and SUE FLYNN, JESSE KNIGHT, ASTOR WILLIAMS, LYLE SCHMITT, STACIE MILLS, JANELLE EWING, PAM ARNDORFER, and JEFF SOMMERFELDT, in their official capacities as board members of the Waterloo Community School District; WEST DES MOINES COMMUNITY SCHOOLS; MATT ADAMS, in his official capacity as West Des Moines Community Schools Superintendent; and JEFF HICKS, MICHAEL ANDRESKI, ELIZABETH LARSON, LILA P. MONTOYA STARR, FANNETTE ELLIOTT, JILL CATON JOHNSON, and ANADELIA MORGAN, in their official capacities as board members of the West Des Moines Community Schools District; SIOUX CITY COMMUNITY SCHOOL DISTRICT; ROD EARLEYWINE, in his official capacity as Sioux City Community School District Superintendent; and DAN GREENWELL, LANCE EHMCKE, JAN GEORGE, TREYLA LEE, JOHN MEYERS,  BOB MICHAELSON, and EARL MILLER, in their official capacities as board members of the Sioux City Community School District.

207.    Plaintiff A.C. states this claim against State Defendants and Defendants IOWA CITY COMMUNITY SCHOOL DISTRICT; MATT DEGNER, in his official capacity as Iowa City Community School District Superintendent; and MOLLY ABRAHAM, J.P. CLAUSSEN, CHARLIE EASTHAM, JAYNE FINCH, RUTHINA MALONE, MITCH LINGO, and LISA WILLIAMS, in their official capacities as board members of the Iowa City Community School District.

208.    Plaintiff P.B.-P. states this claim against State Defendants and Defendants WATERLOO COMMUNITY SCHOOL DISTRICT; JARED SMITH, in his official capacity as Waterloo Community School District Superintendent; and SUE FLYNN, JESSE KNIGHT, ASTOR WILLIAMS, LYLE SCHMITT, STACIE MILLS, JANELLE EWING, PAM ARNDORFER, and JEFF SOMMERFELDT, in their official capacities as board members of the Waterloo Community School District.

209.    Plaintiff ROBERT SMITH states this claim against State Defendants and Defendants WEST DES MOINES COMMUNITY SCHOOLS; MATT ADAMS, in his official capacity as West Des Moines Community Schools Superintendent; and JEFF HICKS, MICHAEL ANDRESKI, ELIZABETH LARSON, LILA P. MONTOYA STARR, FANNETTE ELLIOTT, JILL CATON JOHNSON, and ANADELIA MORGAN, in their official capacities as board members of the West Des Moines Community Schools District.

210.    Plaintiff JAMES DOE states this claim against State Defendants and Defendants SIOUX CITY COMMUNITY SCHOOL DISTRICT; ROD EARLEYWINE, in his official capacity as Sioux City Community School District Superintendent; and DAN GREENWELL, LANCE EHMCKE, JAN GEORGE, TREYLA LEE, JOHN MEYERS, BOB MICHAELSON,

and EARL MILLER,, in their official capacities as board members of the Sioux City Community

School District.

211.   Plaintiffs A.C., P.B.-P., ROBERT SMITH, and JAMES DOE are referred to

collectively as the Plaintiff Student GSA members.

212.   Defendants are state actors operating under color of state law.

213.   The First Amendment, applicable to the State of Iowa by the Fourteenth

Amendment, provides in part that the government "shall make no law . . . abridging . . . the right

of the people peaceably to assemble."

214.   On its face and as applied, the don't say gay or trans provision, the all-ages ban,

and the forced outing provision of SF 496 violate the rights of Plaintiff Student GSA members,

members of Plaintiff IOWA SAFE SCHOOLS' GSA network, and other students to freedom of

expressive association under the First Amendment to the Constitution.

215.   Defendants have abridged and are continuing to abridge the right to expression and

freedom of expressive association of Plaintiff Student GSA members, members of Plaintiff IOWA

SAFE SCHOOLS' GSA network, and other students.

216.   Defendants have created and maintain a limited public forum for student expression

and association from which they have excluded Plaintiff Student GSA members and other students

not before the Court from access on terms equal to others in a manner that constitutes viewpoint

discrimination and that was and is unreasonable in light of the purposes the forum serves.

217.   Defendants have discriminated and are continuing to discriminate against Plaintiff

Student GSA members, members of Plaintiff IOWA SAFE SCHOOLS' GSA network, and other

students based upon the viewpoint and content of their expression and expressive association.

218.    By restricting the ability of Plaintiff Student GSA members, members of Plaintiff IOWA SAFE SCHOOLS' GSA network, and other students to express themselves and associate with others in student groups on equal terms to other student groups, Defendants have prohibited and unless enjoined will continue to prohibit Plaintiff Student GSA members and other students not before the Court from enjoying the support, inclusion, and affirmation such groups provide, causing irreparable harm.

219.    Plaintiffs are entitled to injunctive relief and request this Court enjoin Defendants from enforcing SF 496 to prohibit students from becoming members of GSAs or attending GSA meetings and events or to prohibit GSAs from advertising or promoting their group, or to otherwise interfere with the lawful conduct of the GSAs. Plaintiffs will suffer irreparable injury and will continue to suffer real and immediate threat of irreparable injury as a direct and proximate result of the existence, operation, enforcement, and threat of enforcement of SF 496. Plaintiffs have no plain, adequate, or speedy remedy at law.

## <u>COUNT IV</u>
### Void for Vagueness under First and Fourteenth Amendment

220.    Plaintiffs incorporate all preceding paragraphs as if fully set forth herein by this reference.

221.    Plaintiff IOWA SAFE SCHOOLS states this claim against State Defendants.

222.    Plaintiff P.B.-P. states this claim against State Defendants and Defendants WATERLOO COMMUNITY SCHOOL DISTRICT; JARED SMITH, in his official capacity as Waterloo Community School District Superintendent; and SUE FLYNN, JESSE KNIGHT, ASTOR WILLIAMS, LYLE SCHMITT, STACIE MILLS, JANELLE EWING, PAM ARNDORFER, and JEFF SOMMERFELDT, in their official capacities as board members of the Waterloo Community School District.

223.    Plaintiffs P.C. and A.C. state this claim against State Defendants and Defendants IOWA CITY COMMUNITY SCHOOL DISTRICT; MATT DEGNER, in his official capacity as Iowa City Community School District Superintendent; and MOLLY ABRAHAM, J.P. CLAUSSEN, CHARLIE EASTHAM, JAYNE FINCH, RUTHINA MALONE, MITCH LINGO, and LISA WILLIAMS, in their official capacities as board members of the Iowa City Community School District.

224.    T.S. and B.F. state this claim against State Defendants, and Defendants URBANDALE COMMUNITY SCHOOL DISTRICT; ROSALIE DACA, in her official capacity as Urbandale Community School District Superintendent; and KATHERINE HOWSARE, RACHEL KENT, JENNY MEADE, JASON MENKE, JULIE MITCHELL, STEVE RICHMAN, JOSH VAN RYSWYK, CARISSA WILLIAMS, and MARGARET YOUNG, in their official capacities as board members of the Urbandale Community School District

225.    B.F.S. and ROBERT SMITH state this claim against State Defendants and Defendants WEST DES MOINES COMMUNITY SCHOOLS; MATT ADAMS, in his official capacity as West Des Moines Community Schools Superintendent; and JEFF HICKS, MICHAEL ANDRESKI, ELIZABETH LARSON, LILA P. MONTOYA STARR, FANNETTE ELLIOTT, JILL CATON JOHNSON, and ANADELIA MORGAN, in their official capacities as board members of the West Des Moines Community Schools District.

226.    JAMES DOE states this claim against State Defendants and Defendants SIOUX CITY COMMUNITY SCHOOL DISTRICT; ROD EARLEYWINE, in his official capacity as Sioux City Community School District Superintendent; and DAN GREENWELL, LANCE EHMCKE, JAN GEORGE, TREYLA LEE, JOHN MEYERS, BOB MICHAELSON, and EARL

MILLER, in their official capacities as board members of the Sioux City Community School District.

227.    Defendants are state actors operating under color of state law.

228.    The Due Process Clause of the Fourteenth Amendment, enforceable pursuant to 42 U.S.C. section 1983, provides that, "[no] state shall . . . deprive any person of life, liberty, or property, without due process of law."

229.    Under the Fourteenth Amendment, a governmental enactment like SF 496 is unconstitutionally vague if it fails to provide a person of ordinary intelligence fair notice of what is prohibited, or if it is so standardless that it authorizes or encourages seriously discriminatory enforcement. In other words, governmental enactments are unconstitutionally void for vagueness when their prohibitions are not clearly defined. A more stringent test applies when a law implicates the exercise of freedom of speech or association.

