**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| GLBT YOUTH IN IOWA SCHOOLS TASK FORCE d/b/a/ IOWA SAFE SCHOOLS, et al., | Case No. 4:23-cv-474 |
| *Plaintiffs*, | **PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION** |
| v. | |
| KIM REYNOLDS, in her official capacity as Governor of the State of Iowa, et al., | |
| *Defendants*. | |

COME NOW, Plaintiffs GLBT Youth in Iowa Schools Task Force d/b/a Iowa Safe Schools ("Iowa Safe Schools"); P.B.-P., by his parent and next friend, Belinda Scarrott; P.C. and A.C., by their parents and next friends, Richard and Ulrike Carlson; T.S., by her parent and next friend, Eric Saylor; B.F.S., by their parents and next friends, Brigit and Joseph Stevens; Robert Smith, by his parents and next friends Jane and John Smith; B.F., by their parent and next friend, Lara Newsom; and James Doe, by his parent and next friend, John Doe, and submit the following brief supporting Plaintiffs' Motion for a Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65 and Local Rule 7(d). In support, Plaintiffs state as follows:

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................ 2

ARGUMENT ...................................................................................................................... 7

    I.     PLAINTIFFS ARE LIKELY TO SUCCEED ON THEIR CLAIMS ..................... 7

         A.     Plaintiffs Are Likely to Prevail on Their First Amendment Claims. .......... 7

             1.     The law impermissibly chills student speech based on content and viewpoint.......................................................................................... 7

             2.     The law violates students' right to receive information and ideas. 10

             3.     The law violates students' rights of expressive association. .......... 11

             4.     The law is unconstitutionally overbroad. ...................................... 12

             5.     The law is unconstitutionally vague. ............................................ 14

         B.     Plaintiffs Are Likely to Prevail on Their Equal Protection Claim. ........... 16

         C.     Plaintiffs Are Likely to Prevail on Their Equal Access Act Claim. .......... 19

    II.     SF 496 HAS CAUSED AND WILL CONTINUE TO CAUSE PLAINTIFFS IRREPARABLE HARM.................................................................................... 19

    III.    THE BALANCE OF THE EQUITIES WEIGHS IN FAVOR OF PLAINTIFFS 20

    IV.    ENJOINING SF 496 IS IN THE PUBLIC INTEREST ..................................... 20

CONCLUSION.................................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*281 Care Comm. v. Arneson*,
  766 F.3d 774 (8th Cir. 2014) ............................................................9, 18

*Baskin v. Bogan*,
  766 F.3d 648 (7th Cir. 2014) .................................................................16

*Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*,
  457 U.S. 853 (1982) ..............................................................................10

*Bd. of Educ. of Westside Cmty. Sch. v. Mergens By & Through Mergens*,
  496 U.S. 226 (1990) ..............................................................................19

*Bear v. Fleming*,
  714 F. Supp. 2d 972 (D.S.D. 2010) .........................................................7

*Bostock v. Clayton Cnty.*,
  140 S. Ct. 1731 (2020) ..........................................................................16

*Brandt by & through Brandt v. Rutledge*,
  47 F.4th 661 (8th Cir. 2022) .................................................................16

*Broadrick v. Oklahoma*,
  413 U.S. 601 (1973) ..............................................................................13

*Campbell v. St. Tammany Par. Sch. Bd.*,
  64 F.3d 18489 (5th Cir. 1995) ...............................................................10

*City of Cleburne v. Cleburne Living Ctr.*,
  473 U.S. 432 (1985) .........................................................................16, 18

*Counts v. Cedarville Sch. Dist.*,
  295 F. Supp. 2d 996 (W.D. Ark. 1995) ..................................................10

*Cramp v. Bd. of Pub. Instruction of Orange Cnty.*,
  368 U.S. 278 (1961) ..............................................................................16

*D.M. by Bao Xiong v. Minnesota State High Sch. League*,
  917 F.3d 994 (8th Cir. 2019) ...........................................................19, 20

*Dataphase Sys., Inc. v. C L Sys., Inc.*,
  640 F.2d 109 (8th Cir. 1981) (en banc) ...................................................6

*Fayetteville Pub. Libr. v. Crawford Cnty.*,
No. 23-5086, 2023 WL 4849849 (W.D. Ark. Jul. 29, 2023)................................10

*Fulton v. City of Philadelphia*,
141 S. Ct. 1868 (2021)................................................................................17

*Gay & Lesbian Students Ass'n v. Gohn*,
850 F.2d 361 (8th Cir. 1988) ........................................................................11

*Gay Lib v. Univ. of Missouri*,
558 F.2d 848 (8th Cir. 1977) ........................................................................11

*Gay Students Org. of Univ. of New Hampshire v. Bonner*,
509 F.2d 652 (1st Cir. 1974).....................................................................7, 11

*Glenn v. Brumby*,
663 F.3d 1312 (11th Cir. 2011) .....................................................................16

*Grayned v. City of Rockford*,
408 U.S. 104,108–09 (1972)..........................................................................14

*Heckler v. Mathews*,
465 U.S. 728 (1984)......................................................................................17

*Henkle v. Gregory*,
150 F. Supp. 2d 1067 (D. Nev. 2001) .............................................................7

*Hill v. Colorado*,
530 U.S. 703 (2000)......................................................................................14

*Horton v. Midwest Geriatric Mgmt., LLC*,
963 F.3d 844 (8th Cir. 2020) ........................................................................16

*Johnson v. United States*,
576 U.S. 591 (2015)......................................................................................16

*Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*,
508 U.S. 384 (1993)........................................................................................8

*Mahanoy Area Sch. Dist. v. B.L.*,
141 S. Ct. 2038 (2021)....................................................................................2

*Miller v. California*,
413 U.S. 15 (1973)....................................................................................4, 14

*Minarcini v. Strongsville City Sch. Dist.*,
541 F.2d 577 (6th Cir. 1976) ........................................................................10

*Morrison ex rel. Morrison v. Bd. of Educ. of Boyd Cnty.*,
   419 F. Supp. 2d 937 (E.D. Ky. 2006), *aff'd sub nom. Morrison v. Bd. of Educ.
   of Boyd Cnty.*, 521 F.3d 602 (6th Cir. 2008)...........................................................8

*NAACP v. Button*,
   371 U.S. 415 (1963)...........................................................................................14

*NAACP v. State of Alabama ex rel. Patterson*,
   357 U.S. 449 (1958)...........................................................................................11

*Obergefell v. Hodges*,
   576 U.S. 644 (2015)...........................................................................................18

*Palmore v. Sidoti*,
   466 U.S. 429 (1984)...........................................................................................18

*Parents Defending Educ. v. Linn-Mar Cmty. Sch. Dist.*,
   83 F.4th 658 (8th Cir. 2023) ...............................................................................7

*Police Dep't of City of Chicago v. Mosley*,
   408 U.S. 92 (1972)...............................................................................................7

