## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | |
|---|---|
| GLBT YOUTH IN IOWA SCHOOLS TASK FORCE d/b/a IOWA SAFE SCHOOLS, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> KIM REYNOLDS, in her official capacity as Governor of the State of Iowa, et al., <br><br> *Defendants*. | Case No. 4:23-cv-474 <br><br><br><br> **SCHOOL DISTRICT DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS** |

COME NOW the School District Defendants and, pursuant to Local Rule 7, submit the following Brief in support of their Motion to Dismiss.

**TABLE OF CONTENTS**

I.  INTRODUCTION..................................................................................................................2

II. ARGUMENT.........................................................................................................................2

   A. The Complaint Fails to State a Claim Against the School District Defendants because it Does Not Allege a Policy or Custom of the School District Defendants is the Moving Force Behind Plaintiffs' Injuries........................................................3

   B. The School District Defendants Are Not Liable to Plaintiffs for Following State Law.................................................................................................................................5

   C. Alternatively, the Claims Against the Individual School District Officials Should be Dismissed as Duplicative of the Claims Against the School Districts ..............11

III. CONCLUSION ...................................................................................................................12

I.   **INTRODUCTION**

Plaintiffs' seven-count Complaint challenges the constitutionality of Iowa Senate File 496, described in the Complaint as "a sweeping piece of legislation signed into law by Governor Kim Reynolds on May 26, 2023." Compl. ¶ 1. The Complaint opens by explaining that Plaintiffs bring this lawsuit as a "challenge to recently enacted Senate File 496…, an unconstitutional law that violates Plaintiffs' First Amendment, equal protection, and Equal Access right." Compl. p. 2. The Complaint makes clear that the moving force behind Plaintiffs' alleged injuries is Senate File 496 and not any policy or custom of the School District Defendants. The School District Defendants are not appropriate defendants in this action because Plaintiffs' injuries as alleged in the Complaint are the result of state law. Accordingly, the School District Defendants move the Court to dismiss them from this action.

II.   **ARGUMENT**

The Complaint "fail[s] to state a claim upon which relief can be granted" because, accepting as true the factual allegations contained in the Complaint as the Court must on a pre-answer Motion to Dismiss, the Complaint fails to allege a policy or custom of the School District Defendants caused Plaintiffs' injuries. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 500 U.S. 544, 570 (2007)). To the extent the Complaint alleges sufficient factual matter that the School District Defendants have enacted policies to comply with the requirements of Senate File 496, the School District Defendants are not liable to Plaintiffs for complying with state law.

In addition, and alternatively, Plaintiffs' claims against dozens of school board members and administrators in their official capacities are duplicative of the claims against the School Districts, warranting dismissal of those individuals.

**A. The Complaint Fails to State a Claim Against the School District Defendants because it Does Not Allege a Policy or Custom of the School District Defendants is the Moving Force Behind Plaintiffs' Injuries.**

The Complaint fails to state a claim upon which relief can be granted against the School District Defendants because the Complaint fails to identify any official policy or custom of the School District Defendants that caused Plaintiffs' alleged injuries.

All seven of Plaintiffs' claims are brought pursuant to 42 U.S.C. § 1983. Compl. ¶ 38 [Docket No. 1]. A governmental entity in a Section 1983 action "can [only] be held liable if a constitutional violation resulted from a municipal policy or custom." *A.H. v. St. Louis County, Missouri*, 891 F.3d 721, 728 (8th Cir. 2018); *see also Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of a § 1983 claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged constitutional deprivation); *see also Swallow v. Wojcik*, No: 20–1839, 2020 WL 6156607, at *1 (8th Cir. July 8, 2020) (affirming dismissal where plaintiff "did not allege that the alleged [constitutional deprivation] was pursuant to a county policy or custom"); *McCroy v. Douglas Cty. Corrections Center*, 394 Fed. App'x 325, 326, 2010 WL 3583534, at *1 (8th Cir. 2010) (affirming dismissal for failure to state a claim where plaintiff "did not allege that his rights were violated as a result of any policy or custom of Douglas County").

Under the law, "[o]fficial policy involves a deliberate choice to follow a course of action…made from among various alternatives by an official who has the final authority to establish governmental policy." *Jane Doe A v. Special Sch. Dist.*, 901 F.2d 642, 645 (8th Cir. 1990) (internal quotation omitted). "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decision of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Bd. of Cty. Comm'rs of Bryan Cty., Oklahoma v. Brown*, 520 U.S. 397, 403–04 (1997). In other words, "the action that is

3

alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Social Services*, 436 U.S.658, 690 (1978). "Similarly, an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Bd. of Cty. Comm'rs*, 520 U.S. at 404. Thus, the plaintiff in a Section 1983 claim must prove the municipality's policy or custom was the "moving force" behind the constitutional violation by showing "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Marsh v. Phelps Cty.*, 902 F.3d 745, 752 (8th Cir. 2018).

