UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| IOWA SAFE SCHOOLS, *et al.*,<br>    Plaintiffs,<br><br>v.<br><br>KIM REYNOLDS, in her official<br>capacity as Governor of the State of<br>Iowa, *et al.*,<br>    Defendants. | Case No. 4:23-cv-474-SHL-SBJ<br><br><br><br>RESISTANCE TO PLAINTIFFS'<br>MOTION FOR PRELIMINARY<br>INJUNCTION |

**TABLE OF CONTENTS**

Introduction ..........................................................................................................6

Background ..........................................................................................................6

   I.  SF496 and its contents. ...........................................................................6

   II.  SF496's effective date and this belated suit. ...........................................8

Legal Standard ....................................................................................................9

Argument ...........................................................................................................10

   I.  Plaintiffs' claims are not likely to succeed............................................10

     A.  Plaintiffs' First Amendment claims fail. ............................................10

     B.  Plaintiffs' equal protection claim fails.................................................20

     C.  Plaintiff's equal access claim fails. .....................................................22

   II.  The other factors do not support a preliminary injunction. .................23

     A.  Plaintiffs face no irreparable harm. ...................................................23

     B.  The equities balance against an injunction, which would not be in the
public interest.........................................................................................24

Conclusion..........................................................................................................26

# TABLE OF AUTHORITIES

## Cases

*ACLU of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*,
  557 F.3d 1177 (11th Cir. 2009)....................................................................18
*Ark. Educ. Television Commn. v. Forbes*,
  523 U.S. 666 (1998)............................................................................14, 17
*Arkansas Times LP v. Waldrip as Tr. of Univ. of Arkansas Bd. of Trs.*,
  37 F.4th 1386 (8th Cir. 2022) ...................................................................24
*Bailiff v. Adams Cnty. Conf. Bd.*,
  54 F. Supp. 2d 923 (S.D. Iowa 1999) ........................................................21
*Bannon v. Sch. Dist. of Palm Beach Cnty*,
  387 F.3d 1208 (11th Cir. 2004)..................................................................15
*Bd. Of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*,
  457 U.S. 853 (1982)............................................................................17, 18
*Board of Regents of Univ. of Wis. System v. Southworth*,
  529 U.S. 217 (2000)..................................................................................14
*Boy Scouts of Am. v. Dale*,
  530 U.S. 640 (2000)..................................................................................19
*Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*,
  459 U.S. 87 (1982)....................................................................................19
*CAMP Legal Def. Fund, Inc. v. City of Atlanta*,
  451 F.3d 1257 (11th Cir. 2006)..................................................................10
*Chiras v. Miller*,
  432 F.3d 606 (5th Cir. 2005)......................................................................17
*Clapper*,
  568 U.S. .....................................................................................................12
*Craig v. Boren*,
  429 U.S. 190 (1976)..................................................................................20
*Dean v. Warren*,
  12 F.4th 1248 (11th Cir. 2021) ..................................................................16
*Dept. of Educ. v. Brown*,
  143 S. Ct. 2343 (2023)...............................................................................10
*Doe ex rel. Doe v. Governor of N.J.*,
  783 F.3d 150 (3d Cir. 2015) ......................................................................16
*Does v. Gillespie*,
  867 F.3d 1034 (8th Cir. 2017)....................................................................10
*Downs v. Los Angeles Unified Sch. Dist.*,
  228 F.3d 1003 (9th Cir. 2000)..............................................................15, 19
*Furlow v. Belmar*,
  52 F.4th 393 (8th Cir. 2022) ......................................................................25

*Gundy v. City of Jacksonville Fla.*,
  50 F.4th 60 (11th Cir. 2022) ...................................................17

*Hazelwood Sch. Dist. v. Kuhlmeier*,
  484 U.S. 260 (1988).............................................15, 16, 18, 21

*Healy v. James*,
  408 U.S. 169 (1972) ...............................................................19

*Hershey v. Jasinski*,
  86 F. 1224 (8th Cir. 2023) ......................................................10

*Iowa Right to Life Comm., Inc. v. Tooker*,
  795 F. Supp. 2d 852 (S.D. Iowa) ...........................................11

*Johnson v. City of Minneapolis*,
  152 F.3d 859 (8th Cir. 1998)...................................................21

*Keeton v. Anderson Wiley*,
  644 F.3d 865 (11th Cir. 2011)..................................................17

*Leake v. Drinkard*,
  14 F.4th 1242 (11th Cir. 2021) ................................................14

*Marshall v. Bd. Of Educ. Of Tipp City Exempted Vill. Sch. Dist.*,
  624 F.3d 332 (6th Cir. 2010)....................................................16

*Mayer v. Monroe Cnty. Cmty. Sch. Corp.*,
  474 F.3d 477 (7th Cir. 2007)....................................................16

*Mech v. Sch. Bd. of Palm Beach Cnty., Fla.*,
  806 F.3d 1070 (11th Cir. 2015).................................................19

*Mediacom Comms. Corp. v. Sinclair Broad. Group, Inc.*,
  460 F. Supp. 2d 1012 (S.D. Iowa 2006) ....................................9

*Missouri v. Biden*,
  52 F.4th 362 (8th Cir. 2022) ....................................................11

*Moore v. Bryant*,
  853 F.3d 245 (5th Cir. 2017)....................................................21

*Murphy v. Arkansas*,
  852 F.2d 1039 (8th Cir. 1988)....................................................6

*Natl. Endowment for Arts v. Finley*,
  524 U.S. 569 (1998).................................................................14

*New Motor Vehicle Bd. v. Orrin W. Fox Co.*,
  434 U.S. 1345 (1977)...............................................................24

