**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| GLBT YOUTH IN IOWA SCHOOLS TASK FORCE d/b/a/ IOWA SAFE SCHOOLS, et al., | Case No. 4:23-cv-00474-SHL-SBJ |
| *Plaintiffs,* | **PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT SCHOOL DISTRICTS' MOTION TO DISMISS** |
| v. | |
| KIM REYNOLDS, in her official capacity as Governor of the State of Iowa, et al., | |
| *Defendants.* | |

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 2

I. Defendant School Districts Are Indispensable Parties Because They Are Responsible and Have Implemented Policies for Enforcement of SF 496, and Plaintiffs Seek to Enjoin That Enforcement. ...................................................…...……2

II. The School Board Members and Superintendents Are Named in Their Official Capacities and Are Not Duplicative Parties. ...................................................................... 9

CONCLUSION ...................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.H. v. St. Louis Cnty., Missouri*,
  891 F.3d 721 (8th Cir. 2018) .................................................5, 6

*Bd. of Cnty. Comm'rs of Bryan Cnty., Oklahoma v. Brown*,
  520 U.S. 397 (1997)...............................................................6, 7

*Bd. of Dirs. of the Indep. Sch. Dist. of Waterloo v. Green*,
  147 N.W.2d 854 (Iowa 1967) .................................................10

*Bonenberger v. City of St. Louis*,
  No. 1600788, 2016 WL 5341113 (E.D. Mo. Sept. 23, 2016)...........................................10, 11

*Caminero v. Rand*,
  882 F. Supp. 1319 (S.D.N.Y. 1995)........................................7

*Conroy v. City of Philadelphia*,
  421 F. Supp. 2d 879 (E.D. Pa. 2006) .....................................9

*Dakota Rural Action v. Noem*,
  No. 19-5026, 2019 WL 4546908 (D.S.D. Sept. 18, 2019) ...............................................4, 7, 8

*Davis v. City of Camden*,
  657 F. Supp. 396 (D.N.J. 1987) .............................................8

*Garner v. Memphis Police Dept.*,
  8 F.3d 358 (6th Cir. 1993) .....................................................8

*Hill v. Colorado*,
  530 U.S. 703 (2000)................................................................11

*Jane Doe A v. Special Sch. Dist. of St. Louis Cnty.*,
  901 F.2d 642 (8th Cir. 1990) .................................................6

*Luong v. House*,
  No. 21-00214, 2023 WL 2890196 (S.D. Iowa Apr. 11, 2023)..............................................10

*Marsh v. Phelps Cnty.*,
  902 F.3d 745 (8th Cir. 2018) .................................................6

*Nix v. Norman*,
  879 F.2d 429 (8th Cir. 1989) .................................................7

*O'Rourke v. Hayes,*
   378 F.3d 1201 (11th Cir. 2004) ..................................................................9

*Owen v. City of Independence, Missouri,*
   445 U.S. 622 (1980) ....................................................................................7

*N.N. ex rel. S.S. v. Madison Metropolitan School District,*
   670 F. Supp. 2d 927 (W.D. Wis. 2009) ....................................................8, 9

*Slaven v. Engstrom,*
   710 F.3d 772 (8th Cir. 2013) ......................................................................6

*Spirit Lake Tribe v. North Dakota,*
   262 F.3d 732 (8th Cir. 2001), *abrogated on other grounds by Wilkins v. U.S.,*
   598 U.S. 152 (2023) ....................................................................................2

*Sykes v. Hengel,*
   220 F.R.D. 593 (S.D. Iowa 2004) ..............................................................2

*The Arc of Iowa v. Reynolds,*
   638 F. Supp. 3d 1006 (S.D. Iowa 2022), *case remanded for dismissal on other*
   *grounds*, No. 22-2338 (8th Cir., Feb. 27, 2024) .................................5, 9, 12

*United States v. Funmaker,*
   10 F.3d 1327 (7th Cir. 1993) ......................................................................9

*Vives v. City of New York,*
   524 F.3d 346 (2d Cir. 2008) ........................................................................8

*Ex Parte Young,*
   209 U.S. 123 (1908) ....................................................................................7

## Statutes

Equal Access Act ..............................................................................................1

Fed. R. Civ. P. 19(a)(1)(A) ..............................................................................2