230.    SF 496 is void for vagueness in violation of the Fourteenth Amendment both on its face and as applied to specific forms of expression in which Plaintiff Students wish to engage.

231.    The don't say gay or trans provision, the all-ages ban, the book ban provisions, and the forced outing provision of SF 496 prohibit certain categories of speech and require the removal of books and materials from all Iowa school library programs, classrooms, and outside of classrooms.

232.    SF 496 also includes the threat of disciplinary sanction up to and including the loss of accreditation and licensure.

233.    SF 496's definition of "age-appropriate" as not including "any material with descriptions or visual depictions of a sex act as defined in section 702.17" speaks in terms so vague as to fail to provide adequate notice of what material is prohibited. Although section 702.17 defines

"sex act" by a six-point list of types of sexual activity, the level of specificity or explicitness of the "visual depiction" of such acts is not clarified. This ambiguity is particularly problematic given the medium proscribed: books and the infinite variety of expression that form allows. The legislative history, conflicting statements of state legislators about the law's meaning during and post-enactment, and the absence of any guidance or rulemaking from State Defendants underscores the vagueness and ambiguity of the law.

234.    By failing to provide clear boundaries on the materials prohibited from educational and library programs, SF 496 invites and has resulted in arbitrary and discriminatory enforcement. For example, Defendant School Districts and other school districts in the State of Iowa have circulated a diverging array of "banned book lists" for removal, evidencing little understanding of or agreement on meaning of the prohibition, with one school district even resorting to using an artificial intelligence chatbot for guidance. Others have attempted to compile lists from other jurisdictions with different restrictive laws or, on information and belief, from lists that anti-LGBTQ+ and antigovernment extremist groups have propounded.

235.    The don't say gay or trans provision, which prohibits "any program, curriculum, test, survey, questionnaire, promotion, or instruction relating to gender identity or sexual orientation," likewise speaks in terms so vague as to fail to provide adequate notice of what speech is prohibited. For example, the terms, "program, curriculum, test, survey, questionnaire, promotion, or instruction" are not defined under Iowa statutes, and Iowa regulations define only "educational program" and "curriculum." Taken together, the seven separate prohibited speech types would encompass all activities within a school.

236.    "[G]ender identity" and "sexual orientation" are defined so broadly as to encompass any gender identity and sexual orientation, including cisgender identities and heterosexuality. In

addition, the phrase "relating to" contains no limitation of intent or import.  Taken together, merely acknowledging a real or fictional person's gender or marital status would appear to violate the law. The legislative history of SF 496, conflicting statements of state legislators about its meaning during and post-enactment, and the ambiguous rulemaking from State Defendants further compounds the vagueness of the law.

237.    By failing to provide clear boundaries on the speech prohibited in kindergarten through sixth grade settings through the don't say gay or trans provision, SF 496 also invites and has resulted in arbitrary and discriminatory enforcement. For example, the don't say gay or trans provision prohibits discussion of topics relating to gender identity or sexual orientation in kindergarten through sixth grade.  SF 496, however, is vague as to whether the provision requires removal of materials relating to gender identity or sexual orientation from school libraries where the schools include kindergarten through sixth grade.

238.    In addition, in Iowa schools, sixth grade may be part of middle schools or junior high schools, and some school districts do not maintain separate elementary and secondary school libraries. SF 496 is vague as to whether Defendant School Districts and other school districts in the State of Iowa are required to apply the don't say gay or trans provision to grades above sixth.

239.    The forced outing provision, which requires licensed practitioners to report any student's "request" for "an accommodation that is intended to affirm the student's gender identity . . . including a request that the licensed practitioner address the student using a name or pronoun that is different than the name or pronoun assigned to the student in the school district's registration forms or records," likewise speaks in terms so vague as to fail to provide adequate notice of what speech is prohibited. For example, neither a "request" nor an "accommodation" have defined meanings under Iowa statutes. While an "accommodation" in the context of education may

ordinarily be understood to encompass those obligations required by federal special education and anti-discrimination laws, such a meaning is inconsistent with the forced outing provision's broad scope. Further, "gender identity" includes all gender identities, regardless of the student's sex assigned at birth, including cisgender identities, such that the forced outing provision is vague as to what "accommodations" might "affirm" a student's gender identity.

240.     Defendant School Districts and other school districts in the State of Iowa have already begun enforcing SF 496 in violation of students' constitutional rights by removing books from classrooms and libraries based on content and viewpoint in violation of Plaintiff Students' and other students' right to receive information; restricting the activities of GSAs in violation of the right of expressive association of Plaintiff Student GSA members; members of IOWA SAFE SCHOOLS's GSA network, and other students; and prohibiting messages of inclusion with respect to sexual orientation and gender identity, as well as threatening to or actually reporting students' expressions of gender identity regardless of these students' wishes, thus chilling student speech and expression protected under the First Amendment.

241.     SF 496 impermissibly delegates standardless discretionary power to Defendants for resolution on an ad hoc and subjective basis.

242.     Vague prohibitions inhibit freedom of speech when individuals do not know whether their speech is permitted and choose not to exercise their rights for fear of the consequences.

243.     Plaintiff Students do not know which of their activities, speech, or expression are prohibited by SF 496 and are justifiably fearful of engaging in any speech or conduct that Defendant School Districts could penalize. Plaintiff Students self-censor as a result.

244. SF 496 includes vague and subjective terms that lend themselves to conflicting or unclear interpretations and fails to provide adequate notice as to which information, concepts, speech, and expression may or may not be discussed or allowed in school settings by Plaintiff Students, including in extracurricular student groups or school libraries. Despite SF 496's vagueness, it includes a range of penalties for schools and employees who fail to comply and mandates an anonymous complaint procedure to report alleged noncompliance. Plaintiffs are justifiably fearful of engaging in any speech or conduct that could be considered a violation of SF 496, or result in complaints or penalties for school employees. These potential penalties for schools and employees have further prompted Defendant School Districts and other school districts to proactively and haphazardly remove materials, prohibit speech, and restrict student group activities, causing Plaintiff Students and other students not before the Court to self-censor to avoid consequence to themselves, their teachers, and their schools, and to lose access to materials, support, and instruction they would otherwise access and benefit from if available.

245. SF 496 violates the Due Process Clause of the Fourteenth Amendment and is void for vagueness because it infringes on all Plaintiffs' constitutionally protected right to free speech and provides inadequate notice of the conduct it purports to prohibit.

246. Plaintiffs are entitled to prospective relief from the Defendants to remedy the deprivations suffered as a result of the violations of their First Amendment rights.

247. Plaintiffs are entitled to declaratory relief that SF 496 is unconstitutional and unenforceable in that it fails to provide adequate notice as to which information, concepts, speech, and expression may or may not be discussed or allowed in school settings by Plaintiff Students, including in extracurricular student groups or school libraries, and requires the removal and

exclusion of materials from a school library solely on the basis that they contain a description or visual depiction of a sex act or relate to gender identity or sexual orientation.

248. Plaintiffs are entitled to injunctive relief and request this Court enjoin Defendants from enforcing SF 496. Plaintiffs further request that this Court order Defendant School Districts to restore any materials and revert any changes to school policy already made to comply with SF 496. Plaintiffs will suffer irreparable injury and will continue to suffer real and immediate threat of irreparable injury as a direct and proximate result of the existence, operation, enforcement, and threat of enforcement of SF 496. Plaintiffs have no plain, adequate, or speedy remedy at law.

<u>COUNT V</u>
**Overbreadth in Violation of First Amendment**

249. Plaintiffs incorporate all preceding paragraphs as if fully set forth herein by this reference.

250. Plaintiff IOWA SAFE SCHOOLS states this claim against State Defendants.

251. Plaintiff P.B.-P. states this claim against State Defendants and Defendants WATERLOO COMMUNITY SCHOOL DISTRICT; JARED SMITH, in his official capacity as Waterloo Community School District Superintendent; and SUE FLYNN, JESSE KNIGHT, ASTOR WILLIAMS, LYLE SCHMITT, STACIE MILLS, JANELLE EWING, PAM ARNDORFER, and JEFF SOMMERFELDT, in their official capacities as members of the Waterloo Community School District.

252. Plaintiffs P.C. and A.C. state this claim against State Defendants and Defendants IOWA CITY COMMUNITY SCHOOL DISTRICT; MATT DEGNER, in his official capacity as Iowa City Community School District Superintendent; and MOLLY ABRAHAM, J.P. CLAUSSEN, CHARLIE EASTHAM, JAYNE FINCH, RUTHINA MALONE, MITCH LINGO,

and LISA WILLIAMS, in their official capacities as members of the Iowa City Community School District.