*Powell v. Noble*,
   798 F.3d 690 (8th Cir. 2015) .............................................................................19

*Pratt v. Independent Sch. Dist. No. 831*,
   670 F.2d 7719 (8th Cir. 1982) ......................................................................9, 10

*Reed v. Town of Gilbert*,
   576 U.S. 155 (2015)........................................................................................8, 17

*Reno v. ACLU*,
   521 U.S. 844 (1997)...........................................................................................14

*Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs*,
   826 F.3d 1030 (8th Cir. 2016) .............................................................................7

*Roberts v. U.S. Jaycees*,
   468 U.S. 609 (1984)...........................................................................................11

*Rodgers v. Bryant*,
   942 F.3d 451 (8th Cir. 2019) ...............................................................................6

*Romer v. Evans*,
   517 U.S. 620 (1996)...........................................................................................18

*Rosenberger v. Rector & Visitors of Univ. of Virginia.*,
   515 U.S. 819 (1995)...............................................................................................8

*SAGE v. Osseo Area Schs.–Dist. No. 279,*
   471 F.3d 908 (8th Cir. 2006) ...........................................................................19, 20

*SAGE v. Osseo Area Schs.–Dist. No. 279,*
   540 F.3d 911 (8th Cir. 2008) ...................................................................................19

*Sessions v. Dimaya,*
   138 S. Ct. 1204 (2018).............................................................................................14

*Sessions v. Morales-Santana,*
   137 S. Ct. 1678 (2017).............................................................................................16

*Shelley v. Kraemer,*
   334 U.S. 1 (1948).....................................................................................................18

*Snider v. City of Cape Girardeau,*
   752 F.3d 1149 (8th Cir. 2014) ...........................................................................12, 13

*Sorrell v. IMS Health,*
   564 U.S. 552 (2011)...................................................................................................8

*Stephenson v. Davenport Cmty. Sch. Dist.,*
   110 F.3d 1303 (8th Cir. 1997) .................................................................................14

*Texas v. Johnson,*
   491 U.S. 397 (1989)...................................................................................................8

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.,*
   393 U.S. 503 (1969)...................................................................................................8

*U.S. Dep't of Agric. v. Moreno,*
   413 U.S. 528 (1973).................................................................................................18

*United States v. Stevens,*
   559 U.S. 460 (2010).................................................................................................12

*United States v. Virginia,*
   518 U.S. 515 (1996).................................................................................................16

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,*
   429 U.S. 252 (1977).................................................................................................17

*Virginia v. Am. Booksellers Ass'n, Inc.,*
   484 U.S. 383 (1988)...................................................................................................8

*W. Virginia State Bd. of Educ. v. Barnette,*
   319 U.S. 624 (1943)...................................................................................................2

*Weaver v. Nebo Sch. Dist.*,
    29 F. Supp. 2d 1279 (D. Utah 1998) ........................................................................7

## Constitution

U.S. Const. Amendment I ........................................................................ *passim*

U.S. Const. Amendment XIV ........................................................................11, 16, 20

## Statutes

20 U.S.C. § 4071 ........................................................................1, 19, 20

42 U.S.C. § 12131 *et seq.* ........................................................................15

Iowa Code § 216.2 ........................................................................13

Iowa Code § 256.11 ........................................................................2, 20

Iowa Code § 272.1 ........................................................................3

Iowa Code § 279.50 ........................................................................2

Iowa Code § 279.77 ........................................................................3

Iowa Code § 279.78 ........................................................................3

Iowa Code § 279.80 ........................................................................2, 13

Iowa Code § 280.6 ........................................................................2, 4

Iowa Code § 702.17 ........................................................................14

Iowa Code § 728.1 ........................................................................4, 12

Iowa Code § 728.2 ........................................................................18, 20

Iowa Code § 728.3 ........................................................................18

## INTRODUCTION

Plaintiffs move for an Order enjoining Defendants from enforcing or taking action to enforce Senate File 496, 2023 Iowa Acts ch. 91 ("SF 496" or "the law"). Plaintiffs are elementary, middle, and high school lesbian, gay, bisexual, transgender, queer, or questioning ("LGBTQ+") students attending various public schools in Iowa ("Plaintiff Students"), and the organization Iowa Safe Schools, which seeks to support and empower LGBTQ+ students across the state.

SF 496 violates Plaintiffs' and other students' First Amendment, equal protection, and Equal Access Act rights by four principal means: (1) erasing acknowledgement of LGBTQ+ people and the concepts of sexual orientation and gender identity from schools with grades K–6; (2) banning any materials that contain a description or depiction of a "sex act" from all schools in all grades with a limited exception for health class;  (3) specifically banning books that contain a "sex act" from all school library programs, regardless of grade, except for certain religious texts such as the Bible;  and (4) requiring schools to report students for expressing transgender, non-binary, or gender non-conforming identities.

These measures collectively, coupled with draconian enforcement provisions and the message sent by the law's enactment, communicate to all LGBTQ+ students that they are too shameful to be acknowledged. SF 496 deprives Plaintiffs of their right to free speech and expression. Plaintiff Students and others now self-censor their own identities and refrain from engaging in protected speech and expression for fear of being bullied, harassed, or disciplined by teachers simply for acknowledging who they are. SF 496 also infringes upon Plaintiff Students' right to receive information and ideas; indeed, it explicitly requires the removal of books, uniquely focusing on books with LGBTQ+ content. The law deprives Plaintiffs of their right of expressive association; it imposes limitations on students—or outright prohibits them from—associating into gender sexuality alliances ("GSAs"). The law is so overbroad that any conceivable purpose is

entirely divorced from the protected speech prohibited. More than 1,000 books comprising of more than 450 different titles have been removed, welcoming and affirming messages have been taken down, and students have incurred penalties for being who they are. SF 496 also is unconstitutionally vague by failing to define with specificity what content is prohibited and what expression might trigger a report. In its purpose and effect, SF 496 as a whole discriminates against LGBTQ+ people and identities.

Eighty years ago, the Supreme Court recognized the mission of public schools is to educate "the young for citizenship." For this reason, there must be "scrupulous protection of Constitutional freedoms of the individual." *W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 637 (1943). This principle remains true today. *Mahanoy Area Sch. Dist. v. B.L.*, 141 S. Ct. 2038, 2046 (2021) ("America's public schools are the nurseries of democracy."). SF 496 must be enjoined.

## **FACTUAL BACKGROUND**

SF 496 accomplishes its goal of silencing LGBTQ+ students and denying them access to books, information, and ideas about sexual orientation and gender identity in four key ways. First, SF 496 broadly prohibits "any program, curriculum, test, survey, questionnaire, promotion, or instruction relating to gender identity or sexual orientation to students in kindergarten through grade six"[1] (the law's "don't say gay or trans" provision). Second, SF 496 bans "any material with descriptions or visual depictions of a sex act" from all grades and in all contexts except, in limited fashion, health class (the "all-ages ban").[2] Third, the law orders the removal from school libraries

---

[1] SF 496, Div. II, § 16 (Iowa Code § 279.80(1)–(2)); *id.* Div. I, § 2 (Iowa Code § 256.11(2), (3)); *id.* Div. II, § 9 (Iowa Code § 279.50(1), (1A)).