      To survive a motion to dismiss, the Complaint must allege facts which, if true, would establish that the School District Defendants had a policy or custom that violated Plaintiffs' constitutional rights. The Complaint, however, makes clear Plaintiffs are not challenging a policy or custom of the School District Defendants, but rather are challenging SF 496 "[o]n its face, in its intent and purpose, and as applied." Comp. ¶ 2; *see also, e.g.*, Compl. ¶ 42 ("SF 496 has altered the landscape for Iowa schools and students through its unconstitutional and discriminatory don't say gay or trans, all-ages ban, book ban, and forced outing provisions."); Compl. ¶ 174 ("On its face, in its intent, purpose, and effect, SF 496 attempts to prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion in Iowa schools."). Even where the Complaint uses the phrase "as applied" to describe some of Plaintiffs' injuries, the Complaint does not allege that the School District Defendants made a separate policy choice other than what SF 496 requires. *See, e.g.,* Compl. ¶ 2 ("On its face, in its intent and purpose, and as applied, SF 496 forces educators to silence their LGBTQ+ students and deny them access to books, information, and ideas about sexual orientation and gender identity."); Compl. ¶ 54 ("SF 496 requires school districts to ban books and materials…"). In fact, the Complaint alleges that the actions taken by

the School District Defendants have been taken in order to comply with the mandates of Senate File 496. *See* Compl. ¶¶ 43-66 (alleging what SF 496 "prohibits," "mandates," and "forbids" vis-à-vis school districts, and that school districts "must comply" with the law). As alleged in the Complaint, the "moving force" behind Plaintiffs' injuries is Senate File 496, and not a policy or custom of the School District Defendants.

Because the Complaint fails to allege a policy or custom of the School District Defendants that was the moving force behind Plaintiffs' alleged injuries, the Complaint fails to state a claim under Section 1983 against the School District Defendants and should be dismissed. *See Hopper v. City of Waterloo*, No. 22-CV-2031 CJW-KEM, 2023 WL 370608, at *5 (N.D. Iowa Jan. 6, 2023) (granting defendant's motion to dismiss on the basis that "plaintiff's complaint fails to state a claim because plaintiff has not alleged any facts which, if taken as true, would establish a municipal policy or custom caused the alleged violation of his constitutional rights.").

### B. The School District Defendants Are Not Liable to Plaintiffs for Following State Law.

To the extent the Court finds the Complaint alleges adequate facts that a policy of the School District Defendants was the moving force behind their injuries, dismissal is still appropriate because the School District Defendants are not liable for implementation or compliance with mandatory state law. The Complaint makes various allegations about the School District Defendants' "implementation" of Senate File 496, but the Complaint is devoid of any allegation that the School District Defendants are making their own policy choice and choosing an unconstitutional implementation of the law over a possible constitutional implementation. In other words, the Complaint attacks the requirements and mandates of Senate File 496, which school districts are compelled by law to implement. The Complaint recognizes this, as the only references

in the Complaint to any "policy" of the School District Defendants are regarding "any changes to school policy already made to comply with SF 496." *See* Compl. ¶¶ 204, 248, 267.

As raised in the School District Defendants' Response to Plaintiffs' Motion for Preliminary Injunction, Iowa school districts do not have standing to question whether to follow state law. [Docket No. 48]. School districts are "creatures of the Legislature; they exist by reason of statutes enacted within the power of the Legislature" and are without "sound basis" to "question the laws of its being." *Bd. of Sup'rs of Linn Cty. V. Dept. of Rev.*, 263 N.W.2d 227, 232 (Iowa 1978). Iowa law is clear that municipal officials "are not clothed with judicial authority" and it "would be a dangerous practice" to permit municipal officials to "refuse to perform their duty on the ground that the commanding law is unconstitutional." *Id.* at 233. The flip side of that coin is that a school district ought not be held liable under Section 1983 when it is merely "implementing a state law directive; … not making its own policy choice …." *N.N. ex rel. S.S. v. Madison Metro. Sch. Dist.*, 670 F.Supp.2d 927, 929 (W.D. Wis. 2009) (granting summary judgment to a school district where the school district was implementing state law requirements).