*Ng v. Bd. of Regents of Univ. of Minn.*,
  64 F.4th 992 (8th Cir. 2023) ....................................................24

*Ouachita Watch League v. United States Forest Serv.*,
  858 F.3d 539 (8th Cir. 2017)....................................................13

*Persons for Free Speech at SAC v. U.S. Air Force*,
  675 F.2d 1010 (8th Cir. 1982)..................................................14

*PETA, Inc. v. Gittens*,
  414 F.3d 23 (D.C. Cir. 2005)..............................................18, 19

*Phelps-Roper v. City of Manchester*,
  697 F.3d 678 (8th Cir. 2012)....................................................25

3

*Planned Parenthood Minn., N.D., S.D. v. Rounds*,
   530 F.3d 724 (8th Cir. 2008) (en banc ..........................9, 10, 23, 24
*Pleasant Grove City, Utah v. Summum*,
   555 U.S. 460 (2009) ..............................................13, 14, 15, 16
*Pope v. E. Brunswick Bd. of Educ.*,
   12 F.3d 1244 (3d Cir. 1993) .............................................19
*Religious Sisters of Mercy v. Becerra*,
   55 F.4th 583 (8th Cir. 2022) ............................................13
*Republican Party of Minn. v. Klobuchar*,
   381 F.3d 785 (8th Cir. 2004) ........................................11, 12
*Rosenberger v. Rector and Visitors of Univ. of Va.*,
   515 U.S. 819 (1995) ...............................................14, 15, 19
*Sanborn Mfg. Co., v. Campbell Hausfeld/Scott Fetzer Co.*,
   997 F.2d 484 (8th Cir. 1993) ..............................................9
*Sch. of the Ozarks, Inc. v. Biden*,
   41 F.4th 992 (8th Cir. 2022) .........................................12, 22
*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ...............................................10, 11, 13
*Straights & Gays for Equal. v. Osseo Area Sch.-Dist. No. 279*,
   540 F.3d 911 (8th Cir. 2008) ............................................22
*Taylor v. Roswell Indep. Sch. Dist.*,
   713 F.3d 25 (10th Cir. 2013) ............................................15
*Tumey v. Mycroft AI, Inc.*,
   27 F.4th 657 (8th Cir. 2022) ............................................23
*United State*,
   s v. Am. Libr. Assn., Inc., 539 U.S. .................................18, 19
*United States v. Virginia*,
   518 U.S. 515 (1996) .....................................................20
*Walker v. Hartford Life and Accidents Ins.*,
   831 F.3d 968 (8th Cir. 2016) ............................................20
*Walker v. Texas Div., Sons of Confederate Veterans, Inc.*,
   576 U.S. 200 (2015) .....................................................18
*Ward v. Polite*,
   667 F.3d 727 (8th Cir. 2012) ...........................................15
*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ........................................................9
*Wreal, LLC v. Amazon.com, Inc.*,
   840 F.3d 1244 (11th Cir. 2016) .........................................24
*Zanders v. Swanson*,
   573 F.3d 591 (8th Cir. 2009) ...........................................11

## Statutes

20 U.S.C. § 4071 .......................................................22, 23
Iowa Code § 256.1(19) ....................................................7

Iowa Code § 256.11 ................................................ 6, 7, 8, 9, 12, 21, 23

Iowa Code § 256F.4(2) ........................................................................ 21

Iowa Code § 279.50 ......................................................................... 7, 8

Iowa Code § 279.78 ............................................................ 7, 9, 12, 20, 21

Iowa Code § 279.80 .............................................................................. 7

Iowa Code § 279.87(3) .......................................................................... 7

Iowa Code § 37(1) ................................................................................ 8

Iowa Code § 601.1(2) ........................................................................... 6

## Introduction

State and federal law set educational standards in Iowa schools. Senate File 496 fits into those standards. And SF496 is constitutionally valid. The law does not regulate private speech, discriminate because of any suspect classification, or violate federal law.

Plaintiffs here—nine current Iowa students and an organization—challenge SF496. Though they ask the Court to enjoin enforcement of the entire law, Plaintiffs attack only three parts: the State's decision about what books remain on school library shelves ("Library Program"); imposing on schools a duty to inform parents if a student seeks significant social or medical attention ("Parental Notice Section"); and a curriculum standard that reserves school instruction on "gender identity" and "sexual orientation" until after sixth grade ("Instruction Section"). Plaintiffs also bring an equal protection and statutory challenge. But they lack standing and their claims fail on the merits.

## Background

### I. SF496 and its contents.

During a national conversation about schools and parental rights, the Legislature passed SF496, which affirmed the longstanding American and Iowa traditions of strong parental rights alongside the State's unique role in forming its citizenry. *See Murphy v. Arkansas*, 852 F.2d 1039, 1041 (8th Cir. 1988). SF496 confirmed that "a parent [] bears the ultimate responsibility, and has the fundamental, constitutionally protected right, to make decisions affecting the parent's [] minor child." SF496, § 24 (Iowa Code § 601.1(2)).

The law established standards for school districts to use to determine whether certain books are appropriate for a school curriculum. *See* SF496 §§ 2, 4 (Iowa Code § 256.11). The three sections that Plaintiffs target ensure that

parents retain control over when and how to discuss sex and sexuality with their children:

- The **Instruction Section** prohibits school districts from using "any program, curriculum, test, survey, questionnaire, promotion, or instruction relating to gender identity or sexual orientation to students in kindergarten through grade six." *Id.* § 16 (Iowa Code § 279.80).