Iowa Code § 256.11(9a) ....................................................................................2

Iowa Code § 274.1 ..........................................................................................10

Iowa Code § 279.20(1) ................................................................................9, 11

Iowa Code § 279.77(1) ......................................................................................2

Iowa Code § 279.77(2) ......................................................................................2

Iowa Code § 279.78(2) ..................................................................................2, 11

Iowa Code § 279.78(3) ...................................................................................................2

Iowa Code § 279.80(2) ...................................................................................................2

## Other Authorities

Bondurant-Farrar Community School District, *Permanent Book Removal* (January
    22, 2024 Regular Meeting, Agenda Item 5G),
    https://go.boarddocs.com/ia/bfcsd/board.nsf/public; ..................................................4

Bondurant-Farrar Community School District, *Rescind Permanent Book Removal*
    (Feb. 12, 2024 Regular Meeting, Agenda Item 5F),
    https://go.boarddocs.com/ia/bfcsd/board.nsf/public; ..................................................4

Chris Higgins, *Bondurant-Farrar School Board reverses decision to permanently
    remove books*, Des Moines Register (Feb. 16, 2024) ..................................................4

Chris Higgins, *Bondurant school board votes to permanently remove 17 books
    from its schools. They are:*, Des Moines Register (Jan. 23, 2024) ............................4

Chris Higgins, *Iowa appeals block on Senate File 496's book ban, gender and
    sexuality restrictions*, Des Moines Register (Jan. 12, 2024)
    https://www.desmoinesregister.com/story/news/education/2024/01/12/gov-
    kim-reynolds-appeals-judges-block-on-iowas-book-ban-law/72204242007/ .........................3

Iowa City Community School District, Board Policy 302.4
    http://tinyurl.com/4k334bd4 ...................................................................................11

Sioux City Community Schools, Board Policy 301
    http://tinyurl.com/2pfr28pp.....................................................................................11

Tom Barton and Caleb McCullough, *Iowa Board of Education advances rules on
    school library restrictions*, The Gazette (Nov. 15, 2023).........................................3

Urbandale Community School District Board Policy 311
    http://tinyurl.com/yjkjwuwm ...................................................................................11

Waterloo Community School District Board Policy 222
    http://tinyurl.com/2khhrs84 ...................................................................................11

West Des Moines Community Schools, Board Policy 300
    http://tinyurl.com/7d5h7pr4 ...................................................................................11

## INTRODUCTION

Senate File 496 ("SF 496") delegates significant aspects of the implementation and enforcement of the law to Defendant School Districts.[1] Defendant School Districts have developed policies to implement the law and taken steps to enforce it in violation of Plaintiffs' constitutional rights and the Equal Access Act. ECF No. 1 (Compl.) ¶¶ 191, 234, 240, 259-62, 301. Thus, not only are Defendant School Districts appropriate defendants, they are indispensable parties to Plaintiffs' claims for declaratory and injunctive relief. Plaintiffs, for example, seek an injunction requiring Defendant School Districts to return to shelves books that they have removed (ECF No. 1 ¶ 178) and "revert any changes to school policy already made" relating to SF 496 (ECF No. 1 ¶¶ 204, 248, 267).

The individually named School Board Members and Superintendent Defendants also are proper defendants.[2] School boards are distinct entities from school districts, and Defendant School Board Members are not employees of Defendant School Districts. Defendant School Board Members are elected officials directly responsible for implementing and enforcing the specific policies that are causing harm to Plaintiffs, and they have taken independent action. The Superintendent Defendants likewise are responsible for implementing and enforcing the policies Plaintiffs are challenging and have substantial independent authority to do so.

Plaintiffs have adequately stated a claim against all named Defendants, and this Motion to Dismiss should be denied.

---

[1] Defendant School Districts are the Iowa City Community School District, Sioux City Community School District, Urbandale Community School District, Waterloo Community School District, and West Des Moines Community Schools. *See* ECF No. 1 (Compl.) ¶ 24.