253.    Plaintiffs T.S. and B.F. state this claim against State Defendants, and Defendants URBANDALE COMMUNITY SCHOOL DISTRICT; ROSALIE DACA, in her official capacity as Urbandale Community School District Superintendent; and KATHERINE HOWSARE, RACHEL KENT, JENNY MEADE, JASON MENKE, JULIE MITCHELL, STEVE RICHMAN, JOSH VAN RYSWYK, CARISSA WILLIAMS, and MARGARET YOUNG, in their official capacities as board members of the Urbandale Community School District.

254.    Plaintiffs B.F.S. and ROBERT SMITH state this claim against State Defendants and Defendants WEST DES MOINES COMMUNITY SCHOOLS; MATT ADAMS, in his official capacity as West Des Moines Community Schools Superintendent; and JEFF HICKS, MICHAEL ANDRESKI, ELIZABETH LARSON, LILA P. MONTOYA STARR, FANNETTE ELLIOTT, JILL CATON JOHNSON, and ANADELIA MORGAN, in their official capacities as board members of the West Des Moines Community Schools District.

255.    Plaintiff JAMES DOE states this claim against State Defendants and Defendants SIOUX CITY COMMUNITY SCHOOL DISTRICT; ROD EARLEYWINE, in his official capacity as Sioux City Community School District Superintendent; and DAN GREENWELL, LANCE EHMCKE, JAN GEORGE, TREYLA LEE, JOHN MEYERS, BOB MICHAELSON, and EARL MILLER, in their official capacities as board members of the Sioux City Community School District.

256.    Defendants are state actors operating under color of state law.

257.    To the extent a law restricting First Amendment rights possesses a legitimate sweep, the First Amendment as applied to the State of Iowa by the Fourteenth Amendment requires there not be a substantial number of instances in which the law would be unconstitutional.

258.    SF 496, to the extent it possesses any legitimate sweep, is impermissibly overbroad on its face in violation of the First Amendment because it punishes a substantial and disproportionate amount of protected First Amendment activity in relation to its purported legitimate sweep.

259.    The law's book ban provisions have resulted in Defendant School Districts and other school districts in Iowa creating inconsistent and diverging "banned book lists" for removal. Numerous books appear on one or more lists but not others. For example, only 13 books appear on all three lists made public by the three Defendant School Districts (URBANDALE COMMUNITY SCHOOL DISTRICT, WEST DES MOINES COMMUNITY SCHOOLS, and IOWA CITY COMMUNITY SCHOOL DISTRICT). By contrast, 90 books have been banned in one of these districts but not the other two.

260.    The "banned book lists" target for removal numerous books containing LGBTQ+ characters and narratives based on their content and viewpoint. They also include a substantial number of classic works of literature that prior to SF 496 had been regularly taught in Iowa public schools. These books now must be removed and excluded for containing what may be deemed to be a "description[] or visual depiction[] of a sex act" or "promotion" of sexual orientation or gender identity.

261.    The law's don't say gay or trans provision has resulted in Defendant School Districts and other school districts in Iowa removing messages of support and affirmation for LGBTQ+ students, in addition to children's books featuring real or fictitious LGBTQ+ characters.

262.     The law's forced outing provision has resulted in burdensome school district policies on nicknames and pronouns and has or will result in serious physical or emotional injury, or death for students in home environments unsupportive of LGBTQ+ expression.

263.     Because of SF 496's overbreadth, Plaintiff Students and other students not before the Court have been deprived of access to information and ideas, deprived of access to books based on their content and viewpoint, and have refrained or will refrain from expressive activity or other constitutionally protected conduct.

264.     The threat of enforcement of SF 496 deters and chills constitutionally protected speech as Plaintiffs and other LGBTQ+ students choose simply to abstain from protected speech rather than undertake the risk of discipline for themselves or teachers. Abstaining from protected speech harms Plaintiffs and society as a whole, which is deprived of an uninhibited marketplace of ideas.

265.     Plaintiffs are entitled to prospective relief from the Defendants to remedy the deprivations suffered as a result of the violations of their First Amendment rights.

266.     Plaintiffs are entitled to declaratory relief that SF 496 is unconstitutional and unenforceable in that it is overbroad and deprives Plaintiff Students and others access to constitutionally protected information and ideas and books based on their content and viewpoint. As a result of SF 496's overbreadth, Plaintiffs Students and other students not before the Court have refrained from and will continue to refrain from expressive activity or other constitutionally protected conduct.

267.     Plaintiffs are entitled to injunctive relief and request this Court enjoin Defendants from enforcing SF 496. Plaintiffs further request that this Court order School District Defendants to restore any materials and revert any changes to school policy already made to comply with SF

496. to comply with SF 496. Plaintiffs will suffer irreparable injury and will continue to suffer real and immediate threat of irreparable injury as a direct and proximate result of the existence, operation, enforcement, and threat of enforcement of SF 496. Plaintiffs have no plain, adequate, or speedy remedy at law.

## COUNT VI
**Discrimination on the Basis of Sex, Sexual Orientation, Gender Identity, and Transgender Status in Violation of the Equal Protection Guarantee of the Fourteenth Amendment**

268.    Plaintiffs incorporate all preceding paragraphs as if fully set forth herein by this reference.

269.    Plaintiff IOWA SAFE SCHOOLS states this claim against State Defendants.

270.    Plaintiff P.B.-P. states this claim against State Defendants and Defendants WATERLOO COMMUNITY SCHOOL DISTRICT; JARED SMITH, in his official capacity as Waterloo Community School District Superintendent; and SUE FLYNN, JESSE KNIGHT, ASTOR WILLIAMS, LYLE SCHMITT, STACIE MILLS, JANELLE EWING, PAM ARNDORFER, and JEFF SOMMERFELDT, in their official capacities as board members of the Waterloo Community School District.

271.    Plaintiffs P.C. and A.C. state this claim against State Defendants and Defendants IOWA CITY COMMUNITY SCHOOL DISTRICT; MATT DEGNER, in his official capacity as Iowa City Community School District Superintendent; and MOLLY ABRAHAM, J.P. CLAUSSEN, CHARLIE EASTHAM, JAYNE FINCH, RUTHINA MALONE, MITCH LINGO, and LISA WILLIAMS, in their official capacities as board members of the Iowa City Community School District.

272.    Plaintiffs T.S. and B.F. state this claim against State Defendants, and Defendants URBANDALE COMMUNITY SCHOOL DISTRICT; ROSALIE DACA, in her official capacity as Urbandale Community School District Superintendent; and KATHERINE HOWSARE,

RACHEL KENT, JENNY MEADE, JASON MENKE, JULIE MITCHELL, STEVE RICHMAN, JOSH VAN RYSWYK, CARISSA WILLIAMS, and MARGARET YOUNG, in their official capacities as board members of the Urbandale Community School District.

273.    Plaintiffs B.F.S. and ROBERT SMITH state this claim against State Defendants and Defendants WEST DES MOINES COMMUNITY SCHOOLS; MATT ADAMS, in his official capacity as West Des Moines Community Schools Superintendent; and JEFF HICKS, MICHAEL ANDRESKI, ELIZABETH LARSON, LILA P. MONTOYA STARR, FANNETTE ELLIOTT, JILL CATON JOHNSON, and ANADELIA MORGAN, in their official capacities as board members of the West Des Moines Community Schools District.

274.    Plaintiff JAMES DOE states this claim against State Defendants and Defendants SIOUX CITY COMMUNITY SCHOOL DISTRICT; ROD EARLEYWINE, in his official capacity as Sioux City Community School District Superintendent; and DAN GREENWELL, LANCE EHMCKE, JAN GEORGE, TREYLA LEE, JOHN MEYERS, BOB MICHAELSON, and EARL MILLER, in their official capacities as board members of the Sioux City Community School District.

275.    Defendants are state actors operating under color of state law.

276.    The Fourteenth Amendment, enforceable pursuant to 42 U.S.C. § 1983, provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws."

277.    SF 496 violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by discriminating against Plaintiff Students and other LGBTQ+ students based on sex, sexual orientation, gender identity, and transgender status, both facially and as applied.

278.    SF 496 was enacted with the purpose to discriminate and has the effect of discriminating against LGBTQ+ students, subjecting them to differential and adverse treatment on the basis of their sex, sexual orientation, gender identity, and transgender status.