[2] SF 496, Div. I, § 1 (Iowa Code § 256.11 (unnumbered paragraph 1)); *id.* § 2 (Iowa Code § 256.11(2), (3), (4)); *id.* Div. I, § 4 (Iowa Code § 256.11(19)(a)–(b)).

of any book containing a "sex act," unless that description appears in a religious text[3] and creates an anonymous complaint procedure[4] (the "library ban" and together with the "don't say gay or trans" provision and "all-ages ban," the "book ban" provisions). Fourth, the law requires any "licensed practitioner," such as a teacher, to report to a student's parents or guardians,[5] which includes a student's request to be addressed "using a name or pronoun that is different than [that] assigned to the student in the school district's registration forms or records," regardless of whether school officials are aware that a student will be rendered unsafe or vulnerable to abuse as a result[6] (the "forced outing" requirement).

The manager of SF 496 on the Iowa Senate floor described the law as a bill that restricts "gender identity and sexual activity instruction . . . [and] inappropriate books from school libraries."[7] In signing remarks, Governor Reynolds suggested the bill was designed to prevent "indoctrination." Compl. ¶ 107. In its final iteration, this sprawling bill targets LGBTQ+ students and messages with unique disfavor by limiting the information available and expressed in the school environment. To enforce these restrictions, the state threatens to investigate and discipline staff and administration found in violation, potentially resulting in loss of accreditation of the entire school. SF 496, Div. I, §§ 1–4, 9.

---

[3] SF 496, Div. I, § 2 (Iowa Code § 256.11(9)(a)(1)); *id.* Div. I, § 2 (Iowa Code § 256.11(9)(*a*)(2)(a)–(b)) (enforcement); *see also* Iowa Code § 280.6.

[4] SF 496, Div. II, § 13 (Iowa Code § 279.77(1)–(4)).

[5] *See* Iowa Code § 272.1(8).

[6] SF 496, Div. II, § 14 (Iowa Code § 279.78(1), (3)); *id.* Div. II, § 14 (Iowa Code § 279.78(4)(*a*)–(*b*)) (enforcement)*.*

[7] Iowa Sen. Rozenboom, *Senate Video (2023-03-22),* 90th S. Sess. 73rd Day at 5:42:45 PM, (Mar. 22, 2023). All cited videos from sessions of the Iowa House or Senate are available at https://www.legis.iowa.gov/legislation/billTracking/billHistory?billName=SF%20496&ga=90.

SF 496 went through an unusual number of amendments, resulting in an illuminating legislative history. For example, rather than banning all materials containing a "description or visual depiction of a sex act," the initial bill used versions of the test for obscenity established in *Miller v. California*, 413 U.S. 15, 24 (1973), and in Iowa's existing obscenity laws, *see* Iowa Code § 728.1(5). *See* S.S.B. 1145, § 16. Finding this restriction inadequate, the Iowa Senate adopted the now-familiar "sex act" language.[8] The Iowa House attempted to insert the qualifier, "*graphic* descriptions,"[9] but the Senate rejected this qualification.[10] Additionally, after a senator identified a potential conflict with existing Iowa law, which prohibits exclusion of the Bible,[11] *see* Iowa Code § 280.6, the bill was amended—not to tighten the definition of prohibited materials—but to exempt certain religious texts from its scope.[12]

Further, sexual *orientation* originally was not prohibited from discussion in grades K–6, only sexual *activity* and only in grades K–3. *See* S.S.B. 1145, § 13. The final bill included both subjects, with sponsors conflating the two, thereby sexualizing LGBTQ+ identities and people and proclaiming them inappropriate for school. Initial versions of the bill also acknowledged the forced outing provision's potential for harm, and directed the school to report instead to the Department of Health and Human Services if it expected a student's non-affirming parents or guardians would abuse an outed student. S.S.B. 1145, § 16. This alternative was dropped,[13] necessarily requiring reporting to parents or guardians even if abuse is suspected to result.

---

[8] Amend. S-3097 to S.F. 496, 90th Leg. Sess., (as adopted by IA Senate, Mar. 22, 2023).

[9] Amend. H-1173 to S.F. 496, 90th Leg. Sess., (as adopted by IA House, Apr. 4, 2023).

[10] S-3117 to S.F. 496, 90th Leg. Sess., (as concurred by IA Senate, Apr. 19, 2023).

[11] *Senate Video (2023-03-22),* 90th IA S. Sess. 73rd Day at 6:35:39 PM, (Mar. 22, 2023) (quoting exchange between Sen. Quirmbach and Sen. Rozenboom); *see generally* Genesis 19:32–26, 38:8–9; Judges 19:24–29.

[12] Amend. H-1271 to S-3117, 90th Leg. Sess., (as concurred by House Apr. 20, 2023).

[13] S-3097 to S.F. 496, 90th Leg. Sess., § 15 (as adopted by IA Senate, Mar. 22, 2023).

No revisions to the language can soften the blow to Iowa students from a law that at its core is designed to erase LGBTQ+ students from Iowa schools. Amidst widespread confusion and panic over the law, Plaintiff Students have closed off forms of expression in which they used to engage. They have become more reluctant to be "out" about their identities at school (Ex. 1 ("B.F. Decl.") ¶ 6; Ex. 2 ("P.B.-P. Decl.") ¶¶ 7–8); wear clothing that fits their identity or acknowledges they are LGBTQ+ (B.F. Decl. ¶ 7; P.B.-P. Decl. ¶ 7; Ex. 3 ("B.F.S. Decl.") ¶ 7); ask fellow students and teachers to refer to them using accurate names and pronouns (Ex. 4 ("P.C. Decl.") ¶ 7; P.B.-P. Decl. ¶ 13); engage in classroom discussion in a manner that reveals their identities or that brings up LGBTQ+ issues generally (B.F. Decl. ¶¶ 8–9; Ex. 5 ("Doe Decl.") ¶ 8; Ex. 6 ("T.S. Decl.") ¶ 4); write self-reflective essays or papers acknowledging their own LGBTQ+ identities (P.B.-P. Decl. ¶ 8); engage in political advocacy concerning LGBTQ+ topics with groups of like-minded students (P.B.-P. Decl. ¶ 12); and in myriad other ways, express themselves or their pride in their identity. Other students feel they have no other choice but to stay in the closet. Doe Decl. ¶¶ 6–7; Ex. 7 ("ISS Decl.") ¶ 28.