Although the Eighth Circuit Court of Appeals has not yet ruled directly on the issue, "[g]enerally, albeit with some distinctions, courts 'agree that municipalities and local governments cannot be liable under § 1983 for enforcing a state law when it is required to do so.'" *Smith v. S. Dakota*, No. CIV. 11-4001-KES, 2012 WL 1038629, at *4 (D.S.D. Mar. 27, 2012) (quoting *Slaven v. Engstrom*, Civ. No. 11–1632, 2012 WL 264212, at *6 (D. Minn. Jan. 30, 2012)). *Madison Metropolitan School District* is instructive. In that case, the district court analyzed a plaintiff's challenge to the defendant school district's implementation of Wisconsin state law. The law at issue required that school districts "reject any application for transfer into or out of the school district … if the transfer would increase racial imbalance in the school district." 670 F.Supp.2d at 930 (quoting Wis. Stat. § 118.51(7)). The law also required school districts "to adopt a resolution

6

'specifying … the limitation on transfers into or out of the school board under [the statute].'" *Id.* (quoting Wis. Stat. § 118.51(7)). To comply with the statute's mandates, the defendant school district created a definition for what constituted a "racial imbalance" within the school district. *Id.* The school district also created a definition for who was considered "minority students" and "nonminority students." *Id.* The school district then applied its definitions to grant or deny various transfer requests from students. *Id.* The plaintiff filed an application for transfer to a different school district, which the school district denied because permitting the transfer would impact racial imbalance within the district under the district's criteria, contrary to Wisconsin state law. *Id.* at 931.

The *Madison* district court tackled the question of "whether a municipality should be held accountable for implementing an unconstitutional state law or policy" and thoroughly summarized case law authority on this topic. *See id.* at 933-34. In summarizing the weight of authority, the district court recognized that "[w]hether it is framed as an issue of 'causation,' 'policy' or 'choice,' the question … is whether the municipality enforcing a state law has enough discretion in implementation to make the municipality 'responsible' for any constitutional violation that occurred." *Id.* at 936-37 (citing cases). In granting summary judgment to the school district, the *Madison* Court recognized that the school district "was not making its own policy choice about the use of race in making transfer decisions," but was instead "doing nothing more than implementing a state law directive," and therefore "plaintiff's constitutional injury was not caused by a policy of the school district." *Id.* at 929, 943.

Here, the Complaint does not allege the School District Defendants have made their own policy choices or done anything more than "implement a state law directive." *Id.* at 929. Senate File 496 does not grant school districts discretion whether to comply, but rather states that school districts "shall" or "shall not" take the various actions challenged by Plaintiffs in this lawsuit:

7

- "A school district <u>shall not</u> provide any program, curriculum, test, survey, questionnaire, promotion, or instruction relating to gender identity or sexual orientation to students in kindergarten through grade six." SF 496, Div. II § 14(3) (emphasis added); *see also* Compl. ¶¶ 43-48 (setting forth "prohibitions" contained in SF 496 and alleging SF 496 "forbids any mention of sexual orientation or gender identity from kindergarten through the sixth grade, in or outside of the classroom.").

- "The rules of the state board <u>shall require</u> that an age-appropriate, multicultural, and gender-fair approach is used by schools and schools districts. The educational program <u>shall</u> be taught from an age-appropriate, multicultural, and gender-fair approach." SF 496, Div. I § 1 (emphasis added); *id.* § 4 (defining "age-appropriate"); *see also* Compl. ¶¶ 49-53 ("All school districts must comply with this 'age-appropriate' 'approach' to education.").

- "Each school district <u>shall</u> establish a kindergarten through grade twelve library program that … contains only age-appropriate materials." SF 496, Div. I § 2(9)(a)(1); *see also* Compl. ¶¶ 54-61 ("SF 496 <u>requires</u> school districts to ban books and materials containing descriptions or depictions of 'sex acts,'" and "SF 496 <u>specifically prohibits</u> school library programs from having materials that depict or describe a 'sex act.'" (emphasis added)).

- "If a student enrolled in a school district requests an accommodation that is intended to affirm the student's gender identity from a licensed practitioner employed by the school district … the licensed practitioner <u>shall</u> report the student's request to an administrator … and the administrator <u>shall</u> report the student's request to the student's parent or guardian." SF 496, Div. II § 14(3)

8

(emphasis added); *see also* Compl. ¶¶ 62-65 (stating that this provision "<u>mandates</u> that school districts, including Defendant School Districts, their administrators, and their employees, make this notification to parents and guardians regardless of the student's wishes or plans for sharing this information…" (emphasis added)).