- The **Library Program** requires schools to adopt a library program that "contains only age-appropriate materials and supports the student achievement goals of the total school curriculum." *Id.* § 3 (Iowa Code § 256.11(9)(a)(1)).

- The **Parental Notice** section forbids school districts from "knowingly giv[ing] false or misleading information" to parents about their child's "gender identity or intention to transition to a gender that is different than" their sex. *Id.* § 14 (Iowa Code § 279.78(2)). Licensed school personnel must also report to a school administrator a student's request for "an accommodation that is intended to affirm the student's gender identity" *Id.* (Iowa Code § 279.87(3)). Covered accommodations include requests to "address the student using a name or pronoun that is different than the name or pronoun assigned to the student in the school district's registration forms or records." *Id.*

SF496 requires school curricula and educational programs to provide "age appropriate and research-based information." SF496, §§ 1–3 (Iowa Code § 256.11). "'Age-appropriate' means topics, messages, and teaching methods suitable to particular ages or age groups of children and adolescents, based on developing cognitive, emotional, and behavioral capacity typical for the age or age group." *Id.* § 4 (Iowa Code § 256.1(19)); *see also id.* § 9 (Iowa Code § 279.50). But the term does not include "descriptions or visual depictions of a sex act," *id.*, which is in turn defined in detail: it includes "penetration of the penis into the vagina or anus;" "[c]ontact between the mouth and genitalia or mouth and anus or by contact between the genitalia of one person and the genitalia or anus of another person;" "[c]ontact between the finger, hand, or other body part

of one person and the genitalia or anus of another person, except in the course of examination or treatment by" specified licensed professionals; "[e]jaculation onto the person of another;" the "use of artificial sexual organs or substitutes therefore in contact with the genitalia or anus;" and "[t]he touching of a person's own genitals or anus with a finger, hand, or artificial sexual organ or other similar device at the direction of another person." *Id.* (Iowa Code § 256.11(19)(a)). The definition does not include health-related materials like those relating to Iowa's "human growth and development curriculum." *Id.*

SF496 sets curricular standards and imposes duties upon school districts and their employees. School administrators and school board members do not struggle to understand these standards and duties. *See* Exhibits D, E, F, J, K. No part of SF496 governs private speech or imposes the possibility of discipline on anyone but school districts and their personnel. And SF496 addresses a very real problem—books with graphic descriptions and visual depictions of sex acts are circulating in Iowa schools. *See* Exhibits A, B, C, D, G, H, I, L.

## II. SF496's effective date and this belated suit.

The Iowa Senate introduced SF496 on March 2, 2023. SF496 passed both chambers in late April. Governor Reynolds signed SF496 into law on May 26. *See* Bill History for SF496, https://perma.cc/WU74-P3A9 (accessed Dec. 11, 2023). Anti-bullying sections not challenged here went into immediate effect, followed by the Parental Notice Section, Library Program, and Instruction Section on July 1. *See* SF496 § 22; Iowa Code § 37(1). When Plaintiffs sued on November 28, the anti-bullying sections of the bill had been in effect for six months and the remainder, nearly five. Their suit raises a facial challenge to the entire law but identifies challenges only to the Instruction Section, Library Program, and Parental Notice Section along with the law's exemption of "sex

acts" from the definition of "age appropriate." *See* Dkt. 1-1. They assert a pressing need for relief based on SF496's taking effect on January 1, 2024, but that is merely the first date on which the Department of Education can bring enforcement proceedings against school districts or employees who violate the Library Program. *See* SF496 § 2 (Iowa Code § 256.11(9)(a)(2)). Indeed, like the rest of SF496, the language allowing enforcement against districts and employees that violate the Parental Notice and Instruction Sections of the law have been in effect since June 1. *Id.* § 14 (Iowa Code § 279.78).

### Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). This "awesome power" cannot be exercised unless a careful analysis shows a plaintiff likely "will be irreparably harmed absent the issuance of the requested relief." *Mediacom Comms. Corp. v. Sinclair Broad. Group, Inc.*, 460 F. Supp. 2d 1012, 1017 (S.D. Iowa 2006).

Plaintiffs can satisfy none of the four factors—probability of success on the merits, threat of irreparable harm to the movant, balance between that harm and the injury the injunction will inflict on others and whether an injunction is in the public interest—courts weigh when deciding whether to grant a preliminary injunction. *See Sanborn Mfg. Co., v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 485–86 (8th Cir. 1993). The Court's work is lessened here, however, as without "a threshold finding that [Plaintiffs are] likely to prevail on the merits," which they are not, the Court does not even proceed to the other three factors. *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732–33 (8th Cir. 2008) (en banc). That ordering creates a "more rigorous standard" that "ensure[s] that preliminary injunctions that thwart a state's

presumptively reasonable democratic processes are pronounced only after an appropriately deferential analysis." *Id.* at 733.

**Argument**

**I. Plaintiffs' claims are not likely to succeed.**

Plaintiffs' claims are both procedurally and substantively infirm. They therefore cannot show likely success on the merits, which at a bare minimum requires a complaint that properly states a claim—a hurdle they do not clear. *See Does v. Gillespie*, 867 F.3d 1034, 1039 (8th Cir. 2017) (no likelihood of success on the merits when the plaintiffs lacked an enforceable federal right).

**A. Plaintiffs' First Amendment claims fail.**

Plaintiffs lack standing to pursue their free-speech claims. But even with standing, Plaintiffs' claims are foreclosed by the government speech doctrine. Plaintiffs also fail to plead an actionable a First Amendment expressive association claim.