**ARGUMENT**

I.  **Defendant School Districts Are Indispensable Parties Because They Are Responsible and Have Implemented Policies for Enforcement of SF 496, and Plaintiffs Seek to Enjoin That Enforcement.**

Defendant School Districts are indispensable parties because the Court "cannot accord complete relief" in their absence. Fed. R. Civ. P. 19(a)(1)(A). Joinder of "all materially interested parties to a single lawsuit . . . [serves] to protect interested parties and avoid waste of judicial resources." *Sykes v. Hengel*, 220 F.R.D. 593, 596 (S.D. Iowa 2004) (citation omitted). To determine whether a party is indispensable, courts use a practical, fact-based inquiry dependent on the particulars of the case. "Whether a person is 'indispensable' . . . can only be determined in the context of particular litigation." *Spirit Lake Tribe v. North Dakota*, 262 F.3d 732, 746 (8th Cir. 2001), *abrogated on other grounds by Wilkins v. U.S.*, 598 U.S. 152 (2023).

SF 496 explicitly tasks Defendant School Districts with implementing and enforcing its provisions.[2] Indeed, schools receive guidance on implementation of the law not from the State, but directly from their school district-level lawyers. Further, the law's "vague and subjective terms" place additional responsibility upon school districts, which must exercise discretion to interpret SF 496's provisions and carry them out accordingly. *See* ECF No. 1 ¶ 244.

---

[2] *See* SF 496, Div. I, § 2(9a) (Iowa Code § 256.11(9a)) (directing school districts to establish K-12 library programs "consistent" with the law); SF 496, Div. II, § 13(1) (Iowa Code § 279.77(1)) (directing school districts to create and publish "detailed explanations" of "procedures or policies" for parents to anonymously request removal of books); SF 496, Div. II, § 13(2) (Iowa Code § 279.77(2)) (directing board of directors of the school districts to create and adopt a policy for parental review and challenge of instructional materials); SF 496, Div. II, § 14(2)(3) (Iowa Code § 279.78(2), (3)) (forbidding a school district from "knowingly" giving "false or misleading information" to a parent or guardian regarding a student's gender identity, and requiring a school district's licensed practitioners and administrators to "report" a student's request for "an accommodation that is intended to affirm the student's gender identity"), SF 496, Div. II, § 16(2) (Iowa Code §279.80(2) (prohibiting a school district from providing "any program, curriculum, test, survey, questionnaire, promotion, or instruction relating to gender identity or sexual orientation to students in kindergarten through grade six").

Defendant School Districts indisputably have developed policies to implement and enforce the law, including by creating varying lists of books for removal from classrooms and libraries, imposing restrictions on Gender Sexuality Alliances ("GSAs"), and issuing instructions to staff concerning implementation of the forced outing provision. *See* ECF No. 1 ¶ 24 (explaining each school district is "responsible for application and enforcement of SF 496 in the schools under its purview"), ¶ 54 (listing school districts' duties under SF 496).[3] The actions of Defendant School Districts in enforcing SF 496—including by selecting and removing books from classrooms and libraries, and implementing the don't say gay or trans and forced outing provisions—have violated Plaintiffs' constitutional rights and caused them direct harm. Without an injunction against Defendant School Districts, Plaintiffs are unable to obtain full redress. Absent this Court's involvement and order, there is little guarantee Iowa school districts will reverse changes made pursuant to SF 496.

Indeed, despite the Court's preliminary injunction enjoining Defendant School Districts from enforcing or acting in furtherance of the book ban and don't say gay or trans provisions of SF 496, some school districts have failed to return books to shelves.[4] In an example of the chaos

---

[3] The State did not disseminate a list of books for removal; the school districts made those determinations. See Tom Barton and Caleb McCullough, *Iowa Board of Education advances rules on school library restrictions*, The Gazette (Nov. 15, 2023), https://www.thegazette.com/state-government/iowa-board-of-education-advances-rules-on-school-library-restrictions/ ("State education officials will not provide Iowa school districts with a list of library materials now prohibited under new K-12 book restriction rules, despite calls and suggestions for it to do so by school librarians and administrators and a state board member."). The "varying and inconsistent lists" of books to pulled from shelves underscore that authority for interpretation of the law lies with the school districts. See ECF No. 1 ¶¶ 4, 112, 116-17, 259; and Appendices A-E.