279.    Discrimination against LGBTQ+ students was a motivating factor behind the passage of SF 496. The law bears more heavily on LGBTQ+ students than on straight or cisgender students, and the history, context, and process of its passage illustrate its discriminatory motives.

280.    SF 496 shames and stigmatizes these students and invites school officials, teachers, and classmates to view them as inferior, harms their long-term health and well-being, and denies them equal educational opportunities on the basis of their sex, sexual orientation, gender identity, and transgender status.

281.    SF 496 has contributed to the creation of an anti-LGBTQ+ climate in the public schools that Defendants operate. It fosters a culture of silence and non-acceptance of LGBTQ+ students and discourages school officials from complying with their obligations to treat all students equally.

282.    Discrimination based on sex, sexual orientation, gender identity, and transgender status each warrant at least heightened scrutiny.

283.    SF 496 does not serve any legitimate purpose, pedagogical or otherwise, let alone the exceedingly persuasive or compelling one required, and is instead rooted in animus toward and moral disapproval of LGBTQ+ people.

284.    SF 496 lacks adequate tailoring in service of any such government purpose.

285.    As a direct and proximate result of Defendants' authority and conduct (including implementation and enforcement of SF 496), Plaintiffs have suffered and continue to suffer irreparable harm.

## COUNT VII
## Violation of Equal Access Act, 20 U.S.C. § 4071

286.    Plaintiffs incorporate all preceding paragraphs as if fully set forth herein by this reference.

287.    Plaintiff IOWA SAFE SCHOOLS states this claim against State Defendants and Defendants WEST DES MOINES COMMUNITY SCHOOLS; MATT ADAMS, in his official capacity as West Des Moines Community Schools Superintendent; and JEFF HICKS, MICHAEL ANDRESKI, ELIZABETH LARSON, LILA P. MONTOYA STARR, FANNETTE ELLIOTT, JILL CATON JOHNSON, and ANADELIA MORGAN, in their official capacities as school board members of the West Des Moines Community Schools District; WATERLOO COMMUNITY SCHOOL DISTRICT; JARED SMITH, in his official capacity as Waterloo Community School District Superintendent; and SUE FLYNN, JESSE KNIGHT, ASTOR WILLIAMS, LYLE SCHMITT, STACIE MILLS, JANELLE EWING, PAM ARNDORFER, and JEFF SOMMERFELDT, in their official capacities as board members of the Waterloo Community School District; SIOUX CITY COMMUNITY SCHOOL DISTRICT; ROD EARLEYWINE, in his official capacity as Sioux City Community School District Superintendent; and  DAN GREENWELL, LANCE EHMCKE, JAN GEORGE, TREYLA LEE, JOHN MEYERS,  BOB MICHAELSON, and EARL MILLER, in their official capacities as board members of the Sioux City Community School District.

288.    Plaintiff ROBERT SMITH states this claim against State Defendants and Defendants WEST DES MOINES COMMUNITY SCHOOLS; MATT ADAMS, in his official capacity as West Des Moines Community Schools Superintendent; and JEFF HICKS, MICHAEL ANDRESKI, ELIZABETH LARSON, LILA P. MONTOYA STARR, FANNETTE ELLIOTT,

JILL CATON JOHNSON, and ANADELIA MORGAN, in their official capacities as school board members of the West Des Moines Community Schools District.

289.    Plaintiff P.B.-P. states this claim against State Defendants and Defendants WATERLOO COMMUNITY SCHOOL DISTRICT; JARED SMITH, in his official capacity as Waterloo Community School District Superintendent; and SUE FLYNN, JESSE KNIGHT, ASTOR WILLIAMS, LYLE SCHMITT, STACIE MILLS, JANELLE EWING, PAM ARNDORFER, and JEFF SOMMERFELDT, in their official capacities as board members of the Waterloo Community School District.

290.    Plaintiff JAMES DOE states this claim against State Defendants and Defendants SIOUX CITY COMMUNITY SCHOOL DISTRICT; ROD EARLEYWINE, in his official capacity as Sioux City Community School District Superintendent; and DAN GREENWELL, LANCE EHMCKE, JAN GEORGE, TREYLA LEE, JOHN MEYERS, BOB MICHAELSON, and EARL MILLER, in their official capacities as board members of the Sioux City Community School District.

291.    Stilwell Junior High is a public secondary school within Defendant WEST DES MOINES COMMUNITY SCHOOLS. On information and belief, Stilwell Junior High receives federal financial assistance.

292.    Prior to July 1, 2023, Stillwell Junior High had and continues to have a limited open public forum hosting at least one student-led, non-curricular club that meets outside of regular instructional hours. In the calendar year 2022-2023, a GSA was among these student groups. As a result of SF 496, Stilwell Junior High School's GSA no longer is able to meet. Other non-curricular clubs are permitted to meet and have in fact met during fall 2023.

293.     Waterloo West High School is a public secondary school within Defendant WATERLOO COMMUNITY SCHOOL DISTRICT.  On information and belief, Waterloo West High School receives federal financial assistance.

294.     Prior to SF 496, Waterloo West High School had an active GSA.  SF 496, however, has caused the number of members of the Waterloo West High School GSA to dwindle.  Students now fear being outed to unsupportive family members and increased bullying and harassment from peers as a result of SF 496's forced outing provision.

295.     North High School is a public secondary school within Defendant SIOUX CITY COMMUNITY SCHOOL DISTRICT. On information and belief, North High School receives federal financial assistance.

296.     Prior to SF 496, North High School's GSA provided a sense of community to LGBTQ+ students.  However, LGBTQ+ students are now reluctant to join the GSA because they fear being outed to unsupportive parents as a result of the SF 496's forced outing provision and fear they will face negative consequences at home.

297.     Advisors for members of Plaintiff IOWA SAFE SCHOOLS' GSA network have had advisors prohibited from participating in group discussion, in contrast to advisors of other student-led, non-curricular clubs. They have also been prohibited from displaying signs or promoting their GSA in classrooms or hallways where students younger than seventh graders may be present, even though other clubs are not subject to those restrictions.  GSAs also have been outright prohibited from existing in schools with sixth graders or below present.

298.     The don't say gay or trans provision, all-ages ban, and forced outing provisions of SF 496, on their face and as applied, deny equal access or a fair opportunity to GSAs.

299. The don't say gay or trans provision, all-ages ban, and forced outing provisions of SF 496, on their face and as applied, also discriminate against GSAs on the basis of the religious, political, philosophical, or other content of the speech at their meetings.

300. By prohibiting students from meeting and advertising GSA events on the same terms as other non-curricular clubs, State Defendants, Defendant WEST DES MOINES COMMUNITY SCHOOLS, WATERLOO COMMUNITY SCHOOL DISTRICT, SIOUX CITY COMMUNITY SCHOOL DISTRICT, and other school districts implementing SF 496 in a similar manner are in violation of the Equal Access Act, 20 U.S.C. § 4071.

301. Plaintiffs are entitled to prospective relief from the Defendants to remedy the deprivations suffered as a result of the violations of their rights under the Equal Access Act.

302. Plaintiffs are entitled to injunctive relief and request this Court enjoin Defendants from enforcing SF 496 to prohibit students from becoming members of GSAs or attending GSA meetings and events on the same terms as other non-curricular groups, or to prohibit these GSAs from advertising or promoting their group on the same terms as other non-curricular groups. Plaintiffs will suffer irreparable injury and will continue to suffer real and immediate threat of irreparable injury as a direct and proximate result of the existence, operation, enforcement, and threat of enforcement of SF 496. Plaintiffs have no plain, adequate, or speedy remedy at law.

## REQUEST FOR RELIEF

Plaintiffs respectfully request an order and judgment:

1. Declaring that SF 496 is unconstitutional on its face and as applied to Plaintiffs and is unenforceable.

2. Permanently enjoining Defendants, their officers, agents, employees, attorneys, and all persons in active concert or participation with them from enforcing SF 496.