The law has caused schools to restrict GSA activities, interfering with the ability of these student clubs to meet and promote on terms comparable to other clubs. ISS Decl. ¶¶ 21–29. After SF 496, certain GSAs have stopped meeting altogether, either because school districts have prohibited them or teachers have declined to serve as sponsors. Ex. 8 ("Smith Decl.") ¶ 4; Ex. 9 ("R. Carlson Decl.") ¶ 11; ISS Decl. ¶¶ 21–29. In other schools, SF 496 has led to a steep decline in engagement in GSAs as students from non-affirming homes have become terrified of joining such groups for fear of SF 496's forced outing requirement. Doe Decl. ¶ 7; P.B.-P. Decl. ¶ 11; ISS Decl. ¶¶ 25–29.

Even students with substantial support at home report feeling isolated and hopeless after their legislature has targeted them and their school has ceased proactive inclusion efforts. ISS Decl.

¶ 19. Reported instances of anti-LGBTQ+ bullying and harassment are on the rise. *Id.* Most alarming is the apparent increase in suicide attempts amongst LGBTQ+ youth. *Id.* In short, SF 496 has transformed the school environment into a climate of fear and hostility for LGBTQ+ youth, with students who have been proud in expressing their identities for years now silencing themselves to avoid being disciplined, stigmatized, and harassed, and others remaining closeted. ISS Decl. ¶¶ 22, 28–29; Ex. 10 ("Stevens Decl.") ¶ 6.

SF 496 also has forced Iowa school districts to remove wildly inconsistent lists of books from classrooms and libraries with over 450 titles removed to date.[14] School districts have targeted books with LGBTQ+ themes, narratives, and other content for removal. ISS Decl. ¶ 22. Some schools and classrooms in grades K–6 now lack any books that acknowledge LGBTQ+ people or families even exist. R. Carlson Decl. ¶¶ 10–13. By contrast, books depicting heterosexual and cisgender characters, families, and narratives remain untouched and available to students. *Id.* ¶ 14. LGBTQ+ students seeking stories with LGBTQ+ characters now receive the message they are shameful and inappropriate for school. *Id.* ¶¶ 13–14; P.C. Decl. ¶¶ 3–5; B.F. Decl. ¶ 11. Students preparing for college have lost access to treasured classics and modern works of critical acclaim still taught in other states. Doe Decl. ¶¶ 11–12; Ex. 11 ("Newsom Decl.") ¶ 10. By stifling the opportunity to read and inquire and sending the message that previously vetted literature carries hidden dangers, SF 496 disadvantages Iowa students in their personal growth and educational goals.

---

[14] The Des Moines Register maintains an expanding database of book removals based on school districts' responses to open records requests. Tim Webber and Samantha Hernandez, *Library books removed in Iowa school districts,* Des Moines Register (updated Oct. 19, 2023, 12 PM) https://databases.desmoinesregister.com/database-books-removed-from-libraries-in-iowa-school-districts/ [hereinafter, "DSM Register Banned Books Database"].

**ARGUMENT**

Plaintiffs have established the four *Dataphase* factors, entitling them to preliminary injunctive relief: (1) Plaintiffs are likely to succeed on the merits; (2) they face irreparable harm absent the injunction; (3) Defendants incur no harm by injunction; and (4) the public interest supports enjoining SF 496. *See Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc); *see also Rodgers v. Bryant*, 942 F.3d 451, 456 (8th Cir. 2019) (likelihood of success on First Amendment claim generally satisfies other injunction requirements); *Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs*, 826 F.3d 1030, 1040 (8th Cir. 2016) (likelihood of success need only be shown on any one of multiple claims).

## I.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THEIR CLAIMS

### A.   Plaintiffs Are Likely to Prevail on Their First Amendment Claims.

#### 1.   The law impermissibly chills student speech based on content and viewpoint.

SF 496 is a one-sided law that restricts protected speech based on content and viewpoint. SF 496's "don't say gay or trans," "book ban," and "forced outing" provisions and its enforcement mechanisms chill LGBTQ+ people from engaging in speech disclosing their sexual orientation and gender identity[15] and expressing themselves consistent with their gender identity. It does not

---

[15] Courts long have held that coming-out speech constitutes protected First Amendment activity. *See, e.g.*, *Gay Students Org. of Univ. of New Hampshire v. Bonner*, 509 F.2d 652, 660–62 (1st Cir. 1974) (student speech); *Henkle v. Gregory*, 150 F. Supp. 2d 1067, 1075–77 (D. Nev. 2001) (same); *Weaver v. Nebo Sch. Dist.*, 29 F. Supp. 2d 1279, 1284–85 (D. Utah 1998). Indeed, a student's speech about gender identity can constitute core political speech subject to the most exacting scrutiny. *Parents Defending Educ. v. Linn-Mar Cmty. Sch. Dist.*, 83 F.4th 658, 666–67 (8th Cir. 2023) (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161–62 (2014)). Expression of gender identity through one's appearance such as by wearing gender-appropriate clothing also is protected expression. *See Bear v. Fleming*, 714 F. Supp. 2d 972, 981 (D.S.D. 2010) (a transgender student's choice to wear clothing that accords with the student's gender identity may be a sufficient proxy for speech to enjoy full constitutional protection).

suppress comparable speech and expressive conduct by non-gay and non-transgender people.[16] Students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate," and schools may not restrict student speech merely to avoid controversy or the "discomfort and unpleasantness that always accompany an unpopular viewpoint." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506, 509 (1969); *Morrison ex rel. Morrison v. Bd. of Educ. of Boyd Cnty.*, 419 F. Supp. 2d 937, 941 (E.D. Ky. 2006) ("The private, noncurricular speech of students is entitled to almost blanket constitutional protection."), *aff'd sub nom. Morrison v. Bd. of Educ. of Boyd Cnty.*, 521 F.3d 602 (6th Cir. 2008).

"It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys." *Rosenberger v. Rector & Visitors of Univ. of Virginia.*, 515 U.S. 819, 828 (1995). Content-based regulation is subject to "the most exacting scrutiny," *Texas v. Johnson*, 491 U.S. 397, 412 (1989) (citation omitted). Such enactments "are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). Viewpoint discrimination is "an egregious form of content discrimination." *Rosenberger*, 515 U.S. at 829. "In the ordinary case it is all but dispositive to conclude that a law is content based and, in practice, viewpoint discriminatory." *Sorrell v. IMS Health*, 564 U.S. 552, 571 (2011); *see also, e.g., Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 394 (1993).

---

[16] SF 496 targets and chills two forms of protected First Amendment expression. First, it chills LGBTQ+ students from disclosing their sexual orientation and transgender status by speech such as "I am gay," "I am transgender," or "I am a girl." By contrast, a female student who is neither a lesbian nor transgender may disclose these facts without consequence. Thus, SF 496 attaches different consequences to the same speech based on the speaker's identity, constituting impermissible viewpoint discrimination. *See Police Dep't of City of Chicago v. Mosley*, 408 U.S. 92, 96 (1972). Second, and equally impermissible, SF 496 chills speech and conduct that reveals or conforms with a person's sexual orientation and gender identity, even implicitly (e.g., a student's decision to wear a dress, or a student's depiction of two same-sex parents in a drawing). SF 496 does not similarly chill speech and conduct that implicitly reveal the sexual orientation and gender identity of a heterosexual cisgender person.