Senate File 496 sets forth penalties school districts and school district employees face for failure to comply with the statute's mandates. *See, e.g.*, SF 496, Div. II § 14(4) (setting forth the penalties for a school district or school district employee's violation of the section as ranging from a written warning to disciplinary action by the Iowa Board of Educational Examiners); *see also* Compl. ¶¶ 61, 66.

Although the Eighth Circuit Court of Appeals has not directly ruled on the "thorny question" of whether municipalities may ever be held liable for enforcing a state statute, the Eighth Circuit has dismissed claims against municipalities where the complaint lacked "allegations of an unconstitutional … policy separate and distinct from [state] law." *Slaven v. Engstrom*, 710 F.3d 772, 780 (8th Cir. 2013) (recognizing that the plaintiffs' complaint did not "challenge a particular policy that [the county] promulgated" where the complaint "essentially allege[d] that *Minnesota law*, and the state court judge's application of that law—not an independent Hennepin County policy" was the moving force behind any constitutional violation). Persuasive authority from the Seventh Circuit explains the sound basis for rejecting municipal liability based only on a municipality's enforcement of state law as follows:

> When the municipality is acting under compulsion of state or federal law, it is the policy contained in that state or federal law, rather than anything devised or adopted by the municipality, that is responsible for the injury. Apart from this rather formalistic point, our position has the virtue of minimizing the occasions on which federal constitutional law, enforced through section 1983, puts local government at war with state government.

*Bethesda Lutheran Homes & Services, Inc. v. Leean*, 154 F.3d 716, 718 (7th Cir. 1998); *see also Surplus Store and Exch., Inc. v. City of Delphi*, 928 F.2d 788, 791-92 (7th Cir. 1991) ("It is difficult to imagine a municipal policy more innocuous and constitutionally permissible, and whose causal connection to the alleged violation is more attenuated, than the 'policy' of enforcing state law …, such a 'policy' simply cannot be sufficient to ground liability against a municipality."). Furthermore, district courts within the Eighth Circuit have ruled that a municipality may not be held liable under Section 1983 for enforcing state law. *See Slaven*, Civ. No. 11–1632, 2012 WL 264212, at *6 (citing cases); *Dakota Rural Action v. Noem*, Civ. 19-5026, 2019 WL 4546908, at *4-5 (D.S.D., Sept. 18, 2019) (dismissing the county official named in his official capacity because "[a] decision against the Governor and Attorney General will redress Plaintiffs' alleged injuries," and "Plaintiffs' injuries, as currently alleged, are not fairly traceable to" the county official where "Plaintiffs' allegations show only that a policy choice was made by State officials.").

To hold the School District Defendants responsible for Plaintiffs' harms, Plaintiffs must establish a "direct causal link" between school district policy and the alleged violations and that the School District Defendants made a "deliberate choice … to follow a course of action … made from among various alternatives." *Noem*, Civ. 19-5026, 2019 WL 4546908, at *5 (citations omitted). Plaintiffs' injuries alleged in the Complaint are not fairly traceable to the School District Defendants, but to the implementation of compulsory state law in all Iowa school districts. In fact, the Complaint makes various allegations generally regarding "school districts across the state," as well as other specific, non-defendant school districts, including Mason City CSD, Ankeny CSD, Ames CSD, and College CSD. *See* Compl. ¶¶ 4, 108, 115, 127, 148, 149, 300. The Complaint does not allege sufficient factual matter which, taken as true, would establish a policy or custom of the School District Defendants separate from state law that caused the alleged violations of Plaintiffs'

rights. Instead, Plaintiffs' injuries as alleged in the Complaint flow from policy set by State officials in SF 496.

Because the Complaint alleges the School District Defendants' implementation of the requirements of SF 496 was mandatory and compulsory pursuant to state law, Plaintiffs have failed to state a claim under Section 1983 against the School District Defendants. Dismissal of Plaintiffs' claims against the School District Defendants is appropriate.

### C. Alternatively, the Claims Against the Individual School District Officials Should Be Dismissed as Duplicative of the Claims Against the School Districts.