**1. Plaintiffs lack standing.**

Before reaching the merits, federal courts must ensure litigants have Article III standing. *Dept. of Educ. v. Brown*, 143 S. Ct. 2343, 2350–51 (2023). Standing requires having "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Plaintiffs must prove standing as to each challenged section— "[s]tanding is not dispensed in gross." *Hershey v. Jasinski*, 86 F. 1224, 1230 (8th Cir. 2023) (quotation omitted). They fail; they do not allege, much less introduce, facts showing they have standing. *Id.* (quoting *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1273 (11th Cir. 2006)).

### a. Plaintiffs have suffered no injury in fact.

First, Plaintiffs plead no injury in fac—no "invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Missouri v. Biden*, 52 F.4th 362, 368 (8th Cir. 2022), *cert. denied*, No. 22-1248 (U.S. Oct. 10, 2023) (quoting *Spokeo*, 578 U.S. at 339) (quotations omitted). Subjective belief does not create standing. *Zanders v. Swanson*, 573 F.3d 591, 594 (8th Cir. 2009). Even when life or liberty is at stake, a plaintiff "must face a credible threat of present or future prosecution under the statute for a claimed chilling effect to confer standing." *Id.* at 593. "[G]eneral allegations of *possible* or *potential* injury do not" create an injury in fact, especially when a defendant cannot enforce a challenged statute. *Id.* at 594.

Rather than allege an injury in fact, Plaintiffs' allegations challenge SF496's symbolism. In their view, the law "is designed to erase LGBTQ+ students from Iowa Schools," "condemns any acknowledgement that LGBTQ+ people exist," "stigmatizes those students who wish to read" materials removed from Iowa curricula, and prohibits "anything that might acknowledge the existence of an LGBTQ+ student or make an LGBTQ+ student feel welcome." Dkt.2-1 at 12, 16, 18, 20, 12. These are catchy sound bites, not concrete, particularized injuries cognizable under the First Amendment. An injunction cannot redress Plaintiffs' disagreement with the Legislature.

Alleged "chill" pervades Plaintiffs First Amendment claims. But standing based on chill requires showing "objectively reasonable" self-censorship. *Iowa Right to Life Comm., Inc. v. Tooker*, 795 F. Supp. 2d 852, 871 (S.D. Iowa) (quoting *Republican Party of Minn. v. Klobuchar*, 381 F.3d 785, 792 (8th Cir. 2004)). They must also show they face "a credible threat" of discipline following

protected speech they would otherwise make. *Republican Party of Minn.*, 381 F.3d at 792.

They can show neither because SF496 does not regulate their conduct. Nothing in that law prohibits students from "taking pride" in who they are, "being honest and open about" their identities, "wearing clothing that could identify" them as homosexual, or sharing their gender identity or sexual orientation with others, including teachers or staff. Dkt. 2-1 at 9. Their allegedly chilled speech "is not proscribed" by SF496. *Republican Party of Minn.*, 381 F.3d at 793. For example, Plaintiff A.C. alleges that she "conceals herself instead of taking pride in who she is" at school, for fear "that being honest and open about her identity will get her, or any teachers or staff who might show support for her, into trouble." Dkt. 2-1 at 16. But SF496 prohibits none of that. And nothing A.C. says will lead to her or any school employee's discipline. Her decision to self-censor is not "objectively reasonable." *See Republican Party of Minn.*, 381 F.3d at 792.

Further, Plaintiffs face no "credible threat of prosecution." *Id.* SF496 governs and is enforced against only school districts or employees, not students. *See* SF496 §§ 2 (Iowa Code § 256.11(9)(a)(1)), 14 (Iowa Code § 279.78(4)). Plaintiffs recognize that and so contend that their injury is their unwillingness to speak with teachers for fear of the teacher facing discipline. But, again, that is not objectively reasonable—the law does not prohibit students from speaking to teachers and, even if it did, the teacher would comply with the law by reporting conversations about sexuality or gender identity to the parents.

Speculative injuries that rely on "highly attenuated chain[s] of possibilities" do not establish standing. *Sch. of the Ozarks, Inc. v. Biden*, 41 F.4th 992, 1000 (8th Cir. 2022), *cert. denied*, 143 S. Ct. 2638 (2023) (quoting *Clapper*, 568 U.S. at 410). Here, Plaintiffs' alleged fear is not based on a threat of prosecution

against them for violating the law, but on the possibility that a future conversation might cause a teacher to choose to violate the law rather than comply with it. Even if it were possible for a student's comments to a teacher to violate the law, the claim in that case would belong to the injured party—the non-complying teacher against whom disciplinary proceedings were brought—not the student.

Finally, none of the minor Plaintiffs has standing to sue over the Parental Notice Section. Each Plaintiff's parents already know about the child's sexuality and announced gender—indeed, are comfortable enough with it that they are acting as next friends in this high-profile litigation over it—so there is no chance of the "forced outing" that Plaintiffs claim to fear.