[4] *See* Chris Higgins, *Iowa appeals block on Senate File 496's book ban, gender and sexuality restrictions*, Des Moines Register, (Jan. 12, 2024) https://www.desmoinesregister.com/story/news/education/2024/01/12/gov-kim-reynolds-appeals-judges-block-on-iowas-book-ban-law/72204242007/ ("Like the book ban itself, the results of the injunction have been inconsistent in districts across the state. Some districts are putting the books they removed under

SF 496 has created, one Iowa school board, after the injunction was entered, met and determined SF 496 still required it to permanently remove books.[5] However, within weeks the school board reversed itself "after consultation with legal counsel and discussions with other school districts."[6] Local school-district-by-school-district implementation of SF 496 has been inconsistent and unpredictable precisely because of the obligation foisted upon them to make decisions and policy to implement an overly broad and vague law. Absent injunctive relief binding the schools, this uncertainty lingers. SF 496 underlies the unconstitutional actions the Defendant School Districts have taken, but Plaintiffs also seek redress from the direct actions of the Defendant School Districts.

Plaintiffs have demonstrated "a 'direct causal link' between school district policy and the alleged violations" and that "the Defendant School Districts made a 'deliberate choice . . . to follow a course of action . . . from among various alternatives'" sufficient to hold them liable. ECF No. 51-1 at 10 (quoting *Dakota Rural Action v. Noem*, No. 19-5026, 2019 WL 4546908, at *5 (D.S.D. Sept. 18, 2019)). Students who are harmed by book bans, for instance, experience that harm as a result of the implementation and enforcement of school district policies identifying books for removal and withdrawing them from classrooms and libraries. The school districts' "varying and

---

Senate File 496 back on the shelves, including Iowa City . . . . But others told the Register they did not plan to make any changes at this time . . . .").

[5] Bondurant-Farrar Community School District, *Permanent Book Removal* (Jan. 22, 2024 Regular Meeting, Agenda Item 5G), https://go.boarddocs.com/ia/bfcsd/board.nsf/public; *see also* Chris Higgins, *Bondurant school board votes to permanently remove 17 books from its schools. They are:*, Des Moines Register, (Jan. 23, 2024), https://www.desmoinesregister.com/story/news/education/2024/01/23/bondurant-farrar-school-board-votes-permanently-remove-books-schools-senate-file-496-book-ban/72313998007/.

[6] Bondurant-Farrar Community School District, *Rescind Permanent Book Removal* (Feb. 12, 2024 Regular Meeting, Agenda Item 5F), https://go.boarddocs.com/ia/bfcsd/board.nsf/public; *see also* Chris Higgins, *Bondurant-Farrar School Board reverses decision to permanently remove books*, Des Moines Register, (Feb. 16, 2024), https://bit.ly/3P1pBrQ.

inconsistent" lists of books to remove demonstrate it is ultimately up to those districts to establish discretionary policies to implement and enforce the law. *See* ECF No. 1 ¶¶ 4, 113.

The recent decision in *The Arc of Iowa v. Reynolds*, 638 F. Supp. 3d 1006 (S.D. Iowa 2022), *case remanded for dismissal on other grounds*, No. 22-2338 (8th Cir., Feb. 27, 2024), is instructive. There, plaintiff students challenged the legality of an Iowa statute that prohibits school boards and administrators from adopting mask requirements, seeking declaratory and injunctive relief and naming school districts as defendants. *Id.* at 1021-22. The defendant school districts moved to dismiss, arguing that plaintiffs' real dispute was with state officials about the legality of a state law, the districts were not necessary parties, and the districts should not be held liable for implementing laws they are required to enforce without discretion. *Id.* The district court rejected those arguments because—as here—defendants were required to implement and enforce the challenged Iowa statute, and plaintiffs sought both declaratory and injunctive relief related to defendants' implementation and enforcement. *Id.* at 1022.

Defendant School Districts ignore the straightforward and on-point *Arc of Iowa* decision and rely instead on a selection of inapposite cases. Unlike *Arc of Iowa*, none of Defendant School Districts' cited authority involves a school district's enforcement and implementation of an unconstitutional, vague state law and a request for declaratory and prospective injunctive relief barring that enforcement and implementation.