3. Awarding the Plaintiffs reasonable attorneys' fees and costs; and

4.      Awarding any such other relief as the Court deems just.

Date:   November 28, 2023                              Respectfully submitted

/s/

Thomas D. Story, AT0013130 (Lead Counsel)          Camilla B. Taylor*
Rita Bettis Austen, AT0011558                      Kara Ingelhart*
Shefali Aurora, AT0012874                          Nathan Maxwell* **
Sharon Wegner, AT0012415                           **Lambda Legal Defense
**American Civil Liberties Union                       and Education Fund, Inc.**
   of Iowa Foundation**                            65 E. Wacker Pl., Suite 2000
505 Fifth Avenue, Suite 808                        Chicago, IL 6060
Des Moines, IA 50309                               (312) 663-4413
(515) 243-3988                                     ctaylor@lambdalegal.org
thomas.story@aclu-ia.org                           kingelhart@lambdalegal.org
rita.bettis@aclu-ia.org                            nmaxwell@lambdalegal.org
shefali.aurora@aclu-ia.org
sharon.wegner@aclu-ia.org                          Karen L. Loewy*
                                                   Sasha J. Buchert* ***
Laura J. Edelstein*                                **Lambda Legal Defense
Katherine E. Mather*                                   and Education Fund, Inc.**
**Jenner & Block LLP**                             1776 K Street, N.W., 8th Floor
455 Market Street, Suite 2100                      Washington, DC 20006-2304
San Francisco, CA 94105                            (202) 804-6245
(628) 267-6800                                     kloewy@lambdalegal.org
LEdelstein@jenner.com                              sbuchert@lambdalegal.org
KMather@jenner.com
                                                   Daniel R. Echeverri*
Anna K. Lyons*                                     **Jenner & Block LLP**
Effiong Dampha*                                    353 N. Clark Street
**Jenner & Block LLP**                             Chicago, IL 60654
515 S. Flower Street, Suite 3300                   (312) 222-9350
Los Angeles, CA 90071-2246                         DEcheverri@jenner.com
(213) 239-5100
ALyons@jenner.com                                  Joshua J. Armstrong*
EDampha@jenner.com                                 **Jenner & Block LLP**
                                                   1099 New York Avenue, NW, Suite 900
                                                   Washington, DC 20001
*Application for admission pro hac vice*           (202) 639-6000
*forthcoming.*                                     JArmstrong@jenner.com
*** Member of the Arizona bar. Practicing
under the supervision of a member of the Illinois bar.*
**** Member of the Oregon bar. Practicing under the
supervision of a member of the DC bar.*

*Counsel for Plaintiffs*

78

# APPENDIX A

**The List of Books Defendant Urbandale Community School District Initially Identified for Removal**

| Author | Title |
| --- | --- |
| Ace, Lauren | The Girls |
| Acosta, Alicia; Amavisca, Luis | I Love My Colorful Nails |
| Adler, Dahlia | Cool for the Summer |
| Albertalli, Becky | Kate in Waiting |
| Albertalli, Becky | Simon vs. the Homo Sapiens Agenda |
| Albertalli, Becky | The Upside of Unrequited |
| Albertalli. Becky | The Upside of Unrequited |
| Anderson. Airlie | Neither |
| Andrews, Jesse | Me and Earl and the Dying Girl |
| Andrews, Jesse | The Haters |
| Angelo, Maya | I Know Why the Caged Bird Sings |
| Anonymous | Go Ask Alice |
| Arnold, Elana | What Riley Wore |
| Arnold, Elana K. | Damsel |
| Asher, Jay | 13 |
| Atta, Dean | The Black Flamingo |
| Atwood, Margaret | The Handmaid's Tale novel and graphic novel |
| Austrian. J.J. | Worm Loves Worm |
| Bailar, Schuyler | Obie is Man Enough |
| Baldacchino, Christine | Morris Micklewhite and the Tangerine Dress |
| Baldwin, James | Go Tell It On the Mountain |
| Barakiva, Michael | One Man Guy |
| Baudelaire, Charles | The Flowers of Evil |
| Bean, Lexie | The Ship We Built |
| Beer, Sophie | Love Makes A Family |
| Bertie, Alex | Trans Mission: My Quest to a Beard |
| Biddulph, Rob | Odd Dog Out |
| Bigelow, Lisa Jenn | Hazel's Theory of Evolution |
| Bildner, Phil | A High Five for Glenn Burke |
| Blackstone, Stella | Baby's First Words |
| Blake, Ashley Herring | Hazel Bly and the Deep Blue Sea |
| Blake, Ashley Herring | Ivy Aberdeen's Letter to the World |
| Block, Francesca Lia | Psyche in a Dress |
| Blume, Judy | Are You There God? It's Me, Margaret. |
| Blume, Judy | Forever |
| Blume, Judy | Forever |
| Blume, Judy | Summer Sisters |
| Blumenthal, Lasor | The Hand Book |
| | Starboy* (Register note: could refer to the novel |
| Bowie, David* | Starboy by Jami Gigot, inspired by David Bowie) |
| Braden. Ann | Flight of the Puffin |
| Bradley, Sandra | Henry Holton Takes the Ice |
| Brannen. Sarah | Uncle Bobby's Wedding |
| Branscum, Robbie | The Girl |
| Brennan-Nelson, Denise | Willow and the Wedding |
| Brichzin, Kerstin | Felix's New Skirt |
| Brockington, Ryan | Daddy & Dada |
| Brown, Karamo | I am Perfectly Designed |
| Brown, Peter | Fred Gets Dressed |
| Buck, Pearl S. | The Good Earth |
| Bunker, Lisa | Zenobia July |
| Burgess, Melvin | Junk |
| Cabot, Meg | Ready or Not |
| Callender, Kacen | Hurricane Child |
| Callender, Kacen | King and the Dragonflies |
| Camus, Albert | The Stranger |
| Capetta, A.R. | Stranger Things: Rebel Robin |
| Chbosky, Stephen | The Perks of Being a Wallflower |
| Clarke, Cat | The Pants Project |
| Cleland, John | Fanny Hill: Memoirs of a Woman of Pleasure |
| Cohen, Barbara | Unicorns in the Rain |
| Colbert, Brandy | The Only Black Girls in Town |

**The List of Books Defendant Urbandale Community School District Initially Identified for Removal**

| Author | Title |
|---|---|
| Cole, Barbara S. | Don't Tell A Soul |
| Cormier, Robert | Beyond the Chocolate War |
| Couch, Robbie | The Sky Blues |
| Cronn-Mills, Kirstin | Beautiful Music for Ugly Children |
| Cumming, Alan | The Adventure of Honey & Leon |
| Curate, Mike | Flamer |
| Danforth, Emily M. | The Miseducation of Cameron Post |
| Davids, Sharice | Sharice's Big Voice |
| Dawson, Juno | This Book is Gay |
| Deaver, Mason | The Ghosts We Keep |
| Dee, Barbara | Star-Crossed |
| DeMont, Belle | I Love My Purse |
| DePalma, Kate | The Bread Pet |
| Desmond is Amazing | Be Amazing |
| Desombre, Auriane | I Think I Love You |
| Donoghue, Emma | The Lotterys More or Less |
| Donoghue, Emma | The Lotterys Plus One |
| Dooley, Sarah | Ashes to Asheville |
| Dufresne, Emilie | Change |
| Dugan, Jennifer | Some Girls Do |
| Elliott, Rachel | The Real Riley Mayes |
| Ellison, Joy Michael | Sylvia and Marsha Start A Revolution! |
| Emezi, Akwaeke | Bitter |
| Emezi, Akwaeke | Pet |
| Errico, Daniel | The Bravest Knight Who Ever Lived |
| Evison, Jonathan | Lawn Boy |
| Faulkner, William | As I Lay Dying |
| Feder, Tyler | Bodies are Cool |
| Federle, Tim | Better Nate than Ever |
| Federle, Tim | Nate Expectations |
| Finch, Michelle | Phoenix Goes to School |
| Flaubert, Gustave | Madame Bovary |
| Forman, Gayle | Frankie & Bug |
| Furst, Joshua | The Little Red Stroller |
| Gaiman, Neil | American Gods, Vol. 1: Shadows |
| Gaiman, Neil | American Gods, Vol. 2: My Ainsel |
| Gale, Heather | Ho'onani: Hula Warrior |
| Garcia, Cristina | Dreaming in Cuban |
| Garden, Nancy | Molly's Family |
| Gardner, Whitney | Long Distance |
| Garza Villa, Jonny | Fifteen Hundred Miles from the Sun |
| Gay, Marie-Louse | Any Questions? |
| Gay, Roxane | Not that Bad: Dispatches from Rape Culture |
| Gee, Kimberly | Glad, Glad Bear! |
| Genhart, Michael | Love is Love |
| Genhart, Michael | Rainbow |
| Gennari, Jennifer | My Mixed Up Berry Blue Summer |
| Gephart, Donna | Lily and Dunkin |
| Gillman, Melanie | As the Crow Ries |
| Gino, Alex | Alice Austen Lived Here |
| Gino, Alex | Melissa (George) |
| Gino, Alex | Rick |
| Gino, Alex | You Don't Know Everything, Jilly P! |
| Ginsberg, Allen | Howl and Other Poems |
| Giovanna, Nikki | My House |
| Gonzales, Chuck | Carlos Gomez Freestyles |
| Gonzales, Sophie | Only Mostly Devastated |
| Gonzalez, Maya Christina | Call Me Tree |
| Gonzalez, Maya Christina | The Gender Wheel |
| Gonzalez, Maya Christina | They, She, He, Easy as ABC |
| Gonzalez, Maya Christina | They, She, He, Me: Free to Be |
| Green, John | Looking for Alaska |
| Green, John | Paper Towns |