SF 496 causes a reasonable speaker to self-censor, objectively chilling protected expression. *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392–93 (1988). For example, Plaintiff A.C., a fourth grader, "conceals herself instead of taking pride in who she is" at school (P.C. Decl. ¶ 10), for fear "that being honest and open about her identity will get her, or any teachers or staff who might show support for her, into trouble" given the law's blanket prohibition on promotion or instruction related to her identity (R. Carlson Decl. ¶ 15). Prior to SF 496, A.C. "felt comfortable sharing the fact that she is trans with close friends in her classroom," but now she feels unsafe doing so. Ex. 12 ("U. Carlson Decl.") ¶ 10. Similarly, Plaintiff P.B.-P. used to refer to his identity as transgender in class or related schoolwork when it was relevant, as in self-reflective essays. P.B.-P. Decl. ¶ 8. SF 496 causes P.B.-P. to self-censor such references.  He also has stopped wearing clothing that could identify him as LGBTQ+ or express pride in his identity. *Id.* ¶¶ 7–8. Although P.B.-P. previously engaged in core political speech, leading a protest of Iowa students against anti-LGBTQ+ legislation, he now is terrified of staging another. *Id.* ¶ 12. Plaintiffs P.B.-P., T.S., B.F., and B.F.S. feel as though they have targets on their backs and self-censor in numerous contexts at school to avoid the shame of being silenced or disciplined, to avoid placing teachers in the position of violating of the law, or because they reasonably fear the law will impede efforts by teachers to prevent bullying and harassment based on their LGBTQ+ identities. P.B.-P. Decl. ¶ 6; B.F. Decl. ¶¶ 6–7; T.S. Decl. ¶ 4; B.F.S. Decl. ¶ 4; Newsom Decl. ¶ 8.

These fears are reasonable, especially given how school districts have implemented the law already, targeting LGBTQ+ books, rainbow images, and safe space stickers for removal and obstructing the ability of GSAs to meet if they are allowed to meet at all. These actions communicate that the law condemns any acknowledgement that LGBTQ+ people exist. Additionally, the law's vague language and draconian enforcement mechanisms, coupled with its anonymous complaint procedure, sweep broadly, incentivizing the suppression of speech. *See 281*

*Care Comm. v. Arneson*, 766 F.3d 774, 782 (8th Cir. 2014) (plaintiffs' decision to chill their speech objectively reasonable, especially in light of a complaint procedure open to the public). Because the law lacks a legitimate government justification, let alone the narrow tailoring required in service of a compelling one, *see infra* Sections I.A.4–5, III, SF 496 violates the First Amendment.

2.      **The law violates students' right to receive information and ideas.**

Students have a First Amendment right to be free from official conduct in school intended to suppress ideas based on disapproval of their content. *See Pratt v. Indep. Sch. Dist. No. 831*, 670 F.2d 771, 776–79 (8th Cir. 1982); *see also generally Campbell v. St. Tammany Par. Sch. Bd.*, 64 F.3d 184, 188–89 (5th Cir. 1995) (citing *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 872 (1982) (plurality)); *Fayetteville Pub. Libr. v. Crawford Cnty.*, No. 23-5086, 2023 WL 4849849, at *3 (W.D. Ark. Jul. 29, 2023). Schools may not remove books containing LGBTQ+ content from school libraries to "prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion." *Pico*, 457 U.S. at 854 (quoting *Barnette*, 319 U.S. at 642). "[T]he Constitution protects the right to receive information and ideas," a right that extends to students with respect to school library materials. *Id.* (quoting *Stanley v. Georgia*, 394 U.S. 557, 564 (1969)). Restrictions on this right constitute a First Amendment injury. *Id*. The library, a noncurricular space, is outside the scope of otherwise permissible content-based restrictions on speech in the school setting. *Id.* at 869; *Pratt*, 670 F.2d at 776; *Minarcini v. Strongsville City Sch. Dist.*, 541 F.2d 577, 581–82 (6th Cir. 1976). SF 496's multiple book ban provisions target content of relevance to LGBTQ+ students and have caused school districts to remove more than 1,000 books from school libraries.[17] Plaintiff Students are deprived of books

---

[17] Hernandez, *Iowa's proposed rules on banning books in schools are out. Here's what you should know:*, Des Moines Register, Nov. 15, 2023, https://www.desmoinesregister.com/story/news/education/2023/11/15/iowa-releases-proposed-rules-for-law-on-banned-books-gender-identity/71584498007/.

they wish to read. *See*, *e.g*., T.S. Decl. ¶ 7. The law, on its face and as applied, unconstitutionally censors LGBTQ+ content and viewpoints in violation of the First Amendment, stigmatizing those students who wish to read this material. *See Counts v. Cedarville Sch. Dist.*, 295 F. Supp. 2d 996, 998–99 (W.D. Ark. 1995).

### 3. The law violates students' rights of expressive association.

The First Amendment protects the freedom of expressive association. *Roberts v. U.S. Jaycees,* 468 U.S. 609, 617–18 (1984). The freedom to "engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech." *NAACP v. State of Alabama ex rel. Patterson*, 357 U.S. 449, 460 (1958). These protections apply to students who wish to join together in noncurricular clubs such as GSAs in school settings for purposes of social networking, political advocacy, mutual support, and public education.[18] *See, e.g.*, *Gay & Lesbian Students Ass'n v. Gohn*, 850 F.2d 361, 367–68 (8th Cir. 1988) (denial of funding to GSA viewpoint discriminatory); *Gay Lib v. Univ. of Missouri*, 558 F.2d 848, 856 (8th Cir. 1977); *Bonner*, 509 F.2d at 660. Based on viewpoint, SF 496's don't say gay or trans, all-ages ban, and forced outing provisions, on their face and as implemented, have obstructed and interfered with the ability of students to associate for these purposes in violation of the First Amendment. Some school districts have shuttered GSAs altogether in younger grades, prohibiting them from meeting. R. Carlson Decl. ¶ 11; ISS Decl. ¶ 26. In others, the law has made it impossible to find a teacher willing to

---

[18] GSAs lead to "feelings of school connectedness among [LGBTQ] students," as well as "increasing young people's sense of purpose, self-esteem, and agency." Gay-Straight/Genders & Sexualities Alliances, CDC.gov, https://www.cdc.gov/healthyyouth/safe-supportive-environments/sexuality-alliances.htm (last visited Nov. 15, 2023). GSAs offer myriad other positive influences in students' lives, leading to "reduced risk across health outcomes related to HIV and other STDs, including experiencing violence, illicit drug use and prescription drug misuse, and suicidal ideation." *Id*. And these prevention benefits are even documented for heterosexual youth. *Id*.

serve as a sponsor, resulting in the GSA's closure. Smith Decl. ¶ 4; ISS Decl. ¶¶ 26, 29. Many more have imposed restrictions not imposed on other clubs or witnessed the number of GSA members dwindle as a result of students' fears they will be reported and outed to their parents if they attend. P.B.-P. Decl. ¶¶ 10–11; Doe Decl. ¶¶ 5–9). The First Amendment forbids such limitations on students' rights of expressive association.