In the alternative, if the Court does not dismiss the claims against the School District Defendants in whole, Plaintiff's claims against the School District officials in their official capacities should be dismissed because the claims are duplicative of the claims against the School District entities. In addition to naming five School Districts as defendants, the Complaint names dozens of School District board members and administrators in their official capacities.[1]

"Suits against officers in their official capacities are merely suits against the officers' employer." *Luong v. House*, 4:21-CV-00214, 2023 WL 2890196, at *6 (S.D. Iowa Apr. 11, 2023). "It is proper for a court to dismiss, as duplicative or redundant, claims against an official sued in his official capacity that are also asserted against the official's governmental employer." *Bonenberger v. City of St. Louis*, 4:16CV00788 PLC, 2016 WL 5341113, at *2 (E.D. Mo. Sept. 23, 2016) (citing cases); *see also Artis v. Francis Howell N. Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1182 (8th Cir. 1998) (finding the district court correctly dismissed an official-capacity

---

[1] The Complaint names Julie Mitchell and Steve Richman as Urbandale CSD Board Members in their official capacities. Compl. ¶ 34. However, Mitchell and Richman are not School Board Members. Prior to waiving service and entering appearances, the undersigned counsel requested and Plaintiffs' counsel agreed to voluntarily dismiss Mitchell and Richman. As such, the undersigned counsel have not appeared on behalf of Mitchell and Richman. However, the argument in Section C applies with equal force to these individuals, to the extent they are not voluntarily dismissed prior to the Court's ruling on this Motion.

11

federal claim against a school official "as redundant to the claim against the [s]chool [d]istrict"); *Hotchkiss v. Cedar Rapids Comm. Sch. Dist.*, No. 23-CV-33-CJW-MAR, 2023 WL 6163487, at *10 (N.D. Iowa Sept. 21, 2023) (dismissing "plaintiff's official capacity claims against the individual defendants [as] redundant and duplicative of the claims against the District.").

Here, the real parties in interest are the governmental entities: the Iowa City Community School District, Sioux City Community School District, Urbandale Community School District, Waterloo Community School District, and West Des Moines Community Schools. *See* Iowa Code § 274.1 (stating that a school district in Iowa "shall continue a body politic as a school corporation, unless changed as provided by law, and as such may sue and be sued, hold property, and exercise all the powers granted by law, and shall have exclusive jurisdiction in all school matters over the territory therein contained"); *see also Bd. of Directors of the Ind. Sch. Dist. of Waterloo v. Green*, 147 N.W.2d 854, 857 (Iowa 1967) ("The board of directors of each school district is its governing body."). Therefore, Plaintiffs' claims against the School District officials in their official capacities are just claims against the School Districts, which are parties to this action. *See Doe ex rel. Doe v. The Sch. Dist. of the City of Norfolk*, 340 F.3d 605, 609 n.3 (8th Cir. 2003) (noting with approval that the district court had dismissed a claim against a school administrator in his official capacity); *see also Doe v. Claiborne Cty., Tennessee*, 103 F.3d 495, 509 (8th Cir. 1996) (affirming dismissal of claims against school board members and school administrators in their official capacity "because a suit against the official of the state is treated as a suit against the municipality"). Accordingly, Plaintiffs' official capacity claims against the School District officials should be dismissed.

### III. CONCLUSION

The Complaint challenges the constitutionality of an Iowa state law with which the School District Defendants are required to comply. The Complaint does not allege sufficient factual matter

that a policy or custom of the School District Defendants is the moving force behind Plaintiffs' alleged injuries. Accordingly, Plaintiffs' claims should be dismissed against the School District Defendants. Furthermore, Plaintiffs' claims against the School District officials are duplicative of their claims against the School Districts, and those named officials should be dismissed.

WHEREFORE, the School District Defendants request the Court grant this Motion to Dismiss, dismiss Plaintiffs' claims against the School District Defendants and the named School District officials, and grant such other relief as deemed appropriate.

*/s/ Lindsay Vaught*
_____
Lindsay A. Vaught (AT0010517)
Miriam D. Van Heukelem (AT0010074)
Emily A. Kolbe (AT0012313)
Logan S. Brundage (AT0014942)
AHLERS & COONEY, P.C.
100 Court Avenue, Suite 600
Des Moines, Iowa 50309
(515) 246-0333
(515) 246-0362
(515) 243–2149 (fax)
lvaught@ahlerslaw.com
mvanheukelem@ahlerslaw.com
ekolbe@ahlerslaw.com
lbrundage@ahlerslaw.com
**ATTORNEYS FOR SCHOOL DISTRICT DEFENDANTS**

**Electronically filed and served.**

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on: December 20, 2023

By: ☐ U.S. Mail ☐ Fax
☐ Hand delivery ☐ Private Carrier
☒ Electronically (*via CM/ECF*) ☐ E–mail

Signature: *Jayne Bryngelson*