Plaintiffs' subjective fears are not traceable to the text of SF496 or its proper enforcement. *See Spokeo*, 578 U.S. at 338. They cannot show a causal connection between SF496's requirements and the subjective injuries complained of. *Id.*

And Plaintiffs nowhere show how Iowa Safe Schools has standing. Iowa Safe Schools makes no allegations that it suffered an injury in fact. *See Ouachita Watch League v. United States Forest Serv.*, 858 F.3d 539, 542 (8th Cir. 2017). Without its own injury, Iowa Safe Schools may be attempting to assert associational standing. For Iowa Safe Schools to have associational standing they must "identify members who have suffered the requisite harm." *Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 602 (8th Cir. 2022) (quotation omitted). Iowa Safe Schools fails to meet its burden. *See id.*

### 2. The State's discretion over curriculum and library inventory is constitutionally protected government speech.

Under the government speech doctrine, "[a] government entity has the right to 'speak for itself.'" *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 467

(2009) (quoting *Board of Regents of Univ. of Wis. System v. Southworth*, 529 U.S. 217, 229 (2000)). When it does so, "it is entitled to say what it wishes." *Id.* (citing *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 833 (1995). Indeed "it is the very business of government to favor and disfavor points of view." *Natl. Endowment for Arts v. Finley*, 524 U.S. 569, 598 (1998) (Scalia, J. concurring in judgment). "When the State is the speaker, it may make content-based choices." *Rosenberger*, 515 U.S. at 833. "The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech." *Pleasant Grove*, 555 U.S. at 467.

Public schools in Iowa are creations of the State and many of their expressive decisions, including what books to make available in the library, are government speech. SF496 does not regulate private speech. It sets school curricula and library inventory, which is government speech that does not trigger the Free Speech Clause of the First Amendment. *See Rosenberger*, 515 U.S. at 833 ("When the University determines the content of the education it provides, it is the University speaking, and we have permitted the government to regulate the content of what is or is not expressed."); *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 215 (2015) (government speech does not violate First Amendment); *PETA, Inc. v. Gittens*, 414 F.3d 23, 28 (D.C. Cir. 2005) (government speaks through its exclusion of books in libraries). The Eighth Circuit recognizes that principle, too; if the United States can choose who speaks on its bases, States can choose who speaks at their schools. *Persons for Free Speech at SAC v. U.S. Air Force*, 675 F.2d 1010, 1022 (8th Cir. 1982).

Government speech includes content discretion over speech the government presents to the public. *See, e.g.*, *Leake v. Drinkard*, 14 F.4th 1242, 1253 (11th Cir. 2021) (parade); *Ark. Educ. Television Commn. v. Forbes*, 523 U.S. 666, 674 (1998) (broadcasted debate and university commencement); *Finley*, 524 U.S. at

586 (art gallery). Government speech goes beyond content-based decisions to include viewpoint-based choices, too. For example, a city's decision as to what type of statue to erect was government speech that did not require even viewpoint neutrality. *Pleasant Grove*, 555 U.S. at 470–73.

In public schools, "expression delivered directly through the government or indirectly through private intermediaries" is government speech, and the school "is free to make subject-matter-based choices." *Bannon v. Sch. Dist. of Palm Beach Cnty*, 387 F.3d 1208, 1213 (11th Cir. 2004); *see Rosenberger*, 515 U.S. at 833; *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 36 (10th Cir. 2013) ("Schools 'do not offend the First Amendment by exercising editorial control over the style and content of student speech in school-sponsored expressive activities.'") (quoting *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 271 (1988)); *Downs v. Los Angeles Unified Sch. Dist.*, 228 F.3d 1003, 1013 (9th Cir. 2000) ("[W]hen a public high school is the speaker, its control of its own speech is not subject to the constraints of constitutional safeguards and forum analysis, but instead is measured by practical considerations applicable to any individual's choice of how to convey oneself.").

As governmental bodies, schools "have considerable authority to control their own speech," and "[f]oremost among a school's speech is its selection and implementation of a curriculum," which "public schools have broad discretion in making." *Ward v. Polite*, 667 F.3d 727, 732 (8th Cir. 2012). So "and which they may use to ensure students "are not exposed to material that may be inappropriate for their level of maturity." *Kuhlmeier*, 484 U.S. at 271.

A school may "disassociate itself" from speech that is "vulgar" or "unsuitable for immature audiences." *Id.* Indeed, it "must be able to take into account the emotional maturity" of students, especially regarding "sensitive topics, which might range from the existence of Santa Claus in an elementary school to the

particulars of teenage sexual activity in a high school setting." *Id.* at 272. And a school must have the authority over its speech to maintain a position of "neutrality on matters of political controversy." *Id.*

When student speech amounts to school-sponsored expressive activity, like participation in a curriculum, the school may restrict it if doing so "reasonably relate[s] to legitimate pedagogical concerns." *Id.* at 273 (cleaned up). That standard reflects appreciation for "the education of the Nation's youth" being "primarily the responsibility of parents, teachers, and state and local school officials, and not of federal judges." *Id.* at 273.

SF496's age-appropriateness standard is a curricular choice firmly protected by the government speech doctrine. Those portions of the law do not regulate private speech. The State may eliminate "sex acts" from age-appropriate school curricula and may choose to reserve teaching on "sexual orientation" and "gender identity" until after sixth grade. It may, that is, create government-speech guidelines that reflect student maturity. Courts have long upheld that type of maturity-based decision-making, *see id.* at 272. The Court should do so here. *See also Mayer v. Monroe Cnty. Cmty. Sch. Corp.*, 474 F.3d 477, 479 (7th Cir. 2007) (First Amendment does not entitle teachers to advocate viewpoints that depart from curriculum); *Marshall v. Bd. Of Educ. Of Tipp City Exempted Vill. Sch. Dist.*, 624 F.3d 332, 341 (6th Cir. 2010).

Plaintiffs' retreat to a "right to receive information" cannot help them. A "listener's right to receive information is reciprocal to the speaker's right to speak," *Doe ex rel. Doe v. Governor of N.J.*, 783 F.3d 150, 155 (3d Cir. 2015)—and the State has plenary authority over its own message. *Pleasant Grove*, 555 U.S. 460 at 467. Plaintiffs cannot compel the State to speak. *See Dean v. Warren*, 12 F.4th 1248, 1264 (11th Cir. 2021) (the "Free Speech Clause does not restrict government speech," including a planned protest by a cheerleader in

State university uniform); *see also Keeton v. Anderson Wiley*, 644 F.3d 865, 877 (11th Cir. 2011).