For example, Defendant School Districts rely on *A.H. v. St. Louis Cnty., Missouri*, 891 F.3d 721, 728 (8th Cir. 2018), which did not involve a challenge to an overarching state law's constitutionality or any discussion of prospective injunctive relief.[7] In *A.H.*, the family of an

---

[7] Other cases on which Defendant School Districts rely similarly do not concern a challenge to the constitutionality of a state law. They address district court conclusions on summary judgment that

inmate who committed suicide while at St. Louis County Jail brought a § 1983 claim under the Eighth Amendment against, among others, the county and the jail's director. 891 F.3d at 726-28. Because "a municipality . . . and its supervisor cannot be liable on a respondeat superior theory, but can be held liable if a constitutional violation resulted from a municipal policy or custom," the issue on appeal was whether the jail's suicide prevention policy violated the inmate's constitutional right. *Id.* at 728 (noting policy or custom "liability attaches in two situations, where a municipal policy is itself unconstitutional, and where the municipality's deliberate indifference to the need to train and supervise its employees causes an employee to violate a third party's constitutional rights"). The court agreed with the district court that it did not, as the policy did not demonstrate deliberate indifference to the risk of suicide. *Id.* at 729. This fact-bound conclusion holds no relevance to this case.

Here, the harms Plaintiffs have experienced are the result of official adoption or implementation by Defendant School Districts of the challenged unconstitutional law. When a plaintiff claims "that a particular municipal action *itself* violates federal law, or directs an employee to do so, resolving . . . issues of fault and causation is straightforward." *Id.* at 728 (italics in original) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Oklahoma v. Brown*, 520 U.S. 397, 405-06 (1997)). In such a case, "the conclusion that the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law will also determine that the municipal action was the

---

evidence failed to demonstrate that municipal officials had notice of a pattern or practice of misconduct on the part of municipal employees. *See* ECF No. 51-1 3-6 (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Oklahoma v. Brown*, 520 U.S. 397, 403–04 (1997)); *Marsh v. Phelps Cnty.*, 902 F.3d 745, 752 (8th Cir. 2018); *Slaven v. Engstrom*, 710 F.3d 772, 780 (8th Cir. 2013); *Jane Doe A v. Special Sch. Dist. of St. Louis Cnty.*, 901 F.2d 642, 645 (8th Cir. 1990). These cases have no bearing here where Plaintiffs challenge the constitutionality of a law that Defendant School Districts are responsible for implementing and enforcing. Plaintiffs do not argue that Defendant School Districts are liable for employing a tortfeasor.

moving force behind the injury of which the plaintiff complains." *Bd. of Cnty. Comm'rs*, 520 U.S. at 405-06; *see also e.g.*, *Caminero v. Rand*, 882 F. Supp. 1319, 1324 (S.D.N.Y. 1995) ("the official adoption or implementation of an unconstitutional municipal policy provides a sufficient basis for Section 1983 liability even when that policy is authorized or mandated by state law"). Because the central aim of Section 1983 is to protect those persons wronged by the "misuse of power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law," municipalities are liable for unconstitutional official governmental conduct, whether committed in good faith or not. *Owen v. City of Independence, Missouri*, 445 U.S. 622, 1203-04 (1980) (cleaned up).[8]

The few cases that Defendant School District cite involving challenges to local enforcement of an unconstitutional state law are likewise distinguishable. For example, in *Dakota Rural Action*, plaintiffs challenged a state anti-rioting law as unconstitutional and named among the defendants a county sheriff. 2019 WL 4546908, at *3. The sheriff argued he should be dismissed as a defendant because § 1983 "does not encompass suits against the county simply because the sheriff is required to enforce state law." *Id.* at *1. The District of South Dakota, finding no allegation the sheriff had yet enforced the law, dismissed him. *Id.* at *5 ("[T]his Court need not decide if Pennington County could be liable simply for enforcing state law because there is no allegation

---

[8]Additionally, under *Ex Parte Young*, 209 U.S. 123 (1908), even official-capacity actions against state officials otherwise subject to Eleventh Amendment immunity that seek solely declaratory and injunctive prospective relief are permitted to prevent ongoing violations of federal law by enforcement or threatened enforcement of an unconstitutional state law. Defendant School Districts fail to explain why the rule should be different for municipal liability where Eleventh Amendment immunity is not at issue. *See generally*, *Nix v. Norman*, 879 F.2d 429, 432-33 (8th Cir. 1989) (noting that "state officials sued in their official capacities for injunctive relief are 'persons' under section 1983 because official-capacity actions for prospective relief are not treated as actions against the state").

that the challenged laws have been enforced by the County or that the County is the moving force behind the Constitutional violation."). Even if enforcement of an unconstitutional law standing alone were inadequate for municipal liability (which the court in *Dakota Rural Action* never held), Defendant School Districts have done much more than merely enforce SF496. They have exercised discretion in interpreting the law's vague language and developed and implemented policies to carry it out—and in doing so, have harmed Plaintiffs.