**The List of Books Defendant Urbandale Community School District Initially Identified for Removal**

| | |
|---|---|
| Green, John | The Fault in Our Stars |
| Green. Simon James | Llama Glamarama |
| Greener, Rachel | Making a Baby |
| Gregory, Jarlath | What Love Looks Like: Sometimes Love Turns Up Where You Least Expect It |
| Grehan, Meg | The Deepest Breath |
| Gyasi, Yaa | Homegoing |
| Haack, Daniel | Maiden & Princess |
| Haack, Daniel | Prince & Knight |
| Haack, Daniel | Tale of the Shadow King |
| Hall, Radclyffe | The Well of Loneliness |
| Hall, Sandy | Been Here All Along |
| Harris, Neil Patrick | Magic Misfits: The Second Story |
| Harris, Robie | It's Perfectly Normal: Changing Bodies, Growing Up, Sex and Sexual Health |
| Hatori, Bisco | Ouran High School Host Club Series |
| Hayden, Torey | One Child |
| Hegarty, Patricia | We are Family |
| Heller, Joseph | Catch 22 |
| Hemingway, Ernest | A Farewell to Arms |
| Hennessey, M. G. | The Other Boy |
| Hernandez, Mili | Federico and All His Families |
| Herthel, Jessica | I am Jazz! |
| Higginbotham, Anastasia | What You Don't Know: A Story of Liberated Childhood |
| Hill, Katie | Rethinking Normal: A Memoir in Transition |
| Hill-Meyer, Tobi | A Princess of Great Daring! |
| Hirst, Jo | A House for Everyone |
| Hitchcock, Shannon | One True Way |
| Hoffman, Sarah | Jacob's New Dress |
| Hoffman, Sarah | Jacob's Room to Choose |
| Hong, Jess | Lovely |
| Hopkins, Ellen | Crank |
| Hopkins, Ellen | Tilt |
| Hopkins, Ellen | Tricks |
| Hosseini, Khaled | The Kite Runner |
| Howard, Greg | The Whispers |
| Howe, James | Big Bob, Little Bob |
| Howe, James | Totally Joe |
| Hurston, Zora Neale | Their Eyes Were Watching God |
| Hutchinson, Shaun David | Brave Face: A Memoir |
| Huxley, Aldous | Brave New World |
| James, E.L. | Fifty Shades of Grey |
| Jenkins, Steve | The True Adventures of Esther the Wonder Pig |
| Jennings, Jazz | Being Jazz: My Life as a (Transgender) Teen |
| Johnson, Cathy | The Breakaways |
| Johnson, R. Charles | Faith and the Good Thing |
| Johnson, Varian | The Parker Inheritance |
| Johnston, George M. | All Boys Aren't Blue |
| Jones, Toeckey | Skindeep |
| Jonsberg, Barry | A Song Only I Can Hear |
| Joosten, Michael | My Two Dads and Me |
| Joosten, Michael | My Two Moms and Me |
| Joyce, James | Ulysses |
| June, Jason | Jay's Gay Agenda |
| Kaur, Rupi | Milk and Honey |
| Kaur, Rupi | The Sun and Her Flowers |
| Keller, Tae | When You Trap a Tiger |
| Kemp, Kristen | Healthy Sexuality |
| Kerr, M.E. | Night Kites |
| Khor, Shing Yin | The Legend of Auntie Po |
| Kibblesmith, Daniel | Santa's Husband |
| Kilodavis, Cheryl | My Princess Boy |
| Kirst, Seamus | Papa, Daddy, and Riley |
| Klas, Benjamin | Second Dad Summer |
| Klein, Norma | Mom The Wolf Man & Me |

**The List of Books Defendant Urbandale Community School District Initially Identified for Removal**

| | |
|---|---|
| Klune, TJ | Flash Fire |
| Knowles, John | A Separate Peace |
| Kobabe, Maia | Gender Queer |
| Koertge, Ron | The Arizona Kid |
| Kreloff, Elliot | Tuesday is Daddy's Day |
| Kuklin, Susan | Beyond Magenta: Transgender Teens Speak Out |
| Kuklin, Susan | Beyond Magenta: Transgender Teens Speak Out |
| Kushner, Tony | Angels in America |
| Lambert, Megan Dowd | Real Sisters Pretend |
| Lang, Suzanne | Families, Families, Families! |
| Lawrence, D.H. | Lady Chatterley's Lover |
| Lee, C.B. | Not Your Sidekick |
| Levine, Arthur | Monday is One Day |
| Levithan, David | Two Boys Kissing |
| Levy, Dana Alison | The Family Fletcher Takes Rock Island |
| Levy, Dana Alison | The Misadventures of the Family Fletcher |
| Levy, Dana Alison | This Would Make a Good Story Someday |
| Lil Miss Hot Mess | The Hips on the Drag Queen Go Swish, Swish, Swish |
| Lo, Malinda | Last Night at the Telegraph Club |
| Lo, Malinda | The Last Night at the Telegraph Club |
| Locke, Katherine | This is Our Rainbow: 16 Stories of Her, Him, Them, and Us |
| Loney, Andrea | Bunnybear |
| Love, Jessica | Julián at the Wedding |
| Love: Jessica | Julián Is A Mermaid |
| Lucas, Chad | Thanks a Lot, Universe |
| Lukoff, Kyle | Call Me Max |
| Lukoff, Kyle | Too Bright to See |
| Lukoff, Kyle | When Aidan Became A Brother |
| Maas, Sarah J. | A Court of Mist and Fury |
| Machias, Jules | Both Can Be True |
| Mackler, Carolyn | Vegan Virgin Valentine |
| Madison, Megan | Being You: A First Conversation About Gender |
| Man, Chella | Continuum |
| Manushkin, Fran | Plenty of Hugs |
| Manzer, Jenny | My Life as a Diamond |
| Matsui, Yusei | Assassination Classroom |
| Mayeno, Laurin | One of A Kind, Like Me / Único como yo |
| McCormick, Patricia | Sold |
| McCurry, Kristen | Patrick's Polka-dot Tights |
| McGahern John | The Dark |
| McKenna, Miles | OUT!: How to Be Your Authentic Self |
| Mercurio, Peter | Our Subway Baby |
| Meyer, Stephenie | Breaking Dawn (Twilight Book 4) |
| Meyers, Susan | Everywhere Babies |
| Miller, Henry | Tropic of Cancer |
| Moen, Erika | Let's Talk About It: The Teen's Guide to Sex, Relationships, and Being a Human |
| Moen, Erika | Let's Talk About It: The Teen's Guide to Sex, Relationships, and Being a Human |
| Moradian, Afsaneh | Jamie is Jamie: A Book About Being Yourself and Playing Your Way |
| Morrison, Toni | Beloved |
| Morrison, Toni | Song of Solomon |
| Morrison, Toni | The Bluest Eye |
| Moskowitz, Hannah | Marco Impossible |
| Myracle, Lauren | l8r g8r |
| Nabokov, Vladimir | Lolita |
| Naylor, Phyllis Reynolds | Alice the Brave |
| Neal, Trinity | My Rainbow |
| Newman, Leslea | Daddy, Papa, and Me |
| Newman, Leslea | Donovan's Big Day |
| Newman, Leslea | Heather Has Two Mommies |
| Newman, Leslea | Mommy, Mama, and Me |
| Newman, Leslea | Sparkle Boy |
| Nguyen, Trung Le | The Magic Fish |
| Nielsen-Fernlund, Susin | Princess Puffybottom...and Darryl |