### 4. The law is unconstitutionally overbroad.

Even if SF 496 had a legitimate purpose (which it does not), it sweeps far too broadly. SF 496 is a "prohibition of alarming breadth." *United States v. Stevens*, 559 U.S. 460, 474 (2010). It covers a "substantial amount of expressive activity;" indeed, "[i]t is hard to imagine any scenario in which the elements of the statute would be met and yet the actions would constitute non-expressive conduct." *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1158 (8th Cir. 2014).

First, the book ban provisions are not limited to targeting "pornography" in school libraries. The materials prohibited under SF 496 are those that include "descriptions or visual depictions of a sex act." Intentionally, there is no regard for the work as a whole, contemporary community standards as to what is suitable for minors, its intended appeal or offensiveness, or its value. *Cf.* Iowa Code § 728.1(5). It thus is not surprising that classic works, such as *I Know Why the Caged Bird Sings*, *As I Lay Dying*, *Their Eyes Were Watching God*, *Slaughterhouse Five*, and *1984* have been removed from various Iowa schools.[19] If the State had meant to remove pornography from school libraries, it could have enforced existing law; instead, it intentionally opted for a law that sweeps up far more.

Second, the don't say gay or trans provision reaches a wide swath of constitutionally protected speech. SF 496's all-encompassing scope as to what activities qualify for restriction,

---

[19] Referenced book removals sourced from the DSM Register Banned Book Database, *supra* note 14.

including any speech that merely "relat[e] to" these topics, forces schools to prohibit anything that might acknowledge the existence of an LGBTQ+ student or make an LGBTQ+ student feel welcome, such as pride flags, safe space signs, or rainbow stickers. Compl. ¶ 136. Schools have even removed children's picture books like *Prince and Knight*, *And Tango Makes Three*, and *This Day in June*, as well as educational books such as *Marriage Rights and Gay Rights: Interpreting the Constitution*, *Frequently Asked Questions about Same-Sex Marriage*, and *Who Was Harvey Milk?*.[20] If there were a legitimate purpose to this provision, it cannot extend so far as to remove the concept of LGBTQ+ people from the school entirely.

Third, the forced outing provision, the objective of which ostensibly is to encourage parental participation in the child's upbringing, does not align with its effect. For one, this provision does not speak to parental consent to gender-affirming "accommodations," but only to their disclosure. Moreover, by mandating reporting on any undefined, and thus broadly interpreted, "request" for an "accommodation" (regardless of whether that request occurs in school), the provision operates as little more than a penalty on expression. Most alarmingly, it makes no exception for children in unsafe or unstable home environments.

Finally, "a limiting construction or partial invalidation" cannot rescue SF 496. *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973). "No limiting construction would be consistent with any plausible understanding of the legislature's intent," *see Snider*, 752 F.3d at 1159, and none has been offered. The Department's recent attempts continue to require the erasure of LGBTQ+

---

[20] These book removals do not even take into account that "gender identity" and "sexual orientation," according to SF 496 and the Iowa Civil Rights Act, encompass *any* gender identity or sexual orientation. *See* SF 496, Div. II, § 16 (Iowa Code § 279.80(1)(*a*)–(*b*)); Iowa Code § 216.2(10), (14). Thus, if the law were taken literally, rather than as intended, it would equally suppress materials depicting cisgender and heterosexual identities.

identities and topics and put children at risk. *See generally* ISBE, Notice of Intended Action (Nov. 15, 2023) (hereinafter, "Proposed Rules").

**5.**      **The law is unconstitutionally vague.**

SF 496 imposes unconstitutionally vague censorship on students' own expression and the materials they choose to access at school. First Amendment "freedoms are delicate and vulnerable, as well as supremely precious in our society," and it is for this reason the "government may regulate in the area only with narrow specificity." *NAACP v. Button*, 371 U.S. 415, 433 (1963); *see also id.* at 432 ("[S]tandards of permissible statutory vagueness are strict in the area of free expression."). The severity of the enforcement mechanism—loss of professional licensure and even potential loss of school accreditation—further lessens the degree of tolerable vagueness. *See Sessions v. Dimaya*, 138 S. Ct. 1204, 1212–13 (2018). SF 496 "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," and "it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000); *see also Grayned v. City of Rockford*, 408 U.S. 104,108–09 (1972); *Stephenson v. Davenport Cmty. Sch. Dist.*, 110 F.3d 1303, 1308 (8th Cir. 1997).

First, in the all-ages ban, there is no satisfactory definition of what constitute a "description or visual depiction of a sex act" to render a book inappropriate for students whose ages may range from 5 to 18. Although Iowa Code defines what constitutes a "sex act" "between two or more persons," *see* Iowa Code § 702.17, SF 496 does not state how detailed the description of such act or how visible its depiction must be to be rendered inappropriate. The Department's Proposed Rules merely add, unhelpfully, that a "reference" or "mention" may under certain circumstances be acceptable, provided they do not rise to a description. Proposed Rules, Item 2 (281 Iowa Admin. Code r. 12.2). Books provide innumerable means of expression; this ambiguity renders the statute hopelessly vague. By cherry picking only one incomplete prong of the *Miller* test, the State has

14

created substantial uncertainty as to SF 496's scope. *See Reno v. ACLU*, 521 U.S. 844, 846, 873 (1997) ("Each of *Miller*'s other two prongs also critically limits the uncertain sweep of the obscenity definition."). Any person who must determine what is prohibited will unavoidably review the work based their own idiosyncratic opinion.[21]

Second, the law's don't say gay or trans provision does not explain how a "program, curriculum, test, survey, questionnaire, promotion, or instruction" might "relat[e] to gender identity or sexual orientation." The Department's proposal to add, without explanation, that a "neutral statement regarding sexual orientation or gender identity" is somehow outside the law's ambit is entirely unclear. Proposed Rules, Item 5 (281 Iowa Admin. Code r. 12.3(15)(c)). For example, would a children's book on diversity of families be considered neutral or does it promote the concept of sexual orientation? What about a student essay about Harvey Milk or the challenges a student overcame as an LGBTQ+ person? Or an assembly to address anti-LGBTQ+ bullying? SF 496 and the Proposed Rules leave interpretation to the whims of school administrators and teachers to set policy based on their own understanding and run classrooms based on their own risk tolerance; at the center, students are left without any assurance what conduct is prohibited.