Indeed, Plaintiffs have no constitutional power to control school library inventories; a government's compilation of third-parties' expressive content is government speech. *Forbes*, 523 U.S. at 674. "The First Amendment works as a shield to protect *private* persons from encroachments by the government on their right to speak freely, not as a sword to compel the government to speak for them." *Gundy v. City of Jacksonville Fla.*, 50 F.4th 60, 71 (11th Cir. 2022), *cert. denied*, 143 S. Ct. 790 (2023). And "when the [State] is selecting textbooks for use in the classroom, students have no constitutional right to compel the [State] to select materials of their choosing." *Chiras v. Miller*, 432 F.3d 606, 620 (5th Cir. 2005).

### 3. Precedent protects the State's discretion to control its curriculum.

#### a. SF 496 does not function in a "narrowly partisan or political manner."

Nor can Plaintiffs find solace in *Pico*'s narrow and fractured judgment. *See* Dkt. 2-1 at 10 (citing *Bd. Of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 872 (1982) (plurality op.). *Pico*'s plurality explained that school library materials may not be removed "in a narrowly partisan or political manner." 457 U.S. at 870. But there is nothing partisan about removing depictions and descriptions of sex acts from school libraries. The example *Pico* feared was a "Democratic school board, motivated by party affiliation, order[ing] the removal of all books by or in favor of Republicans." *Id.* at 871.

That is unlike the content choices here, which ensure school libraries contain age-appropriate books. SF496 is neutral—it takes no partisan or viewpoint stance on anything. It does not "prescribe what shall be orthodox in

politics, nationalism, religion, or other matters of opinion." *Pico*, 457 U.S. at 872. And the Legislature's role in setting those standards is "consistent with" the responsibility of the proper decision-makers for children: "the Nation's youth is primarily the responsibility of parents, teachers, and state and local school officials, and not of federal judges." *Kuhlmeier*, 484 U.S. at 273. Even if SF496 triggered the first amendment under *Pico*, the result is the same.

### b. Recent cases that commanded a majority, not an earlier case decided by a plurality, establish the standard.

Not only does *Pico* not govern, it lacks "precedential value as to the application of the First Amendment to these issues" and "establishes no standard." *ACLU of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1200 (11th Cir. 2009) (quotation omitted). That "badly fractured decision" is "a non-decision so far as precedent is concerned." *Id.* at 1199–1200. Post-*Pico* developments show that *Pico*'s plurality should, at minimum, be narrowly construed.

Since *Pico*, courts have recognized that public libraries are not public forums for private speech and that "the government speaks through its selection of what books to put on the shelves and which books to exclude." *Gittens*, 414 F.3d at 28; *see United States v. Am. Libr. Assn., Inc.*, 539 U.S. at 207. The First Amendment does not override a State's discretion to select materials based on content and viewpoint, *see Gittens*, 414 F.3d at 29, and that analysis does not change based on the forum, *Walker*, 576 U.S. at 215 ("When the government speaks, it is not barred by the Free Speech Clause from determining the content of what it says."). *A fortiori*, States may regulate their public-school libraries, particularly those with a young student body, so they "support[] the student achievement goals of the total school curriculum." SF496, § 2.

*Pico*'s narrow view of the right to remove books from libraries predates the Supreme Court's explanation of the government-speech doctrine, which took

on fuller shape after *Rosenberger*, 515 U.S. at 819. Indeed, courts have since concluded that forum analyses do not apply to public libraries due to the discretionary nature of their mission. 539 U.S. at 204, 213 n.7. Courts have since reiterated that government speech includes the freedom "not to speak" and to "'speak through the removal' of speech that the government disapproves." *Mech v. Sch. Bd. of Palm Beach Cnty., Fla.*, 806 F.3d 1070, 1074 (11th Cir. 2015) (quoting *Downs*, 228 F.3d at 1012). In short, "[w]ith respect to the public library, the government speaks through its selection of which books to put on the shelves and which books to exclude." *Gittens*, 414 F.3d at 28–29.

### 4. Plaintiffs' expressive-association claim fails—both on the merits and for lack of standing.

Plaintiffs' right to expressive association or associational freedom are unaffected by SF496. SF496 does not regulate noncurricular groups. SF496 creates no "forced inclusion" that restricts the right to associate. *See Boy Scouts of Am. v. Dale*, 530 U.S. 640, 644 (2000). It does not require disclosure of membership lists for persons wanting anonymity. *Cf. Brown v. Socialist Workers '74 Campaign Comm. (Ohio)*, 459 U.S. 87, 101–102 (1982). Nor does it impose penalties or withhold benefits based on membership in disfavored groups. *Healy v. James*, 408 U.S. 169, 180–184 (1972). It creates no restrictions, and imposes no requirements, on whom Plaintiffs may associate with.

Plaintiffs instead allege that club membership has "dwindled" in one school district and that another district cannot find a faculty sponsor for a proposed club. But SF496 does not forbid students from joining or school-district employees from sponsoring clubs of any sort. *Cf. Pope v. E. Brunswick Bd. of Educ.*, 12 F.3d 1244, 1256 n.17 (3d Cir. 1993) (finding no right to a faculty advisor). Neither inadequate sponsorship nor declining student participation are First Amendment violations. And a student's membership in a club does

not trigger the Parental Notice requirement. Indeed, joining a GSA or any student club is not a request for gender affirming accommodation. *See* SF496, § 14 (Iowa Code § 279.78(3)). But even if that were the case, as described above, these Plaintiffs, whose parents already know their sexual orientation and transgender status, cannot be chilled.