Defendant School Districts' heavy reliance on *N.N. ex rel. S.S. v. Madison Metropolitan School District*, 670 F. Supp. 2d 927 (W.D. Wis. 2009) ("Madison Metro"), also is misplaced. First, *Madison Metro* did not involve, as here, any request for declaratory or injunctive relief, as the school district had already stopped the unconstitutional practice. The court was tasked only with determining whether the school district should provide monetary relief for past harm to the students. Here, Plaintiffs do not seek monetary relief.  They seek to prevent ongoing and future harm stemming from Defendant School Districts' current and prospective enforcement and imple-mentation of the unconstitutional law. Second, *Madison Metro* did not address whether the school district was an indispensable party—it was the sole defendant. Finally, even if *Madison Metro* were somehow applicable to a case that is not a class action, does not involve money damages, and seeks prospective relief, its holding is not binding here and does not reflect Eighth Circuit authority. As Defendant School Districts acknowledge, the Eighth Circuit has not decided if or under what circumstances municipalities could be liable for money damages for implementing an unconstitutional state law.[9] ECF No. 51-1 at 6; *see also Dakota Rural Action*, 2019 WL 4546908,

---

[9] Courts disagree on the issue as the *Madison Metro.* court recognized. Some courts have held municipalities liable for money damages for implementing an unconstitutional state law. *See Madison Metro.* at 934 (*citing, e.g.*, *Vives v. City of New York,* 524 F.3d 346, 353–55 (2d Cir. 2008); *Garner v. Memphis Police Dept.,* 8 F.3d 358, 363–64 (6th Cir. 1993); *Davis v. City of Camden*,

at *4. The Court need not rely upon nonbinding authority to address "thorny questions" of municipal liability. (ECF No. 51-1 at 9). The analysis[10] here is as simple as it was in *Arc of Iowa.* Plaintiffs cannot obtain complete relief without an injunction that enjoins and binds Defendant School Districts. Accordingly, the Court should deny Defendant School Districts' Motion to Dismiss.

## II.   The School Board Members and Superintendents Are Named in Their Official Capacities and Are Not Duplicative Parties.

Defendant School Districts' alternative argument that the School Board Members and Superintendent Defendants,[11] who are named individually in their official capacities as members of the various School Boards and administrators of the various School Districts, be dismissed because

---

657 F. Supp. 396, 402 (D.N.J. 1987); *Conroy v. City of Philadelphia,* 421 F. Supp. 2d 879, 886 (E.D. Pa. 2006)). Boiled down, Defendant School Districts are asserting the "I was just following orders" defense, which is not a favored one under American law, "including cases under § 1983." *Madison Metro.* at 933 (citing *United States v. Funmaker,* 10 F.3d 1327, 1331 (7th Cir. 1993); *O'Rourke v. Hayes,* 378 F.3d 1201, 1210 n. 5 (11th Cir. 2004)).

[10] Plaintiffs seek "to enjoin Defendants from enforcing SF 496 by removing and excluding materials from school libraries, [and] . . . restore any materials already removed from their respective library programs," (ECF No. 1 ¶ 178); "to restore any materials and revert any changes to school policy already made" (ECF No. 1 ¶¶ 204, 248, 267); "to enjoin Defendants from enforcing SF 496 to prohibit students from becoming members of GSAs or attending GSA meetings and events or to prohibit GSAs from advertising or promoting their group, or to otherwise interfere with the lawful conduct of the GSAs," (ECF No. 1 ¶ 219); "[to] order Defendant School Districts to restore any materials and revert any changes to school policy already made to comply with SF 496" (ECF No. 1 ¶¶ 248, 267); and "[to] enjoin Defendants from enforcing SF 496 to prohibit students from becoming members of GSAs or attending GSA meetings and events on the same terms as other non-curricular groups, or to prohibit these GSAs from advertising or promoting their group on the same terms as other non-curricular groups" (ECF No. 1 ¶ 302).