**The List of Books Defendant Urbandale Community School District Initially Identified for Removal**

| | |
|---|---|
| Nielsen-Fernlund, Susin | We Are All Made of Molecules |
| Niven, Jennifer | Breathless |
| Nuanez, J. M. M. | Birdie and Me |
| O'Brien, Erica | The Country Girls |
| Oelschlager, Vantia | A Tale of Two Daddies |
| O'Leary, Sara | A Family is A Family Is A Family |
| O'Neill, Kay | The Tea Dragon Society |
| Orwell, George | 1,984 |
| Oseman, Alice | Heartstopper series |
| Oshiro, Mark | Anger is A Gift |
| Pancholy, Maulik | The Best At It |
| Panetta, Kevin | Bloom |
| Parr, Todd | The Family Book |
| Patterson, Jodie | Born Ready: The True Story of a Boy Named Penelope |
| Pearlman, Robb | Pink is for Boys |
| Peck, Richard | The Best Man |
| Perez, Ashley | Out of Darkness |
| Pessin-Whedbee, Brook | Who Are You?: The Kid's Guide to Gender Identity |
| Picoult, Jodi | Mercy |
| Picoult, Jodi | My Sister's Keeper |
| Picoult, Jodi | Nineteen Minutes |
| Pierets, Fleur | Love Around the World |
| Pitman, Gayle | A Church for All |
| Pitman, Gayle | My Maddy |
| Pitman, Gayle | Sewing the Rainbow: A Story About Gilbert Baker |
| Pitman, Gayle | The Stonewall Riots: Coming Out in the Streets |
| Pitman, Gayle | This Day in June |
| Pitman, Gayle | When You Look Out the Window: How Phyllis Lyon and Del Martin Built a Community |
| Podos, Rebecca | Like Water |
| Polacco, Patricia | In Our Mothers' House |
| Polonsky, Ami | Gracefully Grayson |
| Prager, Sarah | Rainbow Revolutionaries: 50 LGBTQ+ People Who Made History |
| Presley, Elvis* | Love Me Tender* (Register note: could reference an illustrated book based on the song) |
| Ramadan, Danny | Salma the Syian Chef |
| Rapinoe, Megan | One Life |
| Reed, Amy | The Truth About Alice |
| Reynolds, Marilyn | Shut Up |
| Rhodes-Courter, Ashley | Sam is My Sister |
| Richardson, Justin | And Tango Makes Three |
| Rivas, Lourdes | They Call Me Mix/Me Llaman Maestre |
| Rorby, Ginny | Freeing Finch |
| Rosenthal, Amy Krouse | Dear Boy: A Celebration of Cool, Clever, Compassionate You! |
| Rosenthal, Amy Krouse | Dear Girl: A Celebration of Wonderful, Smart, Beautiful You! |
| Rotner, Shelley | Families |
| Rowell, Rainbow | Any Way the Wind Blows |
| Rowell, Rainbow | Carry On |
| Roy, Arundhati | The God of Small Things |
| Royce, Ellie | Auntie Uncle: Drag Queen Hero |
| Salazar, Aida | The Moon Within |
| Salinger, J.D. | The Catcher in the Rye |
| Sanchez, Alex | The Greatest Superpower |
| Sanchez, Erika | I Am Not Your Perfect Mexican Daughter |
| Sanders, Rob | Mayor Pete |
| Sanders, Rob | Pride |
| Sanders, Rob | Stonewall |
| Sanders, Rob | Two Grooms on a Cake |
| Sapphire | Push |
| Sass, A. J. | Ana on the Edge |
| Satrapi, Marjane | Persepolis |
| Schiffer, Miriam | Stella Brings the Family |
| Schrefer, Eliot | The Darkness Outside Us |
| Sebold, Alice | Lucky |
| Shannon, George | One Family |

**The List of Books Defendant Urbandale Community School District Initially Identified for Removal**

| | |
|---|---|
| Sicardi, Arabelle | Queer Heroes: Meet 53 LGBTQ Heroes From Past and Present! |
| Sie, James | All Kinds of Others |
| Silvera, Adam | ∞ |
| Silvera, Adam | ∞ |
| Silvera, Adam | The First to Die at the End |
| Silvera, Adam | They Both Die at the End |
| Silverberg, Cory | What Makes a Baby |
| Silverman, Erica | Jack (not Jackie) |
| Sima, Jessie | Harriet Gets Carried Away |
| Simon, Rachel | The Everybody Book: The LGBTQ+ Inclusive Guide for Kids about Sex, Gender, Bodies, and Families |
| Slater, Dashka | The 57 Bus: A True Story of Two Teenagers and the Crime That Changed Their Lives |
| Sloan, Holly Goldberg | Two Night Owl From Dogfish |
| Smith, Heather | A Plan for Pops |
| Smith, Heather | Angus All Aglow |
| Smith, Niki | The Golden Hour |
| Snape, Emily | Old MacDonald Had a Baby |
| Spalding, Amy | The Summer of Jordi Perez (And the Best Burger in Los Angeles) |
| Spiegelman, Art | Maus: A Survivor's Tale |
| Stamper, Phil | The Gravity of Us |
| Stapley, Marissa | Lucky |
| Stead, Rebecca | The List of Things That Will Not Change |
| Stevenson, Robin | Pride |
| Stevenson, Robin | Pride Colors |
| Stevenson, Robin | Pride Puppy! |
| Stoeve, Ray | Between Perfect and Real |
| Stone, Jeff | Crane |
| Stones, Tanya Lee | A Bad Boy Can Be Good for a Girl |
| Stott, Ann | Want to Play Trucks? |
| Stratton, Allan | Chanda's Secrets |
| Styron, William | Sophie's Choice |
| Sugiura, Misa | Love & Other Natural Disasters |
| Sutton, Jane | Defineitely Not Sexy |
| Telgemeier, Raina | Drama |
| The Nib | Be Gay, Do Comics |
| Thom, Kai Cheng | From the Stars in the Sky to the Fish in the Sea |
| Thomas, Angie | The Hate U Give |
| Thomas, E.L. | Choose Your Own Adventure: Eighth Grade Witch |
| Thompson, Craig | Habibi |
| Thompson, Julian F. | Discontinued |
| Thorn, Theresa | It Feels Good to be Yourself: A Book About Gender Identity |
| Torchia, Joseph | The Kryptonite Kid |
| Trimmer, Christian | Teddy's Favorite Toy |
| Turley, Beth | The Flyers |
| Turner, Ann | Learning to Swim |
| Twiss, Jill | A Day in the Life of Marlon Bundo |
| Underwood, Deborah | Ogilvy |
| Vaughan, Brian K. | Saga |
| Walden, Tillie | Spinning |
| Walker, Alice | The Color Purple |
| Waller, Jae | The Call of the Rift: Crest |
| Walton, Jessica | Introducing Teddy: A gentle story about gender and friendship |
| Watkins, Christine | Date Rape |
| Williams, Vera | Home at Last |
| Wood, Margot | Fresh |
| Woodgate, Harry | Grandad's Camper |
| Wright, Bill | Putting Makeup on the Fat Boy |
| Wright, Richard | Native Son |
| Wright, Richard | Native Son |

https://databases.desmoinesregister.com/books-flagged-for-removal-from-school-libraries/

# APPENDIX B

# The List of Books Defendant Urbandale Community School District
# Subsequently Identified for Removal

| Author | Title |
|---|---|
| Aciman, Andre | Call Me By Your Name |
| Andrews, Jesse | The Haters |
| Arnold, Elana K. | Damsel |
| Arnold, Elana K. | Red Hood |
| Arnold, Elana K. | What Girls Are Made Of |
| Asher, Jay | Thirteen Reasons Why |
| Atwood, Margaret | The Handmaid's Tale |
| Blume, Judy | Forever |
| Cabot, Meg | Ready or Not |
| Chbosky, Stephen | The Perks of Being a Wallflower |
| Dugard, Jaycee | A Stolen Life |
| Foley, Jessie Ann | The Carnival at Bray |
| Green, John | Looking for Alaska |
| Gruen, Sara | Water for Elephants |
| Hopkins, Ellen | Crank |
| Hopkins, Ellen | Identical |
| Hopkins, Ellen | Tilt |
| Hopkins, Ellen | Tricks |
| Johnson, George M. | All Boys Aren't Blue |
| Joyce, James | Ulysses |
| Kaur, Rupi | Milk and Honey |
| Kaur, Rupi | The Sun and Her Flowers |
| Keplinger, Kody | The Duff |
| Kobabe, Maia | Gender Queer |
| Levithan, David | Two Boys Kissing |
| Lo, Malinda | The Last Night at the Telegraph Club |
| Maas, Sarah J. | A Court of Frost and Starlight |
| Maas, Sarah J. | A Court of Mist and Fury |
| Maas, Sarah J. | A Court of Silver Flames |
| Maas, Sarah J. | A Court of Thorns and Roses |
| Maas, Sarah J. | A Court of Wings and Ruin |
| Maas, Sarah J. | Empire of Storms |
| Maas, Sarah J. | Kingdom of Ash |
| Maguire, Gregory | Wicked |
| McCormick, Patricia | Sold |