Third, neither SF 496 nor the rules satisfactorily define a "request" for a gender-affirming "accommodation"[22] that would trigger the law's forced outing provision. What exact words and

---

[21] Samantha Hernandez and Katie Akin, *Iowa schools are pleading for state guidance on ban on books with sex. Will it come too late?,* Des Moines Register (Updated Jul. 10, 2023, 8:14 AM CT), https://www.desmoinesregister.com/story/news/education/2023/07/09/iowa-schools-still-waiting-for-guidance-on-new-ban-on-books-with-sex-department-of-education-lgbtq/70357682007/ (reporting confusion amongst educators across the state on what books must be removed under SF 496).

[22] Teachers and administrators ordinarily understand an "accommodation" as a change in standard procedure warranted by and subject to the substantive and procedural safeguards of, the Individuals with Disabilities Education Act, 30 U.S.C. §§ 1400 *et seq.*, section 504 of the Rehabilitation Act, 29 U.S.C. §§ 794, 794a, or Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131 *et seq.* But teachers and administrators would not expect a student's nickname to be an "accommodation" as those laws use that term. The Iowa legislature's sporadic use of legal terms of art in contexts to which they do not apply only further confounds interpretation of its intent.

phrases will trigger a report home and how would students have notice? The proposed rules state a "request is governed by this subrule only if the request is an accommodation intended to affirm a student's identity," but how is a teacher to know? Must they interrogate the child? Also, if "gender identity" includes cisgender identity, don't all nicknames necessarily affirm one's identity? The "grave uncertainty," *Johnson v. United States*, 576 U.S. 591, 597 (2015), and the significant consequences—both to students from non-affirming homes and students who do not wish to see a teacher disciplined for failure to report them—unavoidably has chilled student speech. *See supra* Section I.A.1; *see also Cramp v. Bd. of Pub. Instruction of Orange Cnty.*, 368 U.S. 278, 287 (1961) (a vague law abutting First Amendment freedoms "operates to inhibit the[ir] exercise").

### B.      Plaintiffs Are Likely to Prevail on Their Equal Protection Claim.

SF 496 violates the Fourteenth Amendment's equal protection guarantee. U.S. Const. amend. XIV, § 1. Classifications based on sex, sexual orientation, and gender identity/transgender status all warrant heightened scrutiny. *See, e.g.*, *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1689–90 (2017) (sex); *Brandt by & through Brandt v. Rutledge*, 47 F.4th 661, 669–70 (8th Cir. 2022) (sex); *Baskin v. Bogan*, 766 F.3d 648, 654–657 (7th Cir. 2014) (sexual orientation); *Glenn v. Brumby*, 663 F.3d 1312, 1317 (11th Cir. 2011) (transgender status). Because these traits "generally provide no sensible ground for differential treatment," *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985), the Equal Protection Clause requires that government provide an "exceedingly persuasive justification" for legislation that differentiates on those bases, *United States v. Virginia*, 518 U.S. 515, 531 (1996). Classifications based on sexual orientation and transgender status warrant such scrutiny both in and of themselves and as forms of sex discrimination. *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1747 (2020) (discrimination on the bases of sexual orientation and transgender status "necessarily entails discrimination based on sex"); *accord Horton v. Midwest Geriatric Mgmt., LLC*, 963 F.3d 844, 847 (8th Cir. 2020). LGBTQ+

students well understand the lopsided anti-LGBTQ+ purpose of the law, which legislators described as necessary to combat a "sinister agenda" of a "sexually deviant" "extreme and extremely loud minority." Compl. ¶¶ 86–91. Its effect has been to stigmatize and silence LGBTQ+ students (P.B.-P. Decl. ¶¶ 7–9, 12), make them feel "unwanted and shameful" (B.F. Decl. ¶ 6), "unsafe" (P.C. Decl. ¶ 10; Smith Decl. ¶ 8), deprive them of access to literature reflecting their own identities (T.S. Decl. ¶ 7), and heighten their fears of violence and harassment in school (P.B.-P. Decl. ¶ 6; Stevens Decl. ¶¶ 7–8; Newsom Decl. ¶ 8), while imposing no such burdens on heterosexual cisgender students. *See Heckler v. Mathews*, 465 U.S. 728, 739–40 (1984) (laws that discriminate by perpetuating archaic and stereotypic notions about a disfavored group, or that target members of the group as innately inferior, cause cognizable dignitary injury). Because SF 496 singles out LGBTQ+ people and topics for differential treatment and lacks adequate tailoring in service of even a legitimate governmental purpose, let alone the exceedingly persuasive one required, *see infra* Sections I.A, III, it violates the Equal Protection Clause of the Constitution.

SF 496 fails to serve even a legitimate governmental purpose, let alone the compelling one required. *Reed*, 576 U.S. at 164 (strict scrutiny applies both to content-based restrictions on speech, and to laws that, while facially content-neutral, either cannot be justified without reference to the content of the regulated speech or were adopted by the government because of disagreement with its message). The purpose and effect of SF 496 is to suppress speech, expression, information, and ideas about LGBTQ+ people and identities while leaving untouched comparable speech, expression, information, and ideas concerning non-gay and non-transgender people and identities. *Supra* Section I.A.1–3; *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265–66 (1977) (facially neutral law may nonetheless violate Equal Protection Clause if it has a discriminatory purpose and effect). Even under the lowest level of scrutiny, governmental action must not disadvantage a disfavored group for its own sake, *U.S. Dep't of Agric. v. Moreno*, 413

U.S. 528, 534 (1973), and must bear at least a rational relationship to a legitimate governmental interest, *City of Cleburne*, 473 U.S. at 446.

SF 496 also cannot be justified as necessary to protect students from obscene materials. Prior to SF 496, Iowa law already protected students from dissemination of obscene material, barred minors from premises where such material is exhibited, and carefully regulated school libraries and collections. *See* Iowa Code §§ 728.2, 728.3; 281 Iowa Admin. Code r. 12.3(12)(*a*)–(*c*). A restriction on protected speech lacks sufficient tailoring to survive review when pre-existing laws already address more directly the professed government interest justifying the challenged law. *See 281 Care Comm.*, 766 F.3d at 789. Imagined threats, conjecture, and "common sense" alone cannot justify a content-based restriction on protected speech. *Id.* at 790–91.

Nor may the State justify the law as promoting "parental rights in education." The government may not enact a law endorsing the hostility of certain parents to acknowledging in school that LGBTQ+ people exist. *Palmore v. Sidoti*, 466 U.S. 429, 433 (1984) ("private biases" are not "permissible considerations for" governmental action); *see also Obergefell v. Hodges*, 576 U.S. 644, 672 (2015) (personal religious or philosophical objections to gay people may not constitutionally be given the imprimatur of the Government). "The Constitution confers upon no individual the right to demand action by the State which results in the denial of equal protection of the laws to other individuals." *Shelley v. Kraemer*, 334 U.S. 1, 22 (1948). Protecting the interests of people with personal or religious objections to gay people cannot be a valid rationale for any law. *Romer v. Evans*, 517 U.S. 620, 635 (1996) (such a law was "a classification of persons undertaken for its own sake, something the Equal Protection Clause does not permit."). In sum, SF 496 lacks any legitimate justification, let alone narrow tailoring in service of a compelling one.