Plaintiffs allege that an Iowa City elementary school discontinued a club because of SF496, Dkt. 2-1 at 18, but they introduce no evidence that this was the case and no argument that SF496, reasonably construed, requires that result.

## B. Plaintiffs' equal protection claim fails.

### 1. Rational-basis scrutiny applies.

SF496 is constitutional "so long as it bears a rational relation to some legitimate end." *Walker v. Hartford Life and Accidents Ins.,* 831 F.3d 968, 976 (8th Cir. 2016). For a heightened level of scrutiny to apply, the law would have to classify people based on sex or impose differential treatment based on sex. *Craig v. Boren*, 429 U.S. 190, 197 (1976); *United States v. Virginia*, 518 U.S. 515, 532–33 (1996). SB496 does neither—certainly, Plaintiffs identify no language in the law that does so.

Rather than identify a classification in SF496's text, Plaintiffs rely on their subjective reaction to the law—on how it makes them feel. Dkt. 2-1 at 17. A plaintiff's feelings do not show "differential treatment." *Virginia*, 518 U.S. at 532–33.

Plaintiffs also confuse their equal-protection and free-speech claims. They allege "the purpose and effect of SF496 is to suppress speech, expression, information, and ideas about" certain people but not others and contend it precludes their access to certain literature. Dkt. 2-1 at 17. But no one else can

access that literature in a school library. The law treats Plaintiffs the same as it treats similarly situated students, and "exposure to a discriminatory message, without a corresponding denial of equal treatment, is insufficient to plead injury in an equal protection case." *Moore v. Bryant*, 853 F.3d 245, 250 (5th Cir. 2017); *see also Johnson v. City of Minneapolis*, 152 F.3d 859, 862 (8th Cir. 1998) (lack of differential treatment precludes equal-protection claim); *Bailiff v. Adams Cnty. Conf. Bd.*, 54 F. Supp. 2d 923, 934 (S.D. Iowa 1999) (same).

### 2. There is a rational basis for the law.

SF496 rationally advances the goal of ensuring "age-appropriate and research based" lessons. SF496, § 2 (Iowa Code § 256.11(2)). It keeps inappropriate material away from children in school before they reach an age at which discussions become appropriate. SF496 also allows parents to decide when and whether they teach their children about "gender identity" and "sexual orientation." SF496, § 6 (Iowa Code § 256F.4(2)). It keeps parents informed about their child's important health, medical, and psychological information. SF496, § 15 (Iowa Code § 279.79(1)).

SF496 neutrally allows classes regarding human sexuality to begin around the common point of puberty. *See* SF496 § 16. It also neutrally proscribes instruction on "sexual orientation," whether gay, straight, or otherwise. *See id.* (defining "sexual orientation" as "actual or perceived heterosexuality, homosexuality, or bisexuality"). So age appropriate sexuality teaching remains the same regardless of the sex, sexual orientation, or gender identity of the students.

SF496's ends are "consistent with" *Kuhlmeier*'s holding that "the education of the Nation's youth is primarily the responsibility of parents, teachers, and state and local school officials, and not of federal judges." 484 U.S. at 273.

### C. Plaintiff's equal access claim fails.

The plain language of SF496 establishes that it does not regulate school clubs. It therefore cannot violate the Equal Access Act, 20 U.S.C. § 4071, which prohibits secondary schools from denying equal access to, or discriminating against, "students who wish to conduct a meeting within" a limited open forum because of "the religious, political, philosophical, or other content of the speech at such meetings." 20 U.S.C. § 4071(a). A secondary school creates a "limited open forum" when it "grants an offering to or opportunity for one or more non-curricular student groups to meet on school premises during noninstructional time." *Id*. § 4071(b). To establish a violation of that act, Plaintiffs must show one of two things: that their schools prohibited their clubs from meeting while allowing other student groups to do so, or that their schools gave space to other student groups and but not their clubs. *Straights & Gays for Equal. v. Osseo Area Sch.-Dist. No. 279*, 540 F.3d 911, 914 (8th Cir. 2008). Either way, Plaintiffs' statutory claims fail.

First, SF496 does not deny equal access to school premises. It says nothing about student groups or access to school facilities. Plaintiffs contend that SF496 obstructs their clubs' ability "to meet on the same terms as other non-curricular clubs." *See* Dkt. 2–1 at 19. But they do not cite a section of the law that has that effect—because there is not one. Fears about a law that are unconnected from its proper enforcement do not confer standing or justify a preliminary injunction. *See Sch. of the Ozarks*, 41 F.4th at 1000.

Second, Plaintiffs' equal-access allegations do not state a claim. The shutdown of an elementary-school club could not state a claim because the Equal Access Act doesn't apply to elementary schools. *See* 20 U.S.C. § 4071. Even if it did, Plaintiffs do not allege the club was treated differently than other clubs—or even that the elementary school has other clubs. Nor can the

allegations state a claim against the State Defendants, who are not a "public secondary school" subject to the Equal Access Act. 20 U.S.C. § 4071(a).

Finally, the equal-access claim fails for the same reasons Plaintiffs' expressive-association claim fails above. *See* Argument § I.C.

## II. The other factors do not support a preliminary injunction.

Plaintiffs' failure to show likelihood of success is fatal. *See Rounds*, 530 F.3d at 732. This Court need not "proceed to weigh the other [preliminary-injunction] factors." *Id.* at 732. But the other factors also weigh against an injunction.

### A. Plaintiffs face no irreparable harm.

Plaintiffs do not face irreparable harm. Indeed, as described above, they face no harm at all—they are not covered by the law and it cannot be enforced against them. More, should Plaintiffs wish to access books that are removed from their school libraries, they have ample ability to do so from other libraries or booksellers—and the costs of doing so are quantifiable and compensable. *Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 667 (8th Cir. 2022).

Further, whatever harm Plaintiffs might suffer is not imminent. The enforcement section that goes into effect on January 1 does not allow instantaneous punishment. *See* SF496, § 2 (Iowa Code § 256.11(9)). The Department of Education must first investigate an alleged violation of the Library Plan. If it finds a violation, it issues a written warning. *Id.* Disciplinary action can come only for a second or subsequent "knowing violation," and only after a hearing conducted by the board of educational examiners. *Id.* And the lack of imminence is reinforced because Plaintiffs can identify no enforcement actions brought against districts or personnel under the enforcement authority that has been operative for half a year. *See* Background § II.

This underscores the dichotomy between Plaintiffs' cry for immediate relief and their delay in seeking a preliminary injunction. SF496 was introduced in the Iowa Senate in March. After a lengthy and highly publicized committee, amendment, and debate process, it passed on April 20, and Governor Reynolds signed it into law on May 26. But Plaintiffs did not sue until nearly five months later. "A delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016); *see also Ng v. Bd. of Regents of Univ. of Minn.*, 64 F.4th 992, 997 (8th Cir. 2023) ("[A]n unreasonable delay in moving for the injunction can undermine a showing of irreparable harm and is a sufficient ground to deny a preliminary injunction.") (internal quotation omitted).

## B. The equities balance against an injunction, which would not be in the public interest.

As to the balance of harms, a preliminary injunction will create uncertainty and cause greater harm to the State, its students, and parents whose rights SF496 protects. An injunction is also not in in the public interest. "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers); *see also Rounds*, 530 F.3d at 732–33 (stressing the "more rigorous standard for" for showing likelihood of success when movants seek to "thwart a state's presumptively reasonable democratic processes"). Statutes are "presumed constitutional and all doubts are resolved in favor of constitutionality." *Arkansas Times LP v. Waldrip as Tr. of Univ. of Arkansas Bd. of Trs.*, 37 F.4th 1386, 1393 (8th Cir. 2022), *cert. denied*, 143 S. Ct. 774 (2023).

SF496 included three sections that were considered of immediate importance, so they went into immediate effect. SF496 § 21. All three sections addressed school bullying and harassment. Plaintiffs here seek a facial injunction against the entire law with no regard for preserving many clearly constitutional provisions, even those that protect children from bullying and harassment and require schools to notify parents when that behavior occurs. *See Phelps-Roper v. City of Manchester*, 697 F.3d 678, 685 (8th Cir. 2012) (en banc) ("Facial challenges are disfavored."). To succeed on a facial challenge, there must be no "circumstance" that exists in which the statute can be constitutionally applied. *Furlow v. Belmar*, 52 F.4th 393, 400 (8th Cir. 2022). Plaintiffs did the Court no favors in declining to specify enforcement of which sections of Iowa Code they believe warrants an injunction. Instead, they ask the Court to enjoin it all.

Further, enjoining enforcement of SF496—particularly if the law is ultimately upheld and the injunction dissolved—would perpetuate the harms the law seeks to avoid. *See* Exhibits A, B, C, D, G, H, I, L. Just as toothpaste cannot be forced back into the tube, children cannot unsee materials they were not mature enough to understand; all that remains is attempting to clean up the mess after. *Id.* Enjoining the operation of SF496 will prevent schools from acting to remove inappropriate material from their shelves, prevent parents from reviewing their local school's curriculum for inappropriate material, and withhold children's vital mental and physical health information from their parents. School administrators and school board members do not struggle to understand and apply SF496. *See* Exhibits D, E, F, J, K. There is little way to calculate how many children will be exposed to materials inappropriate for their age and maturity or how many children will face a delay in obtaining care because teachers thought they knew better than the parents what was best for

the child. Compare the potential harm to Plaintiffs if an injunction is wrongfully granted: They will have to wait for a few months to have access to a book in their school libraries or, should their patience wane, go to a different library, a bookstore, or Amazon.

## Conclusion

State Defendants ask the Court to deny Plaintiffs' request for a preliminary injunction and grant such further relief the court deems equitable and just.

Respectfully submitted,

BRENNA BIRD
Attorney General of Iowa

*/s/ Eric Wessan*
Eric Wessan
Solicitor General
*/s/ Daniel Johnston*
Daniel Johnston
Assistant Attorney General
*/s/ Alexa Den Herder*
Alexa Den Herder
Assistant Solicitor General
Iowa Department of Justice
Hoover State Office Building
Des Moines, Iowa 50319
(515) 823-9117 / (515) 281-5191
(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov
daniel.johnston@ag.iowa.gov
alexa.denherder@ag.iowa.gov

ATTORNEYS FOR STATE DEFENDANTS

*Original filed electronically.*
*Copy electronically served on all parties of record.*

**PROOF OF SERVICE**

The undersigned certifies that the foregoing instrument was served on counsel for all parties of record by delivery in the following manner on December 19, 2023:

☐ U.S. Mail      ☐ FAX
☐ Hand Delivery      ☐ Overnight Courier
☐ Federal Express      ☐ Other
☒ CM/ECF

Signature: */s/ Daniel Johnston*