[11] In seeking dismissal, Defendant School Districts do not identify Superintendents specifically among those whom Plaintiffs sued in their official capacities. Defendants instead refer generally to "board members and administrators," ECF No. 51-1 at 11, while referencing in a footnote two parties whom Plaintiffs voluntarily dismissed. *See id.* at 11, n.1; *see also* ECF No. 61 (Notice of Voluntary Dismissal). Accordingly, it is unclear whether Defendants consider Superintendents "administrators" of the School Districts or whether Defendants' reference to "administrators" refers to the voluntarily dismissed parties. Out of an abundance of caution, Plaintiffs assume Defendants' reference to "administrators" encompasses Superintendents, notwithstanding those individuals' role on their respective school boards. *See generally* Iowa Code § 279.20(1) ("The superintendent shall be the executive officer of the board . . . .").

they are duplicative parties also fails. ECF No. 51-1 at 11-12. Defendants are correct that generally, a claim made "against an official sued in his official capacity" is "[a] suit[] against the officers' employer." ECF No. 51-1 at 11 (quoting *Luong v. House*, No. 21-00214, 2023 WL 2890196, at *6 (S.D. Iowa Apr. 11, 2023) and *Bonenberger v. City of St. Louis*, No. 1600788, 2016 WL 5341113, at *2 (E.D. Mo. Sept. 23, 2016)). But they misapprehend the relationship between the parties here. The School Boards and the School Districts are separate entities.

First, School Board Members are not employees of their School Districts. They are elected officials in charge of implementing and setting policy for their districts. Iowa law declares that "[e]ach school district shall continue a body politic as a school corporation, unless changed as provided by law, and as such may sue and be sued, hold property, and exercise all the powers granted by law, and shall have exclusive jurisdiction in all school matters over the territory therein contained." Iowa Code § 274.1. Iowa law also specifies that the board of directors of the school district "shall operate, control, and supervise all public schools located within its district boundaries and may exercise any broad and implied power, not inconsistent with the laws of the general assembly and administrative rules adopted by state agencies pursuant thereto, related to the operation, control, and supervision of those public schools." *Id.* § 274.3; *see also Bd. of Dirs. of the Indep. Sch. Dist. of Waterloo v. Green*, 147 N.W.2d 854, 857 (Iowa 1967) ("The board of directors of each school district is its governing body."). A School District cannot compel Board Members to comply with School District mandates, and it does not have authority to "fire" the Board Members upon disobedience. Thus, if the court enjoined only the School Districts, the School Board Members could still issue contrary directives to the School Districts.

This case therefore is distinguishable from one in which a court is confronted with a clear employer-employee relationship, such as a police officer and the city that employs him. *See*

*Bonenberger*, 2016 WL 5341113, at *2. Because School Boards are distinct entities from the School Districts, the Court should decline to dismiss the School Board Members from this action.

Second, School District Superintendents, outside of their role on the School Boards[12] and in addition to their responsibility to oversee and enforce all School District policies, are specifically delegated the task of implementing and enforcing sections of SF 496. *See, e.g.*, SF 496, Div. II, § 14(2) (Iowa Code §279.78(2)) (requiring "an administrator employed by the school district" to "report the student's request to the student's parent or guardian"). Even where not expressly delegated by SF 496, superintendents in practice bear the responsibility of ensuring their districts' day-to-day compliance with the law and any board policy on the same, and they retain substantial independent authority to do so.[13]

Particularly with a law of such vagueness as SF 496, which "authorizes or even encourages arbitrary and discriminatory enforcement," *Hill v. Colorado*, 530 U.S. 703, 732 (2000), the decisions of a Defendant School District's chief executive and designated administrator have an

---

[12] *See supra* note 11.

[13] *See generally* Iowa Code § 279.20(1) ("The superintendent shall be the executive officer of the board and have such powers and duties as may be prescribed by rules adopted by the board or law."); Iowa City Community School District, Board Policy 302.4 ("The superintendent is responsible for the implementation and execution of board policy and the observance of board policy by employees and students. The superintendent is responsible for overall supervision and discipline of employees and the education program."), http://tinyurl.com/4k334bd4; Sioux City Community Schools, Board Policy 301 (same), http://tinyurl.com/2pfr28pp; Urbandale Community School District Board Policy 311 ("The Board delegates to the Superintendent the authority and responsibility to administer the District and to implement decisions made by the Board. The Superintendent shall have the power to make rules and render decisions not in conflict with the law or with Board policies or actions."), http://tinyurl.com/yjkjwuwm; Waterloo Community School District Board Policy 222 ("When there is no board policy in existence to provide guidance on a matter, the Superintendent is authorized to act appropriately under the circumstances surrounding the situation keeping in mind the educational philosophy and financial condition of the school district."), http://tinyurl.com/2khhrs84; West Des Moines Community Schools, Board Policy 300 ("The Board delegates to the Superintendent the authority to implement board policy and to execute decisions made by the Board concerning the internal operations of the school district, unless specifically stated otherwise."), http://tinyurl.com/7d5h7pr4.

immediate, tangible impact not otherwise felt from overbroad pronouncements of policy. For example, School Board Members may adopt a policy to "comply with SF 496," but the task of implementing and enforcing such a policy—by removing books, prohibiting discussion of sexual orientation and gender identity, and reporting students to their parents or guardians—falls to the superintendents. The discretion and action inherent in these responsibilities—which books to remove, which topics to prohibit and how, which students to report and which requests will trigger a report—means Superintendents are not redundant of the School District or the School Boards, but properly named in their official capacities.

## CONCLUSION

Plaintiffs seek declaratory and injunctive relief from an unconstitutional state law. If that relief is to be effective and complete, it must enjoin and bind all parties with the authority to enforce and implement the law. Implementing SF 496 requires a local exercise of policy and discretion. Defendant School Districts, including School Board Members and Superintendents, have this authority and have exercised it. SF 496 is unconstitutional, but it is Defendant School Districts' implementation of SF 496 "that is ultimately at the heart of Plaintiffs' Complaint." *Arc of Iowa*, 638 F. Supp. 3d at 1022. For these reasons, the Court should deny Defendant School Districts' Motion to Dismiss.

Dated: February 27, 2024

Respectfully submitted,

/s/ Laura J. Edelstein

Thomas D. Story, AT0013130
(Lead Counsel)
Shefali Aurora, AT0012874
Rita Bettis Austen, AT0011558
**American Civil Liberties Union**
  **of Iowa Foundation**
505 Fifth Avenue, Suite 808
Des Moines, IA 50309
(515) 243-3988
thomas.story@aclu-ia.org
shefali.aurora@aclu-ia.org
rita.bettis@aclu-ia.org

Camilla B. Taylor*
Kara Ingelhart*
Nathan Maxwell* **
**Lambda Legal Defense and**
  **Education Fund, Inc.**
65 E. Wacker Pl., Suite 2000
Chicago, IL 6060
(312) 663-4413
ctaylor@lambdalegal.org
kingelhart@lambdalegal.org
nmaxwell@lambdalegal.org

Karen L. Loewy*
Sasha J. Buchert*
**Lambda Legal Defense and**
  **Education Fund, Inc.**
1776 K Street, N.W., 8th Floor
Washington, DC 20006-2304
(202) 804-6245
kloewy@lambdalegal.org
sbuchert@lambdalegal.org

 * *Application for admission pro hac vice
 granted.*
** *Member of the Arizona bar. Practicing
under the supervision of a member of the Illi-
nois bar.*

Laura J. Edelstein*
Katherine E. Mather*
**Jenner & Block LLP**
455 Market Street, Suite 2100
San Francisco, CA 94105
(628) 267-6800
LEdelstein@jenner.com
KMather@jenner.com

Anna K. Lyons*
Effiong Dampha*
**Jenner & Block LLP**
515 S. Flower Street, Suite 3300
Los Angeles, CA 90071-2246
(213) 239-5100
ALyons@jenner.com
EDampha@jenner.com

Joshua J. Armstrong*
**Jenner & Block LLP**
1099 New York Avenue, NW, Suite 900
Washington, DC 20001
(202) 639-6000
JArmstrong@jenner.com

Daniel R. Echeverri*
Christopher J. Blythe*
**Jenner & Block LLP**
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350
DEcheverri@jenner.com
CBlythe@jenner.com

*Counsel for Plaintiffs*

13

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing paper with the Clerk of

Court by using the CM/ECF system.

Dated: February 27, 2024                    Respectfully submitted,

_/s/ Laura J. Edelstein_____
Laura J. Edelstein