# The List of Books Defendant Urbandale Community School District Subsequently Identified for Removal

| | |
|---|---|
| Morrison, Toni | Beloved |
| Morrison, Toni | Song of Solomon |
| Morrison, Toni | The Bluest Eye |
| Myracle, Lauren | Shine |
| Myracle, Lauren | The Infinite Moment of Us |
| Nazemian, Abdi | Like a Love Story |
| Niven, Jennifer | Breathless |
| Perez, Ashley Hope | Out of Darkness |
| Picoult, Jodi | Nineteen Minutes |
| Reed, Amy | The Nowhere Girls |
| Sapphire | Push |
| Sndowsky, Daria | Anatomy of a Boyfriend |
| Sndowsky, Daria | Anatomy of a Single Girl |
| Vaughan, Brian K. | Saga |
| Walker, Alice | The Color Purple |
| Wright, Richard | Native Son |

https://databases.desmoinesregister.com/database-books-removed-from-libraries-in-iowa-school-districts/

# APPENDIX C

# The List of Books Mason City Community School District Identified for Removal

| Author | Title |
|---|---|
| Maas, Sarah J. | A Court of Mist and Fury |
| Dreiser, Theodore | An American Tragedy |
| Morrison, Toni | Beloved |
| Hopkins, Ellen | Crank |
| Anderson, M. T. | Feed |
| Bissinger, Buzz von | Friday Night Lights |
| Ziegesar, Cecily | Gossip Girl |
| Angelou, Maya | I Know Why the Caged Bird Sings |
| Duncan, Lois Green, | Killing Mr. Griffin |
| John Jackson, | Looking for Alaska |
| Tiffany Picoult, Jodi | Monday's Not Coming |
| McCormick, Patricia | Nineteen Minutes |
| Alexie, Sherman | Sold |
| Walker, Alice | The Absolutely True Diary of a Part-time Indian |
| Atwood, Margaret | The Color Purple |
| Hosseini, Khaled | The Handmaid's Tale |
| Asher, Jay Hopkins, | The Kite Runner |
| Ellen | Thirteen Reasons Why |
|  | Tricks |

https://databases.desmoinesregister.com/database-books-removed-from-libraries-in-iowa-school-districts/

# APPENDIX D

# The List of Books Defendant Iowa City Community School District Identified for Removal

| Author | Title |
|---|---|
| Armas, Elena | American Roommate Experiment |
| Armas, Elena | Spanish Love Deception |
| Arnold, Elana | Damsel |
| Asher, Jay | Thirteen Reasons Why |
| Atwood, Margaret | The Handmaid's Tale |
| Blume, Judy | Forever |
| Brown, Echo | Black Girl Unlimited |
| Brynie, Faith | 101 |
| Burcaw, Shane | Laughing at My Nightmare |
| Chang, Iris | The Rape of Nanking |
| Chbosky, Steven | The Perks of Being a Wallflower |
| Cochrun, Alison | Charm Offensive |
| Dawson, Juno | This Book is Gay |
| Gaiman, Neil | Stardust |
| Gay, Roxane | Not That Bad |
| Gowen, L. Kris | Making Sexual Decisions |
| Grace, Hannah | Icebreaker |
| Green, John | Looking for Alaska |
| Grimes, Nikki | Ordinary Hazards: A Memoir |
| Gruen, Sarah | Water for Elephants |
| Gyasi, Yaa | Homegoing |
| Hall, Alexis | Boyfriend Material |
| Hancock, Justin | Can We Talk About Consent |
| Hazelwood, Ali | Love Hypothesis |
| Henry, Emily | Beach Read |
| Hoover, Coleen | Ugly Love |
| Hoover, Colleen | It Ends with Us |
| Hoover, Colleen | It Starts With Us |
| Hopkins, Ellen | Crank |
| Hopkins, Ellen | Identical |
| Hopkins, Ellen | Traffick |
| Hopkins, Ellen | Tricks |
| Hutchinson, Shaun David | Brave Face |
| Jackson, Tiffany | Grown |
| Johnson, George M. | All Boys Aren't Blue |

# The List of Books Defendant Iowa City Community School District Identified for Removal

| | |
|---|---|
| Joyce, James | Ulysses |
| Kaur, Rupi | Milk and Honey |
| King, Stephen | It |
| Kuklin, Susan | Beyond Magenta |
| Larsson, Stieg | Girl With the Dragon Tattoo |
| Lyga, Barry | Boy Toy |
| Maas, Sarah J. | A Court of Frost and Starlight |
| Maas, Sarah J. | A Court of Mist and Fury |
| Maas, Sarah J. | A Court of Silver Flames |
| Maas, Sarah J. | A Court of Thorns and Roses |
| Maas, Sarah J. | A Court of Wings and Ruin |
| Maas, Sarah J. | Empire of Storms |
| Maas, Sarah J. | Kingdom of Ash |
| Maas, Sarah J. | Tower of Dawn |
| McCormick, Patricia | Sold |
| McQuiston, Casey | Red, White, and Royal Blue |
| Miller, Madeline | Song of Achilles |
| Moen, Erika | Let's Talk About It |
| Moore, Darnell | No Ashes in the Fire |
| Morrison, Toni | The Bluest Eye |
| Myracle, Lauren | The Infinite Moment of Us |
| Niven, Jennifer | Breathless |
| Perez, Ashley Hope | Out of Darkness |
| Picoult, Jodi | Nineteen Minutes |
| Santiago, Esmeralda | When I was Puerto Rican |
| Sebold, Alice | Lucky |
| Smiley, Jane | Thousand Acres |
| Stok, Barbara | Vincent |
| Thompson, Craig | Blankets |
| Vaughan, Brian K. | Y: The Last Man |
| Walker, Alice | The Color Purple |
| Witton, Hannah | Doing It: Let's Talk about Sex |

https://databases.desmoinesregister.com/database-books-removed-from-libraries-in-iowa-school-districts/

# APPENDIX E

# The List of Books Defendant West Des Moines Community Schools Identified for Removal

| Author | Title |
|---|---|
| Adichie, Chimamanda Ngozi | Half of a Yellow Sun |
| Arnold, Elana K. | Damsel |
| Arnold, Elana K. | Red Hood |
| Arnold, Elana K. | What Girls Are Made Of |
| Atwood, Margaret | The Handmaid's Tale |
| Butler, Octavia | Speech Sounds |
| Evison, Jonathan | Lawn Boy |
| Gay, Roxane | Not That Bad |
| Hoover, Colleen | Two More Days: An Anthology |
| Hopkins, Ellen | A Sin Such As This |
| Hopkins, Ellen | Crank |
| Hopkins, Ellen | Tilt |
| Hopkins, Ellen | Triangles |
| Hopkins, Ellen | Tricks |
| Johnson, George M. | All Boys Aren't Blue |
| Kaur, Rupi | Milk and Honey |
| Kobabe, Maia | Gender Queer: A Memoir |
| Maas, Sarah J. | A Court of Frost and Starlight |
| Maas, Sarah J. | A Court of Mist and Fury |
| Maas, Sarah J. | A Court of Silver Flames |
| Maas, Sarah J. | A Court of Thorns and Roses |
| Maas, Sarah J. | A Court of Wings and Ruins |
| Maas, Sarah J. | Empire of Storms |
| Maas, Sarah J. | House of Earth and Blood |
| Maas, Sarah J. | Kingdom of Ash |
| McCormick, Patricia | Sold |
| Melnick, Lynn | The Luckiest MILF in Brooklyn |
| Miles, Sara and Rofes, Eric | Opposite Sex |
| Morrison, Toni | The Bluest Eye |
| Myracle, Lauren | l8r, g8r |
| Myracle, Lauren | Shine |
| Myracle, Lauren | The Infinite Moment of Us |
| Myracle, Lauren | YOLO |
| Niven, Jennifer | Breathless |
| Palahniuk, Chuck | Adjustment Day |

**The List of Books Defendant West Des Moines Community Schools Identified for Removal**

| | |
|---|---|
| Palahniuk, Chuck | Choke |
| Palahniuk, Chuck | Doomed |
| Palahniuk, Chuck | Haunted |
| Palahniuk, Chuck | Inisile Monsters Remix |
| Palahniuk, Chuck | Lullaby |
| Palahniuk, Chuck | Rant |
| Palahniuk, Chuck | Snuff |
| Reed, Amy | The Nowhere Girls |
| Sapphire | Push |
| Sebold, Alice | Lucky |
| Sheeres, Julia | Jesus Land: A Memoir |
| Vonnegut, Kurt | Slaughterhouse Five |

https://databases.desmoinesregister.com/database-books-removed-from-libraries-in-iowa-school-districts/