### C.       Plaintiffs Are Likely to Prevail on Their Equal Access Act Claim.

The Equal Access Act ("EAA") prohibits any public secondary school from discriminating against students who wish to conduct a meeting within a limited open forum based on the "religious, political, philosophical, or other content of the speech at such meetings." 20 U.S.C. §§ 4071(a) and (b); *Bd. of Educ. of Westside Cmty. Sch. v. Mergens By & Through Mergens*, 496 U.S. 226, 235 (1990). "A 'limited open forum' exists whenever a public secondary school 'grants an offering to or opportunity for one or more noncurriculum related student groups to meet on school premises during noninstructional time.'" *Mergens*, 496 U.S. at 235 (quoting 20 U.S.C. § 4071(b)); *SAGE v. Osseo Area Schs.–Dist. No. 279*, 540 F.3d 911, 913 (8th Cir. 2008). Thus, once a school permits any noncurricular group to meet, the EAA requires the school to allow GSAs on the same terms as other noncurricular clubs. *See*, *e.g.*, *SAGE v. Osseo Area Schs.–Dist. No. 279*, 471 F.3d 908, 913 (8th Cir. 2006). Because SF 496 requires school districts across Iowa to obstruct the ability of GSAs, including ISS member GSAs, to meet on the same terms as other noncurricular clubs, *see supra* Section I.A.3, the law violates the EAA.

## II.      SF 496 HAS CAUSED AND WILL CONTINUE TO CAUSE PLAINTIFFS IRREPARABLE HARM

Plaintiffs have identified numerous ways in which SF 496 has forced them into silence and caused harm to LGBTQ+ students. *See supra* Section I.A.1–3. "It is well-established that '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Powell v. Noble*, 798 F.3d 690, 702 (8th Cir. 2015) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see also D.M. by Bao Xiong v. Minnesota State High Sch. League*, 917 F.3d 994, 1004 (8th Cir. 2019) (students denied opportunities based on sex suffer irreparable harm sufficient to warrant preliminary injunction in equal protection claim); *SAGE*, 471 F.3d at 913 (preliminary injunction granted under EAA). Plaintiffs no longer can access a diverse selection

of books at school, fear to speak about and express their identity, and face hurdles to participate in noncurricular groups. *See supra* Section I.A.1–3.

## III.    THE BALANCE OF THE EQUITIES WEIGHS IN FAVOR OF PLAINTIFFS

There is no harm to Defendants from enjoining a law infringing upon Plaintiffs' and others' First and Fourteenth Amendment rights. The State maintains the authority to prosecute the dissemination or exhibition of obscene material to minors. *See* Iowa Code § 728.2. Those who wish to object to books or materials in the school may do so; Plaintiffs do not challenge Defendant School Districts rules and procedures that existed prior to SF 496 and allow the submission of a request to remove books or other materials from the school. The Department of Education remains able to offer guidance and engage in rulemaking to ensure Iowa schools follow "a multicultural, gender-fair approach" consistent with the educational standards previously set forth. *See* Iowa Code § 256.11 (2022). In contrast, right now, the rights of Plaintiffs and others like them are being eroded, and with each day that passes, they suffer further irreparable harm.

## IV.    ENJOINING SF 496 IS IN THE PUBLIC INTEREST

"[I]t is always in the public interest to protect constitutional rights." *D.M. by Bao Xiong*, 917 F.3d at 1004 (internal quotations and citation omitted).  All Iowa schools benefit when students can express themselves and explore their identities. Iowa communities value diversity in thought and person. It is a disservice to Iowa students, and contrary to the goals of public education, to limit the freedom to learn and grow. There is no legitimate public interest in the suppression of statutory and First and Fourteenth Amendment rights.

## <u>CONCLUSION</u>

For the foregoing reasons, enforcement of SF 496 should be enjoined during the pendency of this action.  SF 496 is unconstitutional on its face and as applied to Plaintiff Students.  It violates Plaintiffs' and other students' First and Fourteenth Amendment rights and statutory rights.

Date:   November 28, 2023

Respectfully submitted

/s/

Thomas D. Story, AT0013130 (Lead Counsel)
Rita Bettis Austen, AT0011558
Shefali Aurora, AT0012874
Sharon Wegner, AT0012415
**American Civil Liberties Union**
  **of Iowa Foundation**
505 Fifth Avenue, Suite 808
Des Moines, IA 50309
(515) 243-3988
thomas.story@aclu-ia.org
rita.bettis@aclu-ia.org
shefali.aurora@aclu-ia.org
sharon.wegner@aclu-ia.org

Laura J. Edelstein*
Katherine E. Mather*
**Jenner & Block LLP**
455 Market Street, Suite 2100
San Francisco, CA 94105
(628) 267-6800
LEdelstein@jenner.com
KMather@jenner.com

Anna K. Lyons*
Effiong Dampha*
**Jenner & Block LLP**
515 S. Flower Street, Suite 3300
Los Angeles, CA 90071-2246
(213) 239-5100
ALyons@jenner.com
EDampha@jenner.com

*Application for admission pro hac vice
forthcoming.
** Member of the Arizona bar. Practicing
under the supervision of a member of the Illinois bar.
*** Member of the Oregon bar. Practicing under the
supervision of a member of the DC bar.

Camilla B. Taylor*
Kara Ingelhart*
Nathan Maxwell* **
**Lambda Legal Defense**
  **and Education Fund, Inc.**
65 E. Wacker Pl., Suite 2000
Chicago, IL 6060
(312) 663-4413
ctaylor@lambdalegal.org
kingelhart@lambdalegal.org
nmaxwell@lambdalegal.org

Karen L. Loewy*
Sasha J. Buchert* ***
**Lambda Legal Defense**
  **and Education Fund, Inc.**
1776 K Street, N.W., 8th Floor
Washington, DC 20006-2304
(202) 804-6245
kloewy@lambdalegal.org
sbuchert@lambdalegal.org

Daniel R. Echeverri*
**Jenner & Block LLP**
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350
DEcheverri@jenner.com

Joshua J. Armstrong*
**Jenner & Block LLP**
1099 New York Avenue, NW, Suite 900
Washington, DC 20001
(202) 639-6000
JArmstrong@jenner.com

*Counsel for Plaintiffs*

21

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing paper with the Clerk of Court by using the CM/ECF system.

The foregoing paper also will be served along with the Complaint and Summons on all Defendants.

Dated: November 28, 2023

/s/Thomas D. Story
Thomas